IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED

98 OCT 16 AM 11:07

U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED

OCT 1 6 1998

|  |  |  |
|---|---|---|
| ELGIN SWEEPER COMPANY; | ) | |
| GUZZLER MANUFACTURING, INC.; | ) | |
| FEDERAL SIGNAL CORPORATION, | ) | |
|  | ) | |
| Plaintiffs, | ) | |
|  | ) | |
| v. | ) | CIVIL ACTION NO. 94-G-0623-S |
|  | ) | |
| POWERSCREEN INTERNATIONAL, PLC, | ) | |
|  | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION

The above-styled case is back from the Eleventh Circuit
on orders entered December 23, 1997, remanding the case to the
district court to determine the issue of prepaid insurance, and
March 6, 1998, remanding the case to the district court to
determine the reasonable amount of attorneys' fees to be awarded
to appellants.  Pursuant to the mandates the court has the
following motions before it:

1)   Plaintiffs' motion for summary judgment on the
     insurance prepayment issue in the amount of
     $92,640.00 plus costs and contractual prejudgment
     interest and attorneys' fees;

277

   2)   Defendant's motion for summary judgment on the
        $92,000.00 insurance prepayment issue;

   3)   Defendant's motion to strike the affidavit of
        Richard L. Ritz;

   4)   Defendant's motion to strike the affidavit of Kim
        Wehrenberg and portions of the reply brief in
        further support of cross-motions for summary
        judgment; and

   5)   Plaintiffs' petition for attorneys' fees.

        The cross-motions for summary judgment before the court

deal with whether a $92,640.00 Guzzler Manufacturing, Inc.

[hereinafter Guzzler] insurance prepayment[1] was an asset or a

receivable.   Initially this court granted defendant Powerscreen

International, PLC [hereinafter Powerscreen] summary judgment on

the issue and thereafter denied the plaintiffs' motion to

reconsider.   Rather than reiterate the reasoning behind granting

defendant's motion, the court is attaching copies of the

April 20, 1995, and August 8, 1995, opinions and orders to be

incorporated as part of this memorandum opinion.

        In remanding the issue of prepaid insurance the circuit

did not reverse this court, but remanded on the basis of insuffi-

---

   [1]   This prepaid amount provided Guzzler with liability
insurance from March, the time of closing, to August 1993, the
renewal time for insurance coverage.

cient material in the record by which the trial court could grant summary judgment. Pertinent portions of the mandate follow:

> The procedural development of this issue is some-
> what confusing. Powerscreen filed a motion for partial
> summary judgment on September 9, 1994. Powerscreen
> submitted evidence in support of the summary judgment
> on September 24, 1994. Appellants submitted their
> evidence in opposition on October 11, 1994. On
> October 24, 1994, the trial judge entered an order
> allowing a deposition of the arbitrator [Arthur
> Anderson] to be taken and stating that "all issues
> decided by the arbitrator or all issues that could have
> been decided by the arbitrator be and they hereby are
> [ruled] out of the case." In response to that order,
> both sides filed statements of issues decided by arbi-
> tration on February 13, 1995. The trial court heard
> oral arguments on the summary judgment motion on
> March 2, 1995. The parties did not discuss or argue
> the prepaid insurance issue in any of those materials.
> After the oral argument but before the judge issued the
> order on the summary judgment motion, Appellants wrote
> a letter to the trial judge which apparently stated
> that

>> [Discovery] to date has shown that one
>> additional issue was in fact resolved by
>> arbitration. In the deposition of Barry
>> Cosgrove, the financial director of
>> Powerscreen, he acknowledged that the closing
>> balance sheet reflected a $92,000 receivable
>> from Powerscreen which was not objected to by
>> Powerscreen in the arbitration. Accordingly,
>> Powerscreen's obligation on this receivable
>> has been finally and conclusively determined.

> Powerscreen responded by letter on March 29, 1995, and
> set forth its disagreement with Appellants' assertions.
> Apparently several more letters were sent to the judge

3

on this issue.[2]  These letters are not included in the
record on appeal.[3]  Since the issue was not briefed[4]
nor argued by the parties at the trial level, there is
nothing in the record which allows this Court to review
the decision.   There is likewise nothing in the record
on which the trial judge could permissibly grant sum-
mary judgment pursuant to Rule 56 of the Federal Rules
of Civil Procedure.   Based on this record summary
judgment was improvidently granted and must be re-
versed.   This issue is remanded to the trial court.

Upon review of the transcript of the March 2, 1995,

hearing on the summary judgment motion (document 53), the follow-

ing discussion occurred:

MR. MILLER:    Judge, one thing, although it really
               doesn't relate to this motion, on the
               accounts receivable issue, which Tony

---

[2]  The complete text of footnote 3 of the mandate, inserted
here, reads as follows: "At oral argument, Powerscreen stated
that this issue was decided informally through letters to the
judge and referred to a letter or letters, written after those
listed above, in which Powerscreen stated that it had contacted
the insurance company and had learned that the policy had not
been assigned.  Powerscreen's counsel also stated that no one
made any objections concerning proper authentication or Rule 56
until after the trial judge granted the motion in favor of
Powerscreen."  These statements are true.

[3]  The complete text of footnote 4 of the mandate, inserted
here, reads as follows:  "One letter is attached as an exhibit to
the motion for reconsideration of the summary judgment ruling and
is contained in the record on appeal."

[4]  The issue was fully briefed at the trial level with
letter briefs.  Counsel did not ask that the record be
supplemented with copies of those letters--a request the trial
court would have granted.

4

mentioned as showing how unfair our
position was.

In fact, since the time of this arbitra-
tion, we have made the payment that we
believe is required under that accounts
receivable section to the plaintiffs in
the case, the payment for all accounts
receivable not collected past one hun-
dred and twenty days, and deducted from
that payment the reserve that they got
in the arbitration saying that if you
got a reserve in the arbitration, okay,
we have got this other obligation, we
make that payment there, and they have
contended that, no, that we don't get
the benefit of the reserve, which re-
lates in many instances to the same
accounts that we were required to pay
them for.

MR. VALIULIS:  Your Honor, I have to, I am sorry, but
that is a matter off the record in a
sense that it's not before the court.  I
totally disagree with counsel's state-
ment of what they have done.  They
haven't paid it.  There is a big dispute
about what is owed, not just with re-
spect to whether they are entitled to a
credit under the reserve, but other
accounts receivable.  That issue is very
much alive and it has not been resolved
and the dispute does not simply relate
to whether they are entitled to a credit
on the reserve.  It relates to other--

THE COURT:  I think if you want me to consider that,
you can write me a letter about that.

MR. MILLER:  OKAY.

MR. VALIULIS:  That's fine, Your Honor.

5

(Doc. 53, March 2, 1995, T. 42-43).

Pursuant to the court's invitation to write a letter, a series of letter briefs on the $92,640.00 prepaid insurance issue followed. Because the letters are the basis of the court's decision granting Powerscreen summary judgment on the issue,[5] the court hereby supplements the record with the following letters, said letters to be attached to this memorandum opinion and made a part of the record:

1) March 22, 1995, letter from Anthony C. Valiulis, counsel for plaintiffs, an excerpt from which is cited by the circuit;

2) March 29, 1995, letter from James L. Goyer III, counsel for Powerscreen, dealing exclusively with the $92,000.00 prepaid insurance issue;

3) March 30, 1995, letter from Anthony C. Valiulis, counsel for plaintiffs, in response to Powerscreen's March 29, 1995, letter;

4) April 5, 1995, letter from T. Louis Coppedge, member of defendant's team of counsel, responding to the March 30, 1995, letter from Mr. Valiulis, with attachments of: copy of September 22, 1994,

---

[5]   The court did not and is not in the habit of "improvidently" granting summary judgment motions without proper foundation. As stated in footnote 4 of this opinion: "The issue was fully briefed at the trial level with letter briefs. Counsel did not ask that the record be supplemented with copies of those letters--a request the trial court would have granted." Until receipt of the mandate this court was unaware that the circuit was not supplied with supporting materials by which a complete record was available for review.

6

letter from Kim A. Wehrenberg; copy of a purported September 21, 1994, assignment from Guzzler Manufacturing, Inc. [hereinafter Guzzler]; copy of a March 23, 1993, facsimile of a memorandum from Mary Ellen Penicook to Jay Tannon; a March 19, 1993, copy of a Federal Signal Corporation [hereinafter Federal Signal][6] intracompany correspondence from Pam Krage to Kim Wehrenberg; and copy of a March 23, 1993, memorandum from Guzzler to J. R. Prewitt & Associates relative to an assignment;

5)  April 6, 1993, letter to the court from T. Louis Coppedge;

6)  April 7, 1995, letter to the court from T. Louis Coppedge enclosing a copy of the Declarations Update Endorsement pertaining to the insurance policy at issue showing that both Powerscreen International, PLC [hereinafter Powerscreen] and Federal Signal were listed as "additional insureds" on the insurance policy effective March 31, 1993;

7)  July 7, 1995, letter to counsel from Mary Anne Gibbons, Law Clerk to the undersigned;

8)  July 14, 1995, letter to the court from Richard H. Monk III, counsel for plaintiffs, in response to the July 7, 1995, letter;

9)  July 14, 1995, letter to the court from T. Louis Coppedge in response to the July 7, 1995, letter;

10)  July 17, 1995, letter to the court from Richard H. Monk III.

---

[6]  Federal Signal is the parent company of Elgin Sweeper.

7

In addition to the briefs[7] and affidavits submitted to the court on the cross-motions for summary judgment presently before the court, the court has received letters briefing the issue. Because of the importance of the material contained therein, the court is of the opinion that the record be supplemented with these more recent communications, a listing being set forth below:

1) An April 17, 1998, letter to the court from Powerscreen's counsel;

2) An April 20, 1998, facsimile letter to the court from Anthony C. Valiulis in response to the April 17, 1998, letter; and

3) An April 21, 1998, letter to the court from James L. Goyer III responding to the April 20, 1998, letter.

The dispute before the court centers around a practice of Guzzler's by which it prepaid its annual insurance premium in September for the upcoming year. Pursuant to that practice Guzzler remitted to J. R. Prewitt & Associates [hereinafter Prewitt] located in Birmingham, Alabama, its annual insurance premium in September 1992, covering it through August 1993 for general liability policy No. OGLG16261300. This policy was in

---

[7] While briefs are not normally made a part of the record the court will entertain a motion to supplement the record if desired by the parties.

place at the time of closing of the sale of Guzzler to Elgin

Sweeper Company [hereinafter Elgin].  According to Jay Middleton

Tannon of Brown, Todd & Heyburn, PLLC, who was primarily respon-

sible for assisting Powerscreen in the negotiations leading to

the sale of Guzzler to Elgin/Federal and drafting the stock

purchase agreement, no agreement--oral or written--was made on

behalf of Powerscreen with Kim Wehrenberg to pay Elgin/Federal

Signal $92,640.00 in exchange for an assignment of the general

liability and products liability insurance policy covering

Guzzler from September 1, 1992, through August 31, 1993.  Accord-

ing to Tannon, had such an agreement been made Powerscreen would

have required it to be in writing.  The stock purchase agreement

does not mention any assignment of this policy or any other

insurance policy.

Pursuant to the terms of the negotiated purchase,

plaintiffs Elgin/Federal Signal prepared a closing balance sheet

to determine the net book value of Guzzler.[8]  On the balance

sheet **Elgin/Federal Signal** listed the $92,640.00 insurance

premium as an **asset** of Guzzler under the line item "other

---

[8]    By preparing and submitting the balance sheet and
position papers to the arbitrator Elgin/Federal Signal set the
parameters of the arbitration.

receivables," thereby increasing the net book value of Guzzler.
Powerscreen did not object[9] to the premium's being listed on the
asset side of the closing balance sheet because the increased net
book value was to its advantage.[10] Elgin/Federal Signal did not
include the $92,640.00 insurance prepayment as an "accounts
receivable" subject to paragraph 4 of the stock purchase agree-
ment. According to the affidavit of Martha Harkness, partner in
the accounting firm of Ross Lane & Company LLC [hereinafter Ross
Lane] who assisted Powerscreen with the preparation of the
closing balance sheet and other submissions made to arbitrator
Arthur Anderson in connection with the arbitration of the net
book value of Guzzler as of March 15, 1993, "it was never contem-

---

[9]   According to the stock purchase agreement any objections
that Powerscreen may have had to the closing balance sheet were
to be submitted to arbitrator Arthur Anderson & Company
[hereinafter Arthur Anderson] for a determination. Since
Powerscreen had no objection to the $92,640.00 insurance
prepayment's being classified as an "other receivable" and an
asset of Guzzler, Arthur Anderson was not called upon to make an
express determination on that specific issue.

[10]   This insurance was an asset of Guzzler as of closing,
protecting it for product liability claims on machines
manufactured between March 1993 and August 1993. Since the
insurance had already been paid for once there was no reason for
Powerscreen to think it would have to pay for the insurance a
second time under the listing of the 120 days aged receivables.

10

plated that this item [$92,640.00] was an 'account receivable'[11]

or 'trade receivable' that would be included in the listing of

'aged accounts receivables'[12] as provided for by paragraph 4 of

the Stock Purchase Agreement.   In fact, this item was not one of

the specific accounts contained in the detailed listing of

'accounts receivable' as reported in the closing balance sheet."

Mrs. Harkness went further to state the following:

> The Stock Purchase Agreement and the closing balance
> sheet specifically provided for the payment of an
> inter-company debt between Guzzler and Powerscreen.
> Had this actually been an account owed by Powerscreen,
> I would have simply offset the inter-company debt by
> the amount owed by Powerscreen.   This would have been
> the most practical and cleanest way to handle this item
> if there had been an amount owing from Powerscreen.

No objection was made as to the way the $92,640.00 item

was listed on the closing balance sheet.   The arbitrator made a

final and binding decision:   The $92,640.00 insurance prepayment

was included as an **asset** of Guzzler, protecting it from product

---

[11]   "Other receivables" does not signify debt.   Guzzler paid
for the insurance.   Payment of the insurance is, therefore, shown
as an asset.

[12]   Powerscreen has consistently taken the position that the
120 days aged receivables, as contemplated by the stock purchase
agreement, was to be dealt with outside of arbitration.   When
Elgin/Federal Signal through its closing balance sheet and
position papers submitted these issues to the arbitrator
Powerscreen was forced to respond.

11

liability claims on machines manufactured between March 1993 and August 1993.

When plaintiffs presented Powerscreen its first listing of the "aged accounts receivable" 120 days after closing in July 1993,[13] the $92,640.00 insurance prepayment appeared on the list. Powerscreen objected to its inclusion and informed Elgin/Federal Signal that the $92,640.00 was not an "aged account receivable," Guzzler's having already paid the amount. Powerscreen tendered to Elgin/Federal Signal what it believed to be the correct amount due for the "aged accounts receivables," less the $92,640.00 insurance prepayment. Over objections from defendant, Elgin/Federal Signal applied the bulk of the payment to the $92,640.00 insurance prepayment and has continued to do so from that time forward.

Plaintiffs have contended that after the sale Guzzler's liability was covered by the Federal Signal policies. Since the Prewitt liability insurance policy was not needed it was assigned

---

[13] Paragraph 4 of the Stock Purchase Agreement had a proviso which read as follows: "A reserve for accounts receivable shall be included [on the closing balance sheet] and if the company does not collect all accounts receivable existing as of the Closing, within 120 days of Closing, then Seller [Powerscreen] shall pay Buyer [Elgin] the amount of the uncollected accounts less the reserve, and such accounts shall be assigned to Seller."

to Powerscreen.  This might have been its intention following the
closing, as indicated by a March 19, 1993, Federal Signal inter-
office memo from Pam Krage to Kim Wehrenberg;[14] a March 23, 1993,
facsimile from Mary Ellen Pennicock, Elgin/Federal Signal in-
house counsel to Jay Tannon;[15] and a March 29, 1993, letter of
Susan Ragland, controller of Guzzler.[16]  According to the affida-
vit of Mr. Prewitt filed with the court, however, the policy was
never assigned.  A declaration endorsement made effective
March 31, 1993, changed the policy to designate both Powerscreen
and Federal Signal as additional insureds.[17]  Nothing before the
court indicates that Powerscreen asked for or agreed to an
assignment of the policy or was aware prior to July 1993 and

---

[14]  This March 19, 1993, memo was written after the closing.

[15]  This March 23, 1993, memo was sent after the closing.
Ms. Pennicook testified by deposition that the purpose of the
memo was to allow Mr. Tannon to "make a decision as to whether he
wanted to keep it or wanted to cancel it and receive the
proceeds."  She never asked Mr. Prewitt to assign the policy to
Powerscreen.  Her only conversation with Mr. Prewitt was to
explain the indemnification provisions with respect to product
liability as contained in the stock purchase agreement.

[16]  This letter was written after the sale of the company.

[17]  There is nothing in the record to indicate that
Powerscreen knew about, requested, or consented to the
endorsement to add it as an additional insured to the Guzzler
insurance policy.

13

thereafter that plaintiffs' position was that an assignment had taken place. The policy coverage and insurance protection remained with Guzzler through August 31, 1993, though not as the sole insured.

It must be pointed out at this point that according to Mr. Prewitt's supplemental affidavit, with attachments, an audit of the policy in question was performed in late 1993: "It was determined that Guzzler was charged too much in premiums ($92,640.00) for that particular policy. Therefore, Guzzler was given a credit of $42,118.00 which it applied to subsequent premiums. A copy of the invoice representing the $42,118.00 credit is attached hereto as Exhibit 4."[18] Thus the correct yearly premium for the policy was $50,522.00, not the $92,640.00. Defendant had liability protection for Guzzler under that policy for the first 196 days of the year. Plaintiff Guzzler, under ownership of Elgin/Federal Signal, was covered for the remaining 169 days of the year. Figuring the yearly premium of $50,522.00 on a daily basis of $138.42 a day the parties are arguing about a prepaid amount of $23,392.98, paid by Powerscreen. This does not take into consideration that $38,416.00 of the refund was attrib-

_____

[18]    There is no evidence before the court that Elgin/Federal Signal returned any of this money to Powerscreen.

14

utable to Powerscreen's overpayment of the policy for the length of time it owned the policy prior to the sale of Guzzler to Elgin/Federal Signal.

A September 22, 1994, letter from Kim Wehrenberg of Federal Signal to Jeff Hunt of Powerscreen purports to assign the policy to Powerscreen after the policy had expired.[19] Deposition testimony of Susan Ragland verifies that the $92,640.00 prepaid insurance premium included in the July 15, 1993, list of accounts receivable provided to Powerscreen was **not** included as an accounts receivable on the closing balance sheet. Ms. Ragland testified that the amount was added **after** the closing balance sheet was prepared.

Ms. Ragland's testimony is substantiated by the events centered around the closing and with paragraph 4 of the stock purchase agreement. No mention of the assignment appears.

Based on the above the court holds that Powerscreen is due summary judgment as a matter of law on the issue of the $92,640.00 prepaid insurance: 1) the $92,640.00 prepaid insurance

---

[19] Interestingly, the letter additionally acknowledges receipt for payment of the $92,640.00 + nine percent interest by wire transfer. Federal Signal unilaterally designated a portion of defendant's payment for past due accounts. This letter "assigning" the policy is well more than a year after plaintiffs contend the policy had been assigned.

premium was shown on the closing balance sheet as an asset of Guzzler and determined so by the arbitrator; 2) The $92,640.00 amount does not belong in the "aged accounts receivables;" and, 3) the net aged receivables have been paid in their entirety by Powerscreen. Elgin/Federal Signal is trying to totally charge Powerscreen for the policy while it retained excess coverage rights in the policy. By keeping two interests in the policy (one in their name and one in the name of Guzzler) while at the same time trying to make Powerscreen pay $92,640.00[20] a second time is not only unjust enrichment but gives the appearance of outright dishonesty and overreaching. Elgin/Federal Signal kept an interest in the policy and kept the rebate. Powerscreen actually got less than the "assignment" which plaintiff purport-edly gave it and which was never part of the bargain.

In granting defendant's motion for summary judgment on this issue of prepaid insurance coverage and denying plaintiffs' motion, the court notes the following flaws in plaintiffs' argument:

1) No assignment took place;

---

[20] Even had the insurance premium been a debt as claimed by plaintiffs, they made no adjustment for the refund received on the policy.

16

2)   The named insured was not removed;

3)   Policy coverage and protection remained with
     Guzzler throughout; and

4)   There is no evidence reflecting that the parties
     agreed at closing to assign the policy to
     Powerscreen.

The court hereby denies Powerscreen's motions to strike

the affidavits of Richard L. Ritz and Kim Wehrenberg.  Hearsay

portions of the affidavits were not considered.  The court, in

its discretion, overrules the motion of Powerscreen to strike

portions of the reply brief because the brief exceeded the

court's page limitation for reply briefs.

Pursuant to the indemnity provision of the stock

purchase agreement Powerscreen is only obligated once the obliga-

tion reaches the $260,000.00 threshold.  Once reached Powerscreen

must pay from the first dollar.  In its decision the Eleventh

Circuit determined that this court omitted two amounts from the

threshold calculation: $17,225.51 in attorneys' fees and costs

and $6,300.00 for the unique services and environmental matters.

Addition of these two amounts causes the damages awarded under

the indemnity provision to exceed the $260,000.00 threshold.

Accordingly, the court holds that the judgment should be amended

17

to reflect an additional $265,039.31 [21] in damages for plaintiffs.

This court's order and opinion entered today also reflect the mandate of the Circuit to reverse its earlier order to plaintiffs to reissue a check to Powerscreen for $3,750.00. The court holds that this earlier order be reversed, having previously granted summary judgment on the conversion issue.

Having disposed of the issue of prepaid insurance, reversal of the order providing for defendant's recovery of the $3,750.00 check, and allowing for additions to the calculation of the threshold issue as set forth in the December 23, 1997, mandate, the court turns its attention to plaintiff's petition for attorneys' fees.

The language of the mandate from the Eleventh Circuit reads as follows:

> Appellants' motion for attorney's fees is GRANTED as to entitlement on the claim for fees relating to the threshold calculation only. Appellants successfully persuaded this Court that $23,525.51 was improperly excluded from the threshold calculation. Under the

---

[21] This amount includes $65,000.00 for the parking lot claim, $176,513.80 for the Department of Transportation claim, $17,225.51 in attorneys' fees, and $6,300.00 for the unique services and environmental matters. As per the stock purchase agreement, once the threshold is reached Powerscreen must pay from the first dollar.

18

agreement between the parties, Appellants are contrac-
tually entitled to attorney's fees resulting from that
representation.  Appellant's motion is DENIED except as
specifically set forth herein.  This matter is REMANDED
to the district court for a determination of the rea-
sonable amount of attorney's fees to be awarded to
Appellants.

The court must first look to the stock purchase agree-

ment to determine what is said about attorneys' fees in the

agreement.  Language in paragraph 11(a) under the section enti-

tled "Agreements" reads, in part, as follows:

Seller agrees to indemnify, defend (if requested)
and hold Buyer and Company harmless from and against
any and all claims, damages, losses, costs, liabilities
or expenses, whether consisting of a cash payment,
deficiency, (as may be required by tax laws and regula-
tions, generally accepted accounting principles, or
governmental agency), and costs and expenses incidental
thereto (including reasonable attorneys' fees), ...
arising out of or resulting from (i) any breach or
failure of a representation, warranty, covenant or
agreement of Seller contained in this Agreement or its
Schedules or any deficiency for federal or state or
other taxes or penalties resulting from or relating to
the conduct of the company's business prior to closing
... and (ii) for any defective product manufactured or
shipped by the Company prior to Closing or arising from
any contract or law or otherwise for any defective
product, failure to warn, breach of implied or express
warranties, negligence or misrepresentation as to any
product manufactured or shipped before Closing includ-
ing any personal injury, death or property damage
attributable to products manufactured or shipped by the
Company prior to Closing.  Seller shall also be respon-
sible for the administration and handling of all
product claims referred to in Paragraphs 11(a)(ii).

19

     (b)  Seller will have the opportunity to defend, at Seller's expense, claims and demands for which Buyer seeks indemnification.

     Not withstanding the foregoing, no indemnity for breach of the representations and warranties under this Paragraph 11 shall be paid unless and until the total amount of such indemnity is in excess of Two Hundred and Sixty Thousand ($260,000) Dollars and then shall be paid from the first dollar, but the total amount thereof shall not exceed Five Million ($5,000,000) Dollars.

     Appellants have directed the court to *Peebles v. Miley*, 439 So. 2d 137, 139-40 (Ala. 1983), and *Buckley v. Seymour*, 679 So. 2d 220, 227 (Ala. 1996), which set forth Alabama law on the award of attorney's fees.  In Alabama attorney fees are recoverable as part of the costs of an action when provided as part of the contract, as here.  *Buckley*, 679 So. 2d at 227.  *Buckley* quotes the factors set forth in *Peebles* to be considered by a trial court in awarding fees:

    (1)  the nature and value of the subject matter of the employment;

    (2)  the learning, skill, and labor requisite to its proper discharge;

    (3)  the time consumed;

    (4)  the professional experience and reputation of the attorney;

    (5)  the weight of his responsibilities;

(6)   the measure of success achieved;

(7)   the reasonable expenses incurred;

(8)   whether the fee is fixed or contingent;

(9)   the nature and length of a professional relation-ship;

(10)   the fee customarily charged in the locality for similar legal services:

(11)   the likelihood that a particular employment may preclude other employment; and

(12)   the time limitations imposed by the client or by the circumstances.

679 So. 2d at 141.

In applying the above-listed factors to the instant case, plaintiffs have petitioned the court for a generous amount. Trial lasted for a month with exorbitant billable hours of approximately $900,000.00 for a case that should have been tried in five days on the part on which plaintiffs succeeded, for a fraction of the amount billed. As plaintiffs have argued in their petition for fees: "More important than time spent is the result obtained." The court agrees. Plaintiffs did not "win" the case. Their recovery is exceptionally modest in comparison with what they tried to get. The threshold was reached, not because of the decision of the jury or the decision of the trial court, but because of the decision of the Court of Appeals.

21

Because the threshold was reached, plaintiffs were benefitted by an additional $265,039.31 in damages.

Considering the factors to determine fees in light of the "result obtained," coupled with the earlier decision of this court awarding 15 per cent of the recovery as an appropriate fee, the court holds that a fee of $39,756.00 is reasonable and plaintiffs' petition for that amount should be granted.

22

An order consistent with this opinion is being entered contemporaneously herewith.

DONE and ORDERED this 16th day of October 1998.

UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.

23

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

95 APR 19 AM 11:29

U.S. ...
N.D. OF ...

ENTERED

APR 20 1995

ELGIN SWEEPER COMPANY;                    )
GUZZLER MANUFACTURING, INC.,              )
                                          )
        Plaintiffs,                       )
                                          )
    v.                                    )  CIVIL ACTION NO. 94-G-0623-S
                                          )
POWERSCREEN INTERNATIONAL, PLC,           )
                                          )
        Defendant.                        )

## ORDER

        This cause comes before the court on the September 29,
1994, motion of defendant Powerscreen International, PLC for
summary judgment, or, in the alternative for partial summary
judgment, and the September 22, 1994, motion of defendant
Powerscreen International, PLC for an order affirming the arbi-
trator's award.  Having considered the motions, the pleadings,
the submissions of counsel, the deposition testimony of George R.
Vrana, Arthur Andersen's auditing partner, and the applicable
law, the court is of the opinion the arbitrator's report was
limited to the net book value in accordance with Generally
Accepted Accounting Principles [hereinafter GAAP] as determined
by the date of the closing balance sheet.  The arbitration clause
was obviously not intended as an arbitration clause for anything
other than the balance sheet.  The issue of consequential damages

56

was not arbitrated. Accordingly, in conformity with the memorandum opinion being entered contemporaneously herewith, it is

ORDERED, ADJUDGED and DECREED that the motion to affirm the arbitrator's award be and it hereby is GRANTED, such decision being limited to Guzzler's net book value in accordance with GAAP as determined by the date of the closing balance sheet. It is

FURTHER ORDERED, ADJUDGED and DECREED that the defendant's motion for partial summary judgment be and it hereby is GRANTED, limited to the plaintiffs' February 13, 1995, STATEMENT OF ISSUES ARBITRATED and defendants' February 13, 1995, SUMMARY OF ISSUES TO ARBITRATE with the following corrections and additions:

1. Plaintiffs' statement of accrued commissions in ¶ 21 is a correct statement rather than defendants' statement of accrued commissions in ¶ 17; and

2. ¶ 5 of defendants' summary should read "Downward" instead of "Upward" to correctly reflect Arthur Andersen's adjustment for Receivable for Texas Sales Tax.

It is

FURTHER ORDERED, ADJUDGED and DECREED that the status of the $92,000.00 insurance prepayment listed as an asset of Guzzler by Elgin/Federal Signal in the closing balance sheet be and it hereby is INCLUDED in the award for partial summary judgment, said item an asset and not a receivable. It is

FURTHER ORDERED, ADJUDGED and DECREED that the following issues were not decided by arbitration:

1. Powerscreen's obligation to purchase receivables uncollected 120 days after the closing;

2

2. **Powerscreen's obligation to pay all Texas sales taxes in excess of $20,000.00;**

3. **Powerscreen's continuing obligation to indemnify plaintiffs for product liability claims;**

4. **Breach of contract;**

5. **Fraud; and,**

6. **Consequential damages.**

It is,

FURTHER ORDERED, ADJUDGED and DECREED that the remaining issues in defendant's summary judgment will be deemed resubmitted upon completion of taking of depositions of fact witnesses by May 31, 1995.   It is

FURTHER ORDERED that prior to that date or as soon as possible thereafter, the parties are to submit to the court a summary judgment scheduling order.

DONE and ORDERED this _____ day of April 1995.

UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.

3

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

95 APR 13  ⊡ 11: 29

U.S. ⊡ ⊡ ⊡
⊡ ⊡ ⊡ ⊡ ⊡

**ENTERED**

ELGIN SWEEPER COMPANY;                )
GUZZLER MANUFACTURING, INC.,          )          **APR 1 9 1995,**
                                      )
         Plaintiffs,                  )
                                      )
    v.                                ) CIVIL ACTION NO. 94-G-0623-S
                                      )
POWERSCREEN INTERNATIONAL, PLC,       )
                                      )
         Defendant.                   )

## MEMORANDUM OPINION

        Guzzler Manufacturing, Inc. [hereinafter Guzzler]
produces and distributes various types of sewer-cleaning vehicles
for use in municipal and industrial applications.  In the fall of
1992, Elgin Sweeper Company [hereinafter Elgin][1] approached
Powerscreen International, PLC [hereinafter Powerscreen] about
the purchase of Guzzler.  Following negotiations, the parties
agreed to enter a stock purchase agreement dated February 5,
1993.

        The Stock Purchase Agreement, prepared by Elgin,
provided that Elgin would prepare an unaudited closing balance
sheet after the closing to determine Guzzler's "Net Book Value."
If the parties were unable to agree on said value, the net book

---

        [1]  "Elgin" will be used to refer to both Elgin Sweeper and
its parent Federal Signal.

value would be determined by arbitration according to the follow-
ing terms set forth in paragraph 4 of the agreement:

> In the event Seller and Buyer are not able to agree
> - within 90 days of Closing on the Company's appropriate
> Net Book Value, (i.e. the Company's total assets less
> total liabilities, but excluding those liabilities of
> the Company to Seller of approximately Eight Million
> One Hundred Thousand ($8,100,000) Dollars which shall
> be paid at Closing from the Escrow Account) then any
> objections that the Seller has to the Closing Balance
> Sheet shall be submitted to the Independent Audit firm
> of Arthur Andersen for an opinion in light of the terms
> and provisions of this Agreement and <u>such opinion shall
> be final and binding on the parties</u> (emphasis added).
> ... If the Net Book Value shown on the Closing Balance
> Sheet, as finally determined [by the arbitrator], is
> less than Ten Million Eight Hundred Thousand
> ($10,800,000) Dollars, then the Seller shall pay Buyer
> the difference between the Net Book Value and Ten
> Million Eight Hundred Thousand ($10,800,000) Dollars,
> plus 9% interest per year from the Closing Date until
> payment in full no later than six (6) months after
> Closing or ten (10) days after the Independent Auditor
> issues its opinion, whichever is later. If the net
> book value of the Company on the Closing Balance Sheet,
> as finally determined, is more than Ten Million Eight
> Hundred Thousand ($10,800,000) Dollars, then Buyer
> shall pay Seller no additional amount under this para-
> graph.

Since Elgin and Powerscreen were unable to agree on

Guzzler's net book value as of the March 15, 1993, closing date,

the dispute was submitted to Arthur Andersen & Co. [hereinafter

Arthur Andersen] for arbitration.[2]  Both parties submitted posi-

tion papers.  Prior to the May 25, 1994, arbitrator's decision

fixing Guzzler's net book value at $9,348,350.00, plaintiffs

filed suit in this court on March 15, 1994.

---

[2]  Elgin claimed the assets were worth $7,499,326.00, and
Powerscreen valued them at $10,760,637.00.

2

Pursuant to the order of the court, Powerscreen there-
after tendered $1,609,860.00[3] to Elgin: the $1,451,650.00
difference between the $10,800,000.00 figure set in the Stock
Purchase Agreement and Arthur Andersen's net book value figure of
$9,348,350.00, plus 9 percent interest from March 15, 1993, in
the amount of $158,210.00.

In an effort to determine what the arbitrator decided,
the court ordered on October 24, 1994, the following:

> [P]laintiffs be and they hereby are ALLOWED to take the
> deposition of the Arthur Anderson [sic] arbitrator,
> said deposition to cover the following:
>
> 1. All issues decided by the arbitrator;
>
> 2. All negative decisions by the arbitrator;
>
> 3. Everything adjusted and the general accounting
>    reason for each adjustment;
>
> 4. The reason for the reserve for losses on each
>    claim and the amount of reserve allocated for
>    each claim;
>
> 5. Every decision to adjust or not to adjust and
>    the reason for each decision; and,
>
> 6. The contents of Arthur Anderson's [sic] verbal
>    report.

The deposition of Arthur Andersen auditing partner George R.
Vrana was taken February 2, 1995, pursuant to the above-mentioned

---

[3] Powerscreen tendered $1,087,902.00 into the court by
motion under Fed. R. Civ. P. 67 on June 1, 1994, and directed
the escrow agent to pay the $521,958.00 held in escrow to Elgin.
On July 8, 1994, the court directed the clerk of the court to
draw a check on funds on deposit in the principal amount of
$1,987,902.00, plus interest, for a total of $1,091,163.54,
less an administrative fee of $326.15, for a total amount of
$1,090,837.39 payable to Elgin.

order. On February 13, 1995, the plaintiffs submitted PLAIN-
TIFFS' STATEMENT OF ISSUES ARBITRATED BY ARTHUR ANDERSEN. On the
same date the defendant submitted SUMMARY OF ISSUES SUBMITTED TO
ARBITRATION AND THE DECISION OF THE ARBITRATOR TO ADJUST OR NOT
TO ADJUST. With the corrections and limitations set forth in the
accompanying order, the court affirms the arbitrator's award and
awards the defendant partial summary judgment.

By letter of March 22, 1995, Elgin's counsel stated the
following:

> [D]iscovery to date has shown that one additional issue
> was in fact resolved by arbitration. In the deposition
> of Barry Cosgrove, the financial director of Power-
> screen, he acknowledged that the closing balance sheet
> reflected a $92,000 receivable from Powerscreen which
> was not objected to by Powerscreen in the arbitration.
> Accordingly, Powerscreen's obligation on this receiv-
> able has been finally and conclusively determined.

Powerscreen responded by letter of March 29, 1995, in
which it expressed its disagreement with the above-quoted
passage, pointing out that the $92,000.00 amount represented
$92,000.00 in prepaid insurance premiums covering Guzzler from
March 15, 1993, to August 31, 1993. At the time of preparation
of the closing balance sheet, the $92,000.00 was a Guzzler asset
relating to this amount of insurance. Since the asset was
properly before the arbitrator, Powerscreen had no objection.
The court agrees with the following Powerscreen statement: "The
fact that Elgin/Federal Signal classified this asset of Guzzler
as a 'receivable' in its list of aged receivables instead of a
'prepayment' does not magically transform it into a past due
account that was to be listed on the aged receivables list as per

4

the Stock Purchase Agreement." The $92,000.00 insurance prepay-
ment was finally and conclusively determined by the arbitrator to
be an asset of Guzzler rather than an aged receivable and was so
noted on the closing balance sheet. Since this asset was includ-
ed on the closing balance sheet and protected Guzzler from
liability claims on machines manufactured between March 1993 and
August 1993, there was no reason for Powerscreen to believe it
would have to pay for this insurance again. Arthur Andersen
determined the $92,000.00 insurance prepayment was an asset of
Guzzler--not a receivable. Accordingly, the item is not subject
to litigation.

The issue before the court is whether the arbitration
covered all issues concerning the sale of Guzzler to Elgin or
whether arbitration covered the net book value as of the date of
closing. After considering the submissions of counsel and the
deposition testimony of George R. Vrana, the court holds that the
arbitration was limited to Guzzler's net book value in accordance
with GAAP[4] as determined by the date of the closing balance
sheet. Issues not arbitrated are set forth in the accompanying
order.

_____

[4] Generally Accepted Accounting Principles.

5

An order consistent with this opinion is being entered contemporaneously herewith.

DONE and ORDERED this _____ day of April 1995.

UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.

6

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

ELGIN SWEEPER COMPANY;                     )
GUZZLER MANUFACTURING, INC.,               )
                                           )
            Plaintiffs,                    )
                                           )
      v.                                   )   CIVIL ACTION NO. 94-G-0623-S
                                           )
POWERSCREEN INTERNATIONAL, PLC,            )
                                           )
            Defendant.                     )   ENTERED

                              ORDER            AUG 0 8 1995

      This cause comes before the court on the following

motions:

      1)    May 23, 1995, joint motion for clarification of the
            court's order dated April 20, 1995; and

      2)    May 18, 1995, motion of plaintiff to reconsider the
            $92,640.00 receivable issue.

Having considered the motions, the pleadings, the submissions of

counsel, and the applicable law, the court now makes the follow-

ing rulings consistent with the memorandum opinion being entered

contemporaneously herewith:  It is

      ORDERED, ADJUDGED and DECREED that having reconsidered

the $92,640.00 issue, the court AFFIRMS its previous ruling and

holds that the amount is an asset and not a receivable.  It is

      FURTHER ORDERED, ADJUDGED and DECREED that having

considered the position statements submitted as exhibits to the

joint motion for clarification, the court holds the following:

1)  Powerscreen's position in ¶ 3 of "Exhibit B" that
    the issue of alleged false and/or fraudulent
    statements in prior financial statement has been
    resolved is incorrect.

2)  Powerscreen's position in ¶ 5 of "Exhibit B" that
    the April 20, 1995, order relating to the
    $92,000.00 insurance prepayment is clear and
    unambiguous is correct;

3)  Powerscreen's position in ¶ 6 of "Exhibit B" that
    only three issues remain to be litigated, i.e.
    1) Powerscreen's obligation to purchase receiv-
    ables uncollected 120 days after closing;
    2) Powerscreen's obligation to pay all Texas sales
    taxes in excess of $20,000; and 3) Powerscreen's
    continuing obligation to indemnify plaintiffs for
    product liability claims is incorrect.

4)  Powerscreen's position in ¶ 7 of "Exhibit B"
    relating to fraud and breach of contract is incor-
    rect.

5)  Powerscreen's position in ¶¶ 7(1) and 7(5) of
    "Exhibit B" that ¶¶ 18-20 of the complaint dealing
    with false and/or fraudulent financial statements
    (including, but not limited to, the factual issue
    of the inventory), and ¶¶ 70-72 of the complaint
    relating to defects in the painting facility have
    been eliminated from the lawsuit is incorrect.

6)  Powerscreen's position in ¶ 7(2) of "Exhibit B"
    that ¶¶ 21-25 of the complaint relating to Clean
    Earth/Employee Non-Compete Agreements have been
    eliminated from the lawsuit is incorrect.

7)  Powerscreen's position in ¶ 7(3) of "Exhibit B"
    that ¶¶ 26-29, 34-37 of the complaint relating to
    an Egyptian army prototype and Carolyn discounts
    have been eliminated from the lawsuit is incor-
    rect.

8)  Powerscreen's position in ¶ 7(4) of "Exhibit B"
    that ¶¶ 30-33, 38-41 of the complaint relating to
    Allwaste, Inc., Clowe & Cowan, Inc., and Unique
    Services have been eliminated from the lawsuit is
    incorrect.

9)  Powerscreen's position in ¶ 7(6) of "Exhibit B"
    that ¶¶ 73-78 of the complaint relating to the
    federal excise tax audit have been eliminated from
    the lawsuit is correct.

2

10)   Powerscreen's position in ¶ 7(7) of "Exhibit B"
      that ¶¶ 101-108 of the complaint relating to
      environmental matters have been eliminated from
      the lawsuit is incorrect.

11)   Having insufficient information on which to rule,
      the court reserves ruling on Powerscreen's
      position in ¶ 7(4)[1] (¶¶ 55-61 of the complaint
      relating to title to U.K. demonstrator unit).

12)   With the exceptions set forth in this order,
      plaintiffs' position as stated in "Exhibit A" is
      correct.

DONE and ORDERED this _____ day of August 1995.

UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.

---

[1]   "Exhibit B" has incorrectly numbered ¶ 7(4) twice.  The
court has used the numbers of the exhibit, but has noted the
pertinent paragraphs of the complaint in its ruling.

3

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

95 AUG -3  FM 8:47

U.S. [...]
[...]

**cNTEREL**

AUG 0 8 1995

ELGIN SWEEPER COMPANY;  )
GUZZLER MANUFACTURING, INC.,  )
                            )
        Plaintiffs,         )
                            )
    v.                      )   CIVIL ACTION NO. 94-G-0623-S
                            )
POWERSCREEN INTERNATIONAL, PLC,  )
                            )
        Defendant.          )

### MEMORANDUM OPINION

The parties in the above-styled case have disputed whether the $92,640.00 insurance prepayment was an asset or a receivable.[1] At issue is whether the arbitrator had the $92,000.00 issue before him.  If it was decided by the arbitrator, or could have been decided by the arbitrator, the issue is foreclosed from this suit.

Paragraph 4 of the Stock Purchase Agreement provides, in part, the following:

---

[1] This prepaid amount provided Guzzler with insurance coverage from March 1993, the time of closing, to August 1993, the renewal time for insurance coverage.

[Guzzler[2] and Elgin[3]] shall prepare and deliver to Seller [Powerscreen[4]], an unaudited Closing Balance Sheet of the Company [Guzzler] as of the Closing Date, which shall be prepared in accordance with United States generally accepted accounting principles and shall include all appropriate year-end reserves, accruals and allowances ...; a reserve for accounts receivable shall be included and if the Company does not collect all accounts receivables existing as of Closing, within 120 days of Closing then Seller [Powerscreen] shall pay to Buyer [Elgin] the amount of the uncollected accounts, less the reserve, and such accounts shall be assigned to Seller.   ...   In the event Seller [Powerscreen] and Buyer [Elgin] are not able to agree within 90 days of Closing on the Company's [Guzzler] appropriate "Net Book Value" ... then any objections that the Seller has to the Closing Balance Sheet shall be submitted to the Independent Audit firm of Arthur Andersen for an opinion in light of the terms and provisions of this Agreement and such opinion shall be final and binding on the parties.

Elgin included the $92,640.00 insurance prepayment in the line item for "other receivables" on the asset side of the ledger.   Powerscreen had no objection to its inclusion as an asset.[5]   Not only was the $92,640.00 payment listed as an asset, the amount was not included in the reserve set forth for 120 days past due accounts receivable as outlined above.

---

[2]  Guzzler Manufacturing, Inc. is referred to throughout the opinion as Guzzler.

[3]  Elgin Sweeper Company is referred to throughout the opinion as Elgin.

[4]  Powerscreen International, PLC is referred to throughout the opinion as Powerscreen.

[5]  A copy of the closing balance sheet submitted to the court shows that the item was included as an asset of Guzzler in the line item "other receivables."

2

Although the $92,640.00 insurance prepayment was not listed in the line item for "accounts receivable" in preparation of the closing balance sheet, Elgin/Federal Signal subsequently listed it in the 120 days past due accounts receivable. Deposition testimony of Susan Ragland, Guzzler Vice President and Controller, states that the $92,640.00 listing in the 120 days past due accounts appeared in July 1994, not on the schedule as prepared at time of closing. The court reiterates its earlier statement: "The fact that Elgin/Federal Signal classified this asset of Guzzler as a 'receivable' in its list of aged receivables instead of a 'prepayment' does not magically transform it into a past due account that was to be listed on the aged receivables list as per the Stock Purchase Agreement."

The deposition testimony of Mr. Vrana addresses the issues of Clean Earth/Employee Non-Compete Agreements (pp. 48-51, 123-129); Egyptian army prototype and Carolyn discounts (pp. 51-52, 58-59, 116-119, 129-130, 144-147); Allwaste, Inc., Clowe & Cowan, Inc., and Unique Services (p. 91); the federal excise tax audit (pp. 41-44, 150, 63); environmental matters (p. 94); and painting facilities (p. 92). His testimony reflects whether the issues were or were not decided or could have been decided by Arthur Andersen. The substance of his testimony is indicated by the accompanying order.

An order consistent with this opinion is being entered contemporaneously herewith. Since much of the accompanying order

3

deals with this court's April 20, 1995, order and opinion, copies
of the April 20, 1995, order and memorandum opinion are being
entered contemporaneously herewith as well.

DONE and ORDERED this _____8th_____ day of August 1995.


UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.

4

## Much Shelist Freed Denenberg & Ament, p.c.

ATTORNEYS AT LAW

200 North LaSalle Street, Suite 2100
Chicago, Illinois 60601-1095
312/346-3100 Telephone
312/621-1750 Fax

Joseph O. Ament
William N. Anspach, Jr.
Ira Bell
Deborah L. Bondit
Sharon Swarhonsky Bilow
Prahant E. Brandwein
Lawrence H. Brenman
David Tilbrown
Perry Brown
Deborah Schmidt Busson
Eden R. Caroar
Howard M. Cohen
Howard M. Donanberg
Marie A Di Lorenzo
Jeffrey W. Eich
Mary Jane Edelstein Pak
Michael J. Freed
Irwing M. Goldberg
Carol V. Gilden
Lewis R. Ginsburg
Martene Relajur Holbom
Michael B. Hyman

Karen Litscher Johnson
Wendy H. Kann
Steven A. Kanner
Ellyn M. Lansing
Sidney M. Levine
Marc S. Linor
William H. London
Scott N. Mein
Ralph H. Martire
Debra A. Mason
Susan Miller Meyer
Diane S. McCruin
Merris Mulch
Michael J. Mueller
Norman B. Newman
Claire C. Henny
Jokraivics Jackie Peirovic
Daniel K. Reising
Arthur E. Rosenson
Jeffrey C. Rubenstein
Michael B. Sadoff
Joanna A. Serasin

Scott N. Schreiber
Steven Schwartz
Edward D. Snapka
Michael H. Sneltz
Norman A. Shubert
Evan S. Solms
William A. Sweetry, Jr.
Christopher J. Stuart
Deborah L. Thorne
Anthony C. Valiulis
Charles F. Vihon
John H. Ward
Idola L. Weinberg
Susan M. Worman
Jeffrey S. Wilson
Philip Wong

OF COUNSEL
Steven A. Stender

Lawrence H. Eiger
(1937-1987)

**VIA FACSIMILE (205) 731-3446**

WHITON'S DIRECT LINE

(312) 621-1691

March 22, 1995

The Honorable J. Foy Guin, Jr.
United States District Court
Northern District of Alabama
1729 North Fifth Avenue
Birmingham, Alabama 35203

Re:   Elgin Sweeper Co., et al., v. Powerscreen,
      Case No.: CV-94-G-623-S

Dear Judge Guin:

This is in response to your request that the parties state whether they think additional fact discovery is needed for the Court to rule on the pending motion for summary judgment. Obviously, from Plaintiffs' point of view, on the record before the Court there are at the very least material issues of fact in dispute. That being the case, Plaintiffs believe the Court can rule and deny the pending motion without additional discovery. Defendant, however, has consistently maintained that the parties intended that all disputes be resolved by arbitration. Plaintiffs, on the other hand, maintain that the parties did not intend that the arbitration clause resolve all disputes and that factual discovery will further confirm Plaintiffs' view. Factual discovery would show, for example, what the parties understood, what they discussed, and how they acted both before and after the agreement was signed. Unless the Court holds that the clause unambiguously was intended to resolve all disputes, and there is no such language to that effect in the agreement, this factual evidence is relevant in order to determine the scope of the clause.

So far, three fact witnesses have been deposed, Joseph King, Barry Cosgrove, and Jeffrey Hunt. Their depositions have confirmed that, as to many of the issues which Powerscreen is claiming were resolved by Arthur Andersen, Powerscreen continued to act after the arbitration as if those issues had not been resolved. These issues include, among others, Powerscreen's obligation to purchase receivables uncollected 120 days after the closing; Powerscreen's obligation to pay all Texas sales taxes in excess of $20,000; and Powerscreen's continuing obligation to indemnify Plaintiffs regarding product liability claims.

In addition, further discovery is needed as to many of the issues which Powerscreen claims could have been brought in the arbitration. Plaintiffs believe that discovery will show that, even assuming such matters belonged on a closing balance sheet, they either did not arise

*Admitted to practice in Michigan only

Certain members are also admitted to practice in the District of Columbia and in the states of Florida, New York, Texas and Wisconsin

## Much Shelist Freed Denenberg & Ament, P.C.

Page 2
The Honorable Judge Guin
March 22, 1995

before the closing balance sheet had been submitted or were not known to Plaintiffs in time to be included. In this regard, the record currently does not indicate one way or the other. In other words, as to these claims there are currently material issues of fact in dispute. Such claims include, for example, product liability claims relating, among others, to Little Rock Quarry, Salt Lake City, and Delta Services. They also include the Allwaste issue, Clowe & Cowan, Unique Services, the parking lot flooding problem, the Colin McGrillis issue, and the employee retaliation claims asserted in the litigation.

In addition, discovery to date has shown that one additional issue was in fact resolved by arbitration. In the deposition of Barry Cosgrove, the financial director of Powerscreen, he acknowledged that the closing balance sheet reflected a $92,000 receivable from Powerscreen which was not objected to by Powerscreen in the arbitration. Accordingly, Powerscreen's obligation on this receivable has been finally and conclusively determined.

In summary, we believe that the Court can deny the motion for summary judgment without the need for further fact witness discovery. However, unless the Court determines that the arbitration clause unambiguously was intended to cover all pending disputes between the parties, additional fact discovery would be necessary before summary judgment could even arguably be granted in favor of Powerscreen on all of the issues. As to the individual issues actually considered by the arbitrator, the Court does not need additional fact discovery to determine the extent to which Arthur Andersen has specifically ruled on those issues or the effect of the arbitrator's ruling as to each of them. As to issues not raised before the arbitrator, however, additional discovery is needed.

Very truly yours,

Anthony C. Valiulis

ACV/cam

cc:   Linda Friedman (via fascimile, 205-251-8611)
      James Goyer (via fascimile, 205-254-1999)

---

[1]   Even if these product-related claims had been accrued on the closing balance sheet, they would still be part of this case. As discussed at length in Plaintiffs' previously filed materials, Arthur Andersen excluded these items from the determination of Net Book Value solely because they fell within Plaintiffs' right to indemnification from Powerscreen which is being litigated in this case.

## MAYNARD, COOPER & GALE, P.C.

ATTORNEYS AT LAW

1901 SIXTH AVENUE NORTH

2400 AMSOUTH/HARBERT PLAZA

BIRMINGHAM, ALABAMA 35203-2602

(205) 254-1000

FACSIMILE (205) 254-1999

———

MONTGOMERY OFFICE:

ONE COMMERCE STREET

SUITE 302

MONTGOMERY, ALABAMA 36104

(334) 262-2001

GEORGE F. MAYNARD
C.C. TORBERT, JR.
ASA ROUNTREE
N. LEE COOPER
FOURNIER J. GALE III
DANIEL H. MARKSTEIN III
DOUGLAS T. ARENDALL
KIRBY SEVIER
GEORGE G. LYNN
J. HOBSON PRESLEY, JR
STEPHEN E. BROWN
CATHY S. WRIGHT
CURTIS O. LILES III
ROBERT R. SEXTON
H. THOMAS WELLS, JR.
KATHLEEN A. COLLIER
JAMES L. GOYER III
A. INGE BELDEN III
LEE E. BAINS, JR.
TONY G. MILLER
FRANK D. MCPHILLIPS
MAIBETH J. PORTER
WALKER PERCY BADHAM III
DAVID M. SMITH
JARRED O. TAYLOR II
J. MICHAEL SAVAGE
JAMES L. PRIESTER
JAMES M. PROCTOR II
GREGORY H. HAWLEY
LUTHER M. DORR, JR.
JOHN N. BOLUS
J. KRIS LOWRY
MARK L. DREW
JAYNA PARTAIN LAMAR
RANDALL H. MORROW

LAURA A. WOODRUFF
KATHRYN O. PUGH
MARK STRENGTH
JOHN H. BURTON, JR.
PATRICK C. COOPER
CYNTHIA G. LAMAR-HART
SCOTT A. ABNEY
JEFFREY M. GRANTHAM
STEPHEN C. JACKSON
JAMES N. POOL
DANA L. THRASHER
MITCHELL G. ALLEN
THOMAS H. BRINKLEY
KATHARINE A. WEBER
MICHAEL D. MULVANEY
J. ALAN TRUITT
CARL S. BURKHALTER
SARAH E. YATES
THOMAS C. CLARK III
CHRISTOPHER B. HARMON
JEFFREY A. LEE
WARREN B. LIGHTFOOT, JR.
ROBERT W. TAPSCOTT, JR.
THOMAS W. THAGARD III
PETER S. FRUIN
JOHN O. SOMERVILLE
MELISSA N. RIDGEWAY
WILLIAM B. WAHLHEIM, JR.
CARY O. TYNES
ELIZABETH G. BEAUBE
JAMES T. CARR

March 29, 1995

## VIA HAND DELIVERY

Honorable J. Foy Guin
Senior United States District Judge
Northern District of Alabama
619 Federal Courthouse
1729 N. Fifth Avenue
Birmingham, Alabama 35203

> Re:   *Elgin Sweeper Co. et al v. Powerscreen*
> *CV-94-G-0623-S*

Dear Judge Guin:

This letter is written on behalf of the defendant, Powerscreen International, PLC ("Powerscreen") in response to an inquiry from Ms. Mary Anne Gibbons. Ms. Gibbons recently contacted our office and stated that you wanted to know whether we agree with a certain paragraph contained in a letter dated March 22, 1995 from Anthony C. Valiulis, Esq. to your Honor. The certain paragraph that Ms. Gibbons made reference to reads as follows:

"In addition, discovery to date has shown that one additional issue was in fact resolved by arbitration.   In the deposition of Barry Cosgrove, the financial director of Powerscreen, he acknowledged that the closing balance sheet reflected a $92,000 receivable from Powerscreen which was not objected to by Powerscreen in the arbitration. Accordingly, Powerscreen's obligation on this receivable has been finally and conclusively determined."

208305 COPPEL 3520 3

Honorable J. Foy Guin
Page Two
March 28, 1995

---

Ms. Gibbons asked whether Powerscreen agreed with the above quoted paragraph in Mr. Valiulis' letter. Louis Coppedge responded by telephone to Ms. Gibbons, and informed her that Powerscreen did not entirely agree with this paragraph, and began to explain why. Ms. Gibbons requested that we write a letter to you explaining the reasons why Powerscreen did not agree with the above quoted paragraph in Mr. Valiulis' letter.

First, we believe it is important to point out what this $92,000 actually represents. While Guzzler Manufacturing, Inc. ("Guzzler") was owned by Powerscreen, in the normal course of its business, Guzzler would make an annual insurance premium payment in September. In September 1992, as in years past, Guzzler paid its annual insurance premium which covered Guzzler from September 1992 to August 1993. At the time of the closing of the purchase and sale of Guzzler to Elgin/Federal Signal from Powerscreen, Guzzler had in place insurance coverage which amounted to approximately $92,000 in pre-paid insurance premiums, that protected it from March 15, 1993 to August 31, 1993. Therefore, at the time the closing balance sheet was prepared, Guzzler had a $92,000 asset relating to this amount of insurance coverage. That is, as a standard accounting treatment the amount of the annual insurance premium relating to the coverage period from March 15, 1993 to August 31, 1993 must be reflected as an asset in Guzzler's financial statements.

This background information is important in evaluating the above quoted paragraph contained in Mr. Valiulis' March 22, 1995 letter. Mr. Valiulis' letter confuses two separate and distinct issues under the Stock Purchase Agreement. The first issue is the determination of the value of Guzzler through the closing balance sheet and the subsequent submissions which were submitted to the arbitrator and finalized by the decision of the arbitrator. The second issue concerns the aged receivables (i.e. the 120 days past due accounts receivable) which by its own terms (120 days after closing) and through the Stock Purchase Agreement were to be determined outside of the arbitration.

Since the $92,000 insurance prepayment was listed as an asset of Guzzler by Elgin/Federal Signal in the closing balance sheet, it was properly before the arbitrator and Powerscreen made no objection. The fact that Elgin/Federal Signal classified this asset of Guzzler as a "receivable" in its list of aged receivables instead of a "prepayment" does not magically transform it into a past due account that was to be listed on the aged receivables list as per the Stock Purchase Agreement. These are two separate issues under the Stock Purchase Agreement, and Powerscreen has consistently treated them as such.

As required by the Stock Purchase Agreement, on July 15, 1993 (120 days after closing), Elgin/Federal Signal presented Powerscreen with its first listing of the aged receivables. On

MAYNARD, COOPER & GALE, P.C.

Honorable J. Foy Guin
Page Three .
March 29, 1995

---

July 16, 1993, more than eight months before the arbitrator determined the value of Guzzler, Powerscreen replied to Elgin/Federal Signal's listing of aged receivables, and informed Elgin/Federal Signal that the $92,000 insurance prepayment should not be included in the aged receivable list. In stating that the $92,000 insurance prepayment has been finally and conclusively determined by the arbitrator as a receivable, Elgin/Federal Signal is comparing apples with oranges. There are, in fact, two separate issues at hand, the closing balance sheet of Guzzler submitted to the arbitrator and the aged receivables issue to be determined outside the arbitration.

With regard to the closing balance sheet, which was to enable the arbitrator to determine the net asset position of Guzzler as of March 15, 1993, Powerscreen's concern was that the $92,000 insurance prepayment be included as an asset to Guzzler. Inasmuch as the closing balance sheet submitted by Eglin/Federal Signal reflected this $92,000 insurance prepayment as an asset, Powerscreen did not object. On the other hand, with regard to the aged receivables issue, Powerscreen has objected from the outset that this $92,000 insurance prepayment not be classified as a past-due account receivable. Powerscreen has maintained this position throughout its dealings with Elgin/Federal Signal. In fact, in attempting to settle the entire aged receivables issue as is required by the Stock Purchase Agreement, Powerscreen tendered payment to Elgin/Federal Signal for the entire aged receivables it agreed were due and owing and again highlighted the insurance prepayment as not properly includable in the 120 day past-due accounts. Elgin/Federal Signal has taken the position that Powerscreen's payment of the aged receivables should be applied only to the $92,000 insurance prepayment which they somehow argue is a past-due account receivable. Powerscreen contends that both of these issues have been resolved. First, the $92,000 insurance prepayment was finally and conclusively determined by the arbitrator to be an asset of Guzzler rather than an aged receivable and was so noted on the closing balance sheet. Second, the net aged receivables, in which this $92,000 insurance prepayment does not belong, have been paid by Powerscreen in their entirety. Correspondence reflecting Powerscreen's position on these issues are attached. (These attachments are also exhibits to the deposition of Barry Cosgrove and Jeff Hunt).

We hope that the foregoing sets forth Powerscreen's position with regard to Ms. Gibbons' inquiry. Should there be any additional questions or comments, we would be happy to address them.

MAYNARD, COOPER & GALE, P.C.

Honorable J. Foy Guin
Page Four
March 29, 1995

Very truly yours,

James L. Goyer, III

JLGIII/tf
Enclosure

cc:    Linda Friedman, Esq.  (Via Facsimile) (205-251-8611)
       Richard H. Monk, III, Esq.  (Via Facsimile) (205-251-8611)
       Anthony C. Valiulis, Esq.  (Via Facsimile) (312-621-1750)
       JoAnne A. Sarisin, Esq. (Via Facsimile) (312-621-1750)

MAYNARD, COOPER & GALE, P.C.

**Much Shelist Freed Denenberg & Ament, P.C.**

ATTORNEYS AT LAW

200 North LaSalle Street, Suite 2100
Chicago, Illinois 60601-1095
312/346-3100 Telephone
312/621-1750 Fax

Joseph D Ament
William N Anspach, Jr
Ira Bell
Deborah L Benck
Sharon Swarsensky Bilow
Richard E Brandwein
Lawrence H Brenman
David T Brown
Penny Brown
Deborah Schmitt Bussert
Edith F Canter
Howard M. Cohen
Howard M Denenberg
Maria F Di Lorenzo
Jeffrey W Eich
Mary Jane Edelstein Fait
Michael J. Freed
Irving M. Geslewitz
Carol V. Gilden
Lewis B. Ginsberg
Marlene Reiser Halpern
Michael B Hyman

Karen Letscher Johnson
Wendy B Kahn
Steven A Kanner
Ellyn M Lansing
Sidney M Levine
Mark S Litner
William H London
Scott H Malin
Ralph M Martire
Debra A Mason
Susan Wiles Mayer
Barat S McClain
Morrie Much
Michael J Mueller
Norman B. Newman
Claire E. Pensyl
Jablanka Jacki Petrovic
Daniel K. Reising*
Arthur E Rosenson
Jeffrey C. Rubenstein
Michael B. Sadoff
Joanne A. Sarasin

Scott N Schreiber
Steven Schwartz
Edward D Shapiro
Michael R Shelist
Norman A Shubert
Evon S. Solms
William A Speary, Jr
Christopher J. Stuart
Deborah L. Thorne
Anthony C. Valiulis
Charles F Vihon
John H Ward
Idele L. Weinberg
Stuart M. Widman
Jeffrey S. Wilson
Philip Wong

OF COUNSEL
Steven A. Stender

Lawrence H. Eiger
(1937-1989)

**VIA FACSIMILE (205) 731-3446**

WRITER'S DIRECT LINE

(312) 621-1691

March 30, 1995

The Honorable J. Foy Guin, Jr.
Senior United States District Judge
Northern District of Alabama
619 Federal Court House
1729 North Fifth Avenue
Birmingham, Alabama  35203

Re:  **Elgin Sweeper Co., et al., v. Powerscreen,**
     **Case No.: CV-94-G-623-S**

Dear Judge Guin:

This is in response to the letter written by Defendant Powerscreen dated March 29, 1995, regarding the $92,000 receivable. In Powerscreen's letter, Defendant makes certain statements that are simply not true. First, Powerscreen claims that the $92,000 relates to prepaid insurance premiums on policies owned by Guzzler as of the closing date. Although the $92,000 does relate to prepaid insurance premiums, the policies involved were not an asset of Guzzler as of the closing. Rather, at the closing, those policies were assigned to Powerscreen, since Powerscreen was responsible under the agreement for product liability claims relating to machines manufactured before the sale. (See attached memo produced by Powerscreen during discovery.) Accordingly, the insurance asset belonged to Powerscreen, not Guzzler.

To reflect this transfer of an asset from Guzzler to Powerscreen, Guzzler booked it as a receivable from Powerscreen. In other words, since Guzzler had prepaid the $92,000 for the insurance and since that insurance had been assigned to Powerscreen to be used for Powerscreen's benefit, Powerscreen had to pay for that insurance. This obligation was therefore reflected on Guzzler's books as a receivable. It was also, accordingly, reflected on the closing balance sheet as a receivable.

Thus, Elgin did not misclassify the $92,000 as a receivable on the closing balance sheet, as Powerscreen claims. Rather, it properly reflected that amount as money owed by Powerscreen for the insurance that had been transferred to Powerscreen. Elgin then included this receivable on the closing balance sheet as a receivable, and not as an insurance asset. Powerscreen never objected to this classification and, therefore, that issue cannot now be raised by Powerscreen.

*Admitted to practice in Michigan only

Certain members are also admitted to practice in the District of Columbia and in the states of Florida, New York, Texas and Wisconsin

**Much Shelist Freed Denenberg & Ament, P.C.**

Page 2
The Honorable Judge Guin
March 30, 1995

Moreover, since the insurance was not owed by Guzzler (after having been transferred to Powerscreen), the only way it could appear as an asset on the balance sheet was as a receivable. Accordingly, Powerscreen was simply wrong when it claimed that "the $92,000 insurance prepayment was finally and conclusively determined by the arbitrator to be an asset of Guzzler rather than an aged receivable and was so noted on the closing balance sheet." Instead, the $92,000 was noted on the closing balance sheet as a receivable from Powerscreen. Nothing in the arbitration determined that the $92,000 was not a receivable. In fact just the opposite was true. Since Powerscreen did not object to its classification as a receivable, and since the only way that it could appear on the closing balance sheet as an asset was as a receivable, the arbitration has conclusively and finally determined that the $92,000 is a legitimate receivable owed by Powerscreen.

Finally, Plaintiff would like to point out that, in its letter, Powerscreen has made a very interesting admission which contradicts the position it has taken in connection with its summary judgment. On page 3 of the letter, Powerscreen admits that "the aged receivables issue [was] to be determined outside of the arbitration." As this Court is aware, in connection with its summary judgment motion, Powerscreen has repeatedly asserted that all issues between the parties were determined in the arbitration, including the aged receivable issue. Indeed, in the supplemental materials Powerscreen specifically stated that the aged receivable issue had been resolved by the arbitration. (See pages 13-14 of Powerscreen's supplemental memorandum.) Apparently Powerscreen now acknowledges that its prior position was in error.

Very truly yours,

Anthony C. Valiulis

ACV/cam
Enc.

cc: Linda Friedman (via facsimile, 205-251-8611)
James Goyer (via facsimile, 205-254-1999)

To:       J. R. Prewitt & Associates

From:     Guzzler Manufacturing, Inc.

Subject:  Cigna Policy No.: G1 62 61 38 0
          Policy Period: 9/1/92 to 9/1/93

Effective March 16, 1993, Powerscreen International PLC sold Guzzler
Manufacturing, Inc. to Federal Signal Corporation. The terms of the sale require
Powerscreen to retain the liabilities of all products manufactured or shipped
prior to March 16, 1993, irregardless of the date of loss.

We therefore request that Cigna assign the captioned policy to Powerscreen
International PLC, effective March 16, 1993.

P 0706

**Much Shelist Freed Denenberg & Ament, P.C.**
200 N. LaSalle Street, Suite 2100
Chicago, Illinois 60601-1095
(312)346-3100 Telephone
(312)621-1750 FAX (312)621-1484 FAX

## FACSIMILE TRANSMITTAL FORM

DATE: 3-30-95

TO: Honorable J. Foy Guin

ATTN:

FAX NUMBER: (205) 731-3446

FROM: Anthony C. Valiulis

NO. OF PAGES: 4
(Including Cover Sheet)

PLEASE CALL (312)346-3100, EXT. 658, IF YOU DO NOT RECEIVE ALL OF THE PAGES.

CLIENT NUMBER.MATTER NUMBER 31888OO . OO5

MESSAGE:

CATHY

WARNING: This telecopier transmittal may contain confidential or privileged information intended only for the use of the individual or entity named on this cover sheet. If you are not the intended recipient, please understand that any disclosure, copying, distribution, or use of the contents of this transmittal is strictly prohibited. If you have received this transmittal in error, please notify us by telephone immediately so we can arrange for retrieval of the original documents at no cost to you. Thank you.

MAYNARD, COOPER & GALE, P.C.

ATTORNEYS AT LAW

1901 SIXTH AVENUE NORTH

2400 AMSOUTH/HARBERT PLAZA

BIRMINGHAM, ALABAMA 35203-2602

(205) 254-1000

FACSIMILE (205) 254-1999

*T. Louis Coppedge*                                              *Direct Dial: 205-254-1094*

April 5, 1995

**Via Hand Delivery**

Honorable J. Foy Guin
Senior United States District Judge
Northern District of Alabama
619 Federal Court House
1729 N. Fifth Avenue
Birmingham, AL 35203

> RE:   *Elgin Sweeper Co. et al v. Powerscreen International, PLC*
>         *CV 94-G-0623-S*

Dear Judge Guin:

With the Court's prior permission, Powerscreen submits this letter in response to the letter written by Plaintiffs Elgin/Federal Signal dated March 30, 1995 regarding the issues surrounding the $92,000 insurance prepayment. In Elgin/Federal Signal's letter, the Plaintiffs attempt to mischaracterize certain statements made in Powerscreen's letter to your Honor dated March 29, 1995. Although the Plaintiffs admit that the $92,000 does relate to prepaid insurance premiums, they also state that "the policies involved were not an asset of Guzzler as of closing. Rather, at the closing, those policies were assigned to Powerscreen ...." Additionally, Elgin/Federal Signal attempt to discredit Powerscreen's position with regard to the aged receivables, by stating that Powerscreen has contradicted its earlier position. Both of these contentions are misplaced.

Elgin/Federal Signal contend that the insurance policies at issue were assigned to Powerscreen at closing due to the fact that Powerscreen was responsible under the agreement for product liability claims relating to machines manufactured before the sale. Elgin/Federal Signal argues, therefore, that the insurance asset belonged to Powerscreen, not Guzzler. In support of this position, the Plaintiffs have attached a memo which purports to be an assignment

209066 COPPEL 3520 3

of the insurance policy at issue from Guzzler to Powerscreen. There are several important facts about this purported assignment of the insurance policy to Powerscreen, however.

First, the Stock Purchase Agreement entered into between the parties makes no mention whatsoever of any assignment of this or any other insurance policy from Guzzler to Powerscreen. However, the Stock Purchase Agreement does directly address how the parties are to handle product liability claims. (See the First Amendment to Stock Purchase Agreement ¶¶ 1 and 2; Tab 9 to Exhibit 45 B. Cosgrove Depo.). It only makes sense that if any assignment of insurance were to be made regarding product liability claims relating to machines manufactured before the sale, it would be contained in this portion of the Stock Purchase Agreement. Additionally, Elgin/Federal Signal's contention that, as of closing, the insurance policy in question was assigned to Guzzler is incorrect. Elgin/Federal Signal attempts to support their contention with a stand-alone memorandum. To put this memorandum in context it must be viewed in its entirety. It appears that this memorandum was prepared unilaterally by Elgin/Federal Signal and was attached to an inter-company correspondence from Pam Krage to Kim Wehrenberg. Subsequently, it appears this correspondence was faxed by Mary Ellen Pennicook, of Elgin/Federal Signal, to Jay Tarmon, one of the attorneys who represented Powerscreen at the closing. (A copy of this correspondence is attached hereto.) Now that this memorandum is put into context, it becomes clear this memorandum, itself, did not effecutate an assignment of the insurance policy in question, and that the parties did not agree to such an assignment at closing. More importantly, Powerscreen has contacted the offices of J.R. Prewitt & Associates to ascertain whether they had ever received this memorandum or effected an assignment of the insurance policy at issue. After a review of the file on this insurance policy, J.R. Prewitt & Associates was unable to locate this memorandum and had no evidence that the insurance policy was ever assigned to Powerscreen.[1] Furthermore, after Powerscreen had tendered payment for the 120 days aged receivables to Elgin/Federal Signal, Mr. Kim Wehrenberg wrote a letter, dated September 22, 1994, to Jeff Hunt in which Mr. Wehrenberg assigns the $92,640 "Guzzler account receivable" to Powerscreen. This purported assignment did not occur, if at all, until the policy term had expired. (A copy of the letter and assignment, which are part of Deposition Exhibit 121 are attached hereto). If this insurance policy had already been assigned to Powerscreen in March, 1993, then why was it necessary to assign it again to Powerscreen in September, 1994 after Elgin/Federal Signal unilaterally applied the payment of the 120 days aged receivables to the $92,000 insurance prepayment.[2]

---

[1] Powerscreen will be glad to submit affidavits concerning the above matters if requested to do so by the Court.

[2] Furthermore, the memorandum which Elgin/Federal Signal contends assigned the insurance from Guzzler to Powerscreen does not prove that Powerscreen ever asked for or agreed to this assignment. What good is an assignment when the assignee is unaware of the assignment and is later charged with having to pay for something that he did not ask for and that he did not know was his?

MAYNARD, COOPER & GALE, P.C.

Elgin/Federal Signal also seeks to cast doubt upon the consistency of Powerscreen's position relative to the issue to the 120 days aged receivables. What Elgin/Federal Signal fails to recognize is that it set the parameters of the arbitration when it submitted its Closing Balance Sheet and position papers to the arbitrator.

Powerscreen's position with regard to the 120 days aged receivables issue in its summary judgment papers is clearly that Elgin/Federal Signal should not be able to classify accounts receivable items as "Reserve for Gross Profit on Warranty Sales," "Allowance for Doubtful Accounts" and "Allowance for Discounts" in the arbitration thereby receiving an adjustment in the Net Book Value of Guzzler, and also recoup these same items under different labels in the 120 days aged receivables outside the arbitration.

Powerscreen has consistently taken the position that the 120 days aged receivables, as contemplated by the Stock Purchase Agreement, was to be dealt with outside of arbitration, but when Elgin/Federal Signal, through its Closing Balance Sheet and position papers submitted to the arbitrator, made these items an issue, Powerscreen was forced to respond. To the extent the arbitrator decided and concluded these items they should naturally be out of the case as this Court has already ruled. Powerscreen's position on this issue has been consistent and any inconsistency that exists is due to how Elgin/Federal Signal defined the rules of the arbitration through their Closing Balance Sheet and position papers.

The Court has specifically requested Powerscreen to determine what Mr. George Vrana, the arbitrator from Arthur Andersen, said in his deposition with regard to this issue. From my review of Mr. Vrana's deposition, this issue was not directly addressed. Mr. Vrana stated that "[t]he only items we made any determination about were those specifically included in the items submitted as the objections from Powerscreen." (George Vrana Depo. p. 54).

It is true, as Powerscreen has previously acknowledged, that Elgin/Federal Signal listed the $92,000 insurance prepayment as a receivable in its Closing Balance Sheet submitted to the arbitrator, and Powerscreen made no objection because this listing treated the $92,000 as an asset of Guzzler. Clearly this insurance was an asset of Guzzler as of closing and protected Guzzler for product liability claims on machines manufactured between March 1993 and August 1993. Since the insurance had already been paid for once and it protected Guzzler through August 1993, Powerscreen had no reason to think that it would have to again pay for this insurance under the listing of the 120 days aged receivables.

Very truly yours,

T. Louis Coppedge

209066 COPPEL 3520 3

3

MAYNARD, COOPER & GALE, P.C.

TLC/tf
Enclosure

cc: Linda Friedman, Esq. (Via Facsimile) (205-251-8611)
Richard H. Monk, III Esq. (Via Facsimile) (205-251-8611
Anthony C. Valiulis, Esq. (Via Facsimile) (312-621-1750
JoAnne A. Sarasin, Esq. (Via Facsimile) (312-621-1750

209066 COPPEL 3520 3

4

MAYNARD, COOPER & GALE, P.C.



**FEDERAL SIGNAL CORPORATION**

KIM A. WEHRENBERG

Vice President, General Counsel
and Secretary

September 22, 1994

**VIA FAX: 011-44-533-693543**

Mr. Jeff Hunt
Powerscreen International PLC

Dear Jeff:

In accordance with Section 4 of the Agreement, attached is the
assignment to Powerscreen of the $92,640 Guzzler account
receivable, which with the 9% interest pursuant to Section 11 of
the Agreement, equates to the $102,089.55 Powerscreen wire
transferred to Elgin last week.

Sincerely,

Kim A. Wehrenberg

KAW:ln
Attachment

E 9083

## ASSIGNMENT

Guzzler Manufacturing, Inc. ("Guzzler") hereby assigns and transfers to Powerscreen International PLC all of Guzzler's rights, title and interests in the Guzzler Closing Balance Sheet Account Receivable of $92,640 owed by Powerscreen to Guzzler for Cigna Policy No. G1 62 61 30 0.

IN WITNESS WHEREOF, this assignment is executed on this 21st day of September, 1994.

Guzzler Manufacturing, Inc.

By: *Kim A. Wehrly*

E 9084

MAR-23-93 TUE 11:43    FEDEF"" SIGNAL CORP    FAX NO. 708 954 2041    P. 01

## FEDERAL SIGNAL CORPORATION
### CORPORATE OFFICE

FAX (708) 954-2041

TO: Jay Tannon    FAX: (502) 581-1087    # OF PAGES 3

COMPANY: Brown Todd & Heyburn

MESSAGE: Jay — I am passing along this memo from
our risk manager. Please forward to Powersareen
for their benefit, otherwise policy will be cancelled.

FROM: Mary Ellen Penicook

**FEDERAL SIGNAL CORPORATION**                    **INTRA-COMPANY CORRESPONDENCE**

| | | | |
|---|---|---|---|
| | | **Date:** | March 19, 1993 |
| **To:** | Kim Wehrenberg | **From:** | Pam Krage |
| | | **Location:** | Corporate |
| **Location:** | Corporate | **Phone:** | (708) 954-2024 |

**Subject:** General/Product Liability Insurance
Guzzler Manufacturing, Inc.
Cigna Policy #GLG261300
Policy Period: 9/1/92 to 9/1/93

In order to have the captioned policy transferred to Powerscreen,
Guzzler Manufacturing, Inc. must advise their broker to contact
Cigna and request that it be assigned to Powerscreen
International PLC. Otherwise, I recommend we cancel this policy,
effective 3/16/93.

In order to reconsider the indemnification obligation after three
years, in compliance with the First Amendment to Stock Purchase
Agreement, we require evidence of Powerscreen's ongoing insurance
coverage and claims data updated annually.

Sample wording is attached. Please advise as soon as possible.

Pam Krage

PK:cj

enclosure

To:       J. R. Prewitt & Associates

From:     Guzzler Manufacturing, Inc.

Subject:  Cigna Policy No.: G1 62 61 30 0
          Policy Period: 9/1/92 to 9/1/93

Effective March 16, 1993, Powerscreen International PLC sold Guzzler
Manufacturing, Inc. to Federal Signal Corporation. The terms of the sale require
Powerscreen to retain the liabilities of all products manufactured or shipped
prior to March 16, 1993, irregardless of the date of loss.

We therefore request that Cigna assign the captioned policy to Powerscreen
International PLC, effective March 16, 1993.

MAYNARD, COOPER & GALE, P.C.

ATTORNEYS AT LAW

1901 SIXTH AVENUE NORTH

2400 AMSOUTH/HARBERT PLAZA

BIRMINGHAM, ALABAMA 35203-2602

(205) 254-1000

FACSIMILE (205) 254-1999

*T. Louis Coppedge*                                                    *Direct Dial No. 205-254-1094*

April 6, 1995

**VIA HAND DELIVERY**

Honorable J. Foy Guin
Senior United States District Judge
Northern District of Alabama
619 Federal Court House
1729 N. Fifth Avenue
Birmingham, AL  35203

      Re:   *Elgin Sweeper Co., et al. v. Powerscreen International, PLC*
           *CV 94-G-0623-S*

Dear Judge Guin:

      This afternoon, I was contacted by Ms. Libby Martin at J.R. Prewitt & Associates regarding the insurance policy that has been the subject of several letters directed to your Honor. Ms. Martin informed me that they had conducted additional research into all of the files that they had concerning Guzzler, which required her to pull several files from an archived area. Ms. Martin said that after this additional research she located correspondence which indicates that they received the memorandum regarding a potential assignment of the insurance policy from Guzzler to Powerscreen. Ms. Martin informed me that they received this memorandum attached to a letter from Ms. Mary Ellen Pennicook of Federal Signal. I then asked Ms. Martin whether J.R. Prewitt & Associates actually effected an assignment of this insurance policy from Guzzler to Powerscreen, and if they had done so, then why Powerscreen was not notified of such assignment. Ms. Martin replied that she did not show that an actual assignment of the policy had been made, but rather two additional insureds had been listed on the policy effective March 31, 1993. Those two additional insureds were Powerscreen International, PLC and Federal Signal Corporation. It appears that both the purchaser and seller corporations were listed as additional insureds on the policy after the closing of the transaction between the parties. I have requested a copy of the Addendum to the insurance policy which shows this change from Ms. Martin, and once I have received it I will forward a copy to the Court.

Honorable J. Foy Guin
April 6, 1995
Page Two

        In light of the confusion surrounding this issue, I felt it was necessary to clarify to the court the information that has just been passed along to me. Should you have any questions or comments regarding this matter please do not hesitate to call me.

                                        Very truly yours,

                                        T. Louis Coppedge

TLC/tf

cc:     Linda Friedman, Esq. (Via Facsimile) (205-251-8611)
        Richard H. Monk, III Esq. (Via Facsimile) (205-251-8611)
        Anthony C. Valiulis, Esq. (Via Facsimile) (312-621-1750)
        JoAnne A. Sarasin. (Via Facsimile) (312-621-1750)

MAYNARD, COOPER & GALE, P.C.

## MAYNARD, COOPER & GALE, P.C.

ATTORNEYS AT LAW

1901 SIXTH AVENUE NORTH

2400 AMSOUTH/HARBERT PLAZA

BIRMINGHAM, ALABAMA 35203-2602

(205) 254-1000

FACSIMILE (205) 254-1999

T. Louis Coppedge                                        Direct Dial No. 205-254-1094

April 7, 1995

**VIA HAND DELIVERY**

Honorable J. Foy Guin
Senior United States District Judge
Northern District of Alabama
619 Federal Court House
1729 N. Fifth Avenue
Birmingham, AL  35203

          Re:     *Elgin Sweeper Co., et al. v. Powerscreen International, PLC*

Dear Judge Guin:

          Enclosed is a copy of the Declarations Update Endorsement pertaining to the insurance
policy at issue in the above referenced matter. I am forwarding this copy to you in keeping with
my most recent letter. It is clear from this document that both Powerscreen International, PLC
and Federal Signal Corporation were listed as additional insureds on the insurance policy
effective March 31, 1993, two weeks after the closing. The Declaration also states that "[a]ll
other elements of your policy declarations are not affected by this endorsement." Ms. Libby
Martin, of J.R. Prewitt Associates, also mentioned to me yesterday that the policy expired by
its terms on September 1, 1993, and was subsequently canceled due to non-renewal. Hopefully,
this information will be helpful to your Honor.

          Should you have any questions or comments regarding this matter, please do not hesitate
to call either Jim Goyer or me.

                                                  Very truly yours,

                                                  T. Louis Coppedge

TLC/tf
Enclosure

cc:    Linda Friedman, Esq. (Via Facsimile) (205-251-8611)
        Richard H. Monk, III Esq. (Via Facsimile) (205-251-8611)
        Anthony C. Valiulis, Esq. (Via Facsimile) (312-621-1750)
        JoAnne A. Sarasin, Esq. (Via Facsimile) (312-621-1750)

| INSURANCE COMPANY OF NORTH AMERICA | SYM | POLICY ID |
|---|---|---|
| | OGL | G1 62 61 30 0 |

**DECLARATIONS UPDATE ENDORSEMENT**

PRODUCER BILLED

**NAMED INSURED**

GUZZLER MANUFACTURING, INC.
P O BOX 66.
BIRMINGHAM, AL 35201

SERVICE OFFICE    BIRMINGHAM

**ENDORSEMENT EFFECTIVE DATE** 03/31/93    **POLICY PERIOD** 09/01/92 TO 09/01/93

ELEMENTS OF YOUR POLICY DECLARATIONS ARE CHANGED AS SHOWN BELOW. ALL OTHER
ELEMENTS OF YOUR POLICY DECLARATIONS ARE NOT AFFECTED BY THIS ENDORSEMENT.
THESE CHANGES APPLY TO LOSS, INJURY, OR DAMAGE WHICH OCCUR(S) ON OR AFTER
THE EFFECTIVE DATE SHOWN ABOVE.

**P R E M I U M   C H A N G E S**

YOUR TOTAL PREMIUM IS INCREASED BY        $100.

**O T H E R   C H A N G E S**

CG-2026 ADDITIONAL INSURED - DESIGNATED PERSON OR ORGANIZATION ALSO
APPLIES TO:

SCHEDULE
NAME OF PERSON OR ORGANIZATION: 1 - POWERSCREEN INTERNATIONAL PLC
                                2 - FEDERAL SIGNAL CORPORATION

AUTHORIZED AGENT

ENDORSEMENT # 1              (LAST PAGE)                              PAGE      1

THIS COPY TO:

| | PROCESSED: | PRODUCER: | DESTINATION: |
|---|---|---|---|
| INSURED | 04/06/93 | 101546 | 101546 |
| CC-9P99 | 93096 | #CPK-9416 | MKT: BIS |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
619 FEDERAL COURTHOUSE
1729 FIFTH AVENUE NORTH
BIRMINGHAM, ALABAMA 35203

CHAMBERS OF
J. FOY GUIN, JR
JUDGE

(205) 731-1795
FTS 229 1795

July 7, 1995

James L. Goyer III / Tony G. Miller / T. Lewis Coppedge
MAYNARD, COOPER & GALE, P.C.
1901 Sixth Avenue North
2400 AmSouth/Harbert Plaza
Birmingham, Alabama 35203-2602

Anthony C. Valiulis / John H. Ward / Joanne A. Sarasin
MUCH SCHLIST FREED DENENBERG & AMENT, P.C.
200 N. LaSalle, Suite 2100
Chicago, IL 60601-1095

Linda A. Friedman / Richard H. Monk III
BRADLEY, ARANT, ROSE & WHITE
2001 Park Place Suite 1400
Birmingham, Alabama 35203-2736

> Re: <u>Elgin Sweeper Co.</u> <u>v.</u> <u>Powerscreen</u>
> Civil Action No. 94-G-0623-S

Counsel:

        Judge Guin would like answers to the following questions:

        Did the arbitrator have the $92,000.00 issue before
him?  If he treated it as an asset or receivable, the issue is
closed.  How does his deposition testimony answer the question?
If he arbitrated the issue without having the right to arbitrate
it, and his right to arbitrate it was not questioned, his deci-
sion is binding.  If he didn't decide the issue, it is a jury
question not subject to discussion at this time.

        You are to respond to the above with **copies of record
excerpts** by July 14, 1995.

        Thank you.

                                    Sincerely,

                                    Mary Anne Gibbons
                                    Law Clerk

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

J. FOY GUIN, JR. JUDGE
FEDERAL COURTHOUSE
BIRMINGHAM, ALABAMA 35203

OFFICIAL BUSINESS
PENALTY FOR PRIVATE USE $300



Postage and Fees Paid
United States Courts
USC 434

CC: TGM
    TLC

James L. Coyer III / Tony G. Miller / T. Lewis Coppedge
MAYNARD, COOPER & GALE, P.C.
1901 Sixth Avenue North
2400 AmSouth/Harbert Plaza
Birmingham, Alabama 35203-2602

BRADLEY, ARANT, ROSE & WHITE

2001 PARK PLACE, SUITE 1400

BIRMINGHAM, ALABAMA 35203

HUNTSVILLE OFFICE
200 CLINTON AVENUE WEST
SUITE 900
HUNTSVILLE, ALABAMA 35801

TELEPHONE (205) 517-5100
FACSIMILE (205) 533-5069

MAILING ADDRESS
POST OFFICE BOX 830709
BIRMINGHAM, ALABAMA 35283-0709

TELEPHONE (205) 521-8000

PARK PLACE TOWER OFFICE
FACSIMILE (205) 252-0264

SOUTHTRUST TOWER OFFICE
420 NORTH 20TH STREET
SUITE 2000
BIRMINGHAM, ALABAMA 35203

FACSIMILE (205) 251-9915

July 14, 1995

Direct Dial (205) 521-8516

**VIA HAND DELIVERY**

Honorable J. Foy Guin, Jr.
United States District Court
Northern District of Alabama
1729 North 5th Avenue
Birmingham, Alabama 35203

Re: Elgin Sweeper Company v. Powerscreen International, PLC
    Civil Action No.: CV-94-G-0623-S

Dear Judge Guin:

This is in response to the letter from your office dated July 7, 1995, regarding the $92,640 receivable issue. To answer the Court's questions, the arbitrator had the issue before him only indirectly. This is because, as indicated in Plaintiffs' prior submissions, Powerscreen did not object to the inclusion of the $92,640 as an account receivable on the closing balance sheet submitted by Plaintiffs. Because it was not objected to by Powerscreen, the arbitrator did not specifically consider it and was not questioned about it during his deposition. Accordingly, there are no relevant deposition excerpts, since the arbitrator did not make any express findings regarding the $92,640. If Powerscreen had objected to plaintiffs' inclusion of the $92,640 as a receivable, which Powerscreen had the right to do, then the arbitrator would have expressly dealt with it.

If we can be of any further assistance, please let us know.

Very truly yours,

Richard H. Monk III

RHM,III:sld

cc:     T. Louis Coppedge, Esq. (via hand delivery)

Honorable J. Foy Guin, Jr.
July 14, 1995
Page 2

bcc:  Anthony C. Valiulis, Esq. (via facsimile)
      Kim Wehrenberg, Esq.

**BRADLEY, ARANT, ROSE & WHITE**
1400 PARK PLACE TOWER
BIRMINGHAM, ALABAMA  35203

DATE: _____July 14, 1995_____     TIME: _____

PLEASE DELIVER THE FOLLOWING PAGES TO:

NAME: ____Anthony C. Valiulis, Esq.____     FAX NO.     312-621-1750

PLACE: ____Much, Shelist, Freed____     PHONE NO. _____

THIS TRANSMITTAL BEING SENT BY:

NAME: ____Richard H. Monk III, Esq.____     DIRECT DIAL 205-521-8516

MESSAGE:

NUMBER OF PAGES __3__ INCLUDING COVER SHEET
TRANSMITTING FROM:
__ Ricoh 610 (205) 252-0264     __ Canon 730 (205) 251-8611     __ Ricoh 610 (205) 251-8665

IF YOU DO NOT RECEIVE ALL PAGES, PLEASE CALL BACK AS SOON AS POSSIBLE. MY
NUMBER IS (205) 521-8384.

NAME: _____Michael_____
Operator

UNLESS OTHERWISE INDICATED OR OBVIOUS FROM THE NATURE OF THE TRANSMITTAL, THE INFORMATION CONTAINED
IN THIS FACSIMILE MESSAGE IS ATTORNEY PRIVILEGED AND CONFIDENTIAL INFORMATION INTENDED FOR THE USE OF THE INDIVID-
UAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, OR THE EMPLOYEE OR AGENT
RESPONSIBLE TO DELIVER IT TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION
OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR OR
ARE NOT SURE WHETHER IT IS PRIVILEGED, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE, AND RETURN THE ORIGINAL
MESSAGE TO US AT THE ABOVE ADDRESS VIA THE U.S. POSTAL SERVICE AT OUR EXPENSE. THANK YOU.

69950-30262

MAYNARD, COOPER & GALE, P.C.

ATTORNEYS AT LAW

1901 SIXTH AVENUE NORTH

2400 AMSOUTH/HARBERT PLAZA

BIRMINGHAM, ALABAMA 35203-2602

(205) 254-1000

FACSIMILE (205) 254-1999

T. Louis Coppedge                                          Direct Dial: 205-254-1094

July 14, 1995

**VIA HAND DELIVERY**

Honorable J. Foy Guin, Jr.
United States District Court
Northern District of Alabama
Hugo Black United States Courthouse
1729 5th Avenue North
Birmingham, Alabama 35203

Re:   *Elgin Sweeper, et al. v. Powerscreen International, PLC, et al.*

Dear Judge Guin:

This letter will serve to answer the questions raised in your letter dated July 7, 1995 to all counsel in the above-referenced matter and will set forth Powerscreen's position on this issue. It bears repeating, however, that the $92,640 insurance <u>prepayment</u> issue represents an alleged receivable that Powerscreen has already <u>paid</u> for once. Plaintiffs are trying to get Powerscreen to pay for this same insurance again by their unilateral and unsuccessful attempt to assign this insurance to Powerscreen.

Question No 1.  <u>Did the Arbitrator Have the $92,000 Issue Before Him?</u>

Answer to Question No. 1.

Although no objection was presented to the arbitrator as to the classification of the $92,640 insurance prepayment in the Closing Balance Sheet, the arbitrator made a final and binding decision as to the Closing Balance Sheet of Guzzler and the $92,640 insurance prepayment was included as an asset of Guzzler in the line item "other receivables."   A copy of the Closing Balance Sheet recently attached to the affidavit of Richard L. Ritz, is also attached hereto as Exhibit A.

Paragraph 4 of the Stock Purchase Agreement provides that Guzzler and Elgin "shall prepare and deliver to Seller [Powerscreen], an unaudited Closing Balance Sheet of the Company [Guzzler] as of the Closing Date, which shall be

Honorable J. Foy Guin, Jr.
July 14, 1995

Page 2

> prepared in accordance with United States generally accepted
> accounting principles and shall include all appropriate year-end
> reserves, accruals and allowances. . . .   A reserve for accounts
> receivable shall be included and if the company does not collect all
> accounts receivables existing as of the Closing, within 120 days of
> Closing then Seller [Powerscreen] shall pay to Buyer [Elgin] the
> amount of the uncollected accounts, less the reserve, and such
> accounts shall be assigned to Seller. . . .   In the event Seller
> [Powerscreen] and Buyer (Elgin) are not able to agree within 90
> days of Closing on the Company's [Guzzler] appropriate "Net
> Book Value". . .then any objections that the Seller has to the
> Closing Balance Sheet shall be submitted to the Independent Audit
> firm of Arthur Andersen for an opinion in light of the terms and
> provisions of this Agreement and such opinion shall be final and
> binding on the parties."

In preparation of the Closing Balance Sheet, Elgin created a line item for "other receivables" in which it included the $92,640 insurance prepayment. See Exhibit A. Also on the Closing Balance Sheet is a line item for "accounts receivable." This reserve, "accounts receivable", is specifically mentioned in paragraph 4 of the Stock Purchase Agreement in connection with the 120 days past due accounts receivable issue, yet the $92,640 insurance prepayment does not appear in this reserve.

As Powerscreen has noted on several occasions, since the $92,640 insurance prepayment was classified as "other receivables" on the asset side of the ledger of the Closing Balance Sheet, Powerscreen had no objection to this classification. That is, the inclusion of the $92,640 insurance prepayment being listed on the asset side of the Closing Balance Sheet increased the Net Book Value of Guzzler which was to Powerscreen's advantage. Nevertheless, although the $92,640 insurance prepayment was not listed in the line item for "accounts receivable" in preparation of the Closing Balance Sheet, the $92,640 insurance prepayment somehow found its way onto the subsequent listing by Elgin/Federal Signal of the 120 days past due accounts receivable which Powerscreen was to pay for pursuant to Paragraph 4 of the Stock Purchase Agreement. The Stock Purchase Agreement contemplates that any objections that Powerscreen may have had to the Closing Balance Sheet were to be submitted to Arthur Andersen for a determination. Since Powerscreen had no objection to the $92,640 insurance prepayment being classified as a "other receivable" and an asset of Guzzler, Arthur Andersen was not called upon to make an express determination on that specific issue. However, because Elgin/Federal Signal itself listed the $92,640 insurance prepayment as an "other receivable" on the asset side of the Closing Balance Sheet submitted to Arthur Andersen, it was finally and

MAYNARD, COOPER & GALE, P.C.

Honorable J. Foy Guin, Jr.
July 14, 1995

Page 3

conclusively determined by the Arbitrator as an asset of Guzzler. Elgin/Federal Signal thus is estopped from re-classifying the $92,640 insurance pre-payment as part of the 120 day accounts receivable.

Question No. 2.   How Does His [George Vrana] Deposition Testimony Answer the Question?

Answer to Question No. 2.

    The deposition testimony of George Vrana does not specifically address the $92,640 insurance prepayment issue. Mr. Vrana testified in his deposition that Arthur Andersen did not address the 120 past due accounts receivable issue. *See Vrana Depo.* at page 90, a copy of which is attached hereto as Exhibit B.

    However, the recent deposition testimony of Susan Ragland, Vice President and Controller at Guzzler, conclusively supports Powerscreen's position regarding the $92,640 insurance prepayment issue.   Ms. Ragland testified that although the $92,640 insurance prepayment amount was included on the list of accounts receivable that was provided to Powerscreen in July, 1994, this item had not been listed as an account receivable on the schedule that was prepared at the time of closing.   It was Ms. Ragland's testimony that this item was added as an account receivable <u>after</u> the Closing Balance Sheet was prepared. *See Ragland Depo.* at pp. 346-349, copies of these pages from Ms. Ragland's deposition are attached hereto as Exhibit C.   Ms. Ragland's testimony makes it clear that at the time of the preparation of the Closing Balance Sheet, the $92,640 insurance prepayment was not an account receivable that appeared on Guzzler's aging accounts receivables listing.   It was only after the preparation of the Closing Balance Sheet that Elgin/Federal Signal unilaterally attempted to transform the $92,640 insurance prepayment into a past due account for which they sought payment from Powerscreen.   Since this item was an asset included on the Closing Balance Sheet submitted to Arthur Andersen and protected Guzzler from liability claims on machines manufactured between March, 1993 and August, 1993, there was no reason for Powerscreen to believe it would have to pay for this insurance again.   Therefore, Powerscreen is entitled to summary judgment on this issue.

Very truly yours,

T. Louis Coppedge

TLC/mpw
cc:   Anthony C. Valiulis, Esq.
       Richard H. Monk III, Esq.

223492 COPPEL

MAYNARD, COOPER & GALE. P.C.

A

- 6-95 FRI 15:37    FEDERAL SIGNAL CORP    FAX NO. 708 XXX XX    P. 02/06

**EXHIBIT A**

GUZZLER MANUFACTURING, INC.
BALANCE SHEET
MARCH 15, 1993

## ASSETS

**CURRENT ASSETS**

| | | |
|---|---|---|
| Cash equivalents | | $1,026,424 |
| Accounts receivable, less allowance for doubtful accounts of $42,234 | 3,204,247 | |
| Other receivables | 116,050 | |
| Inventories | 4,802,445 | |
| Prepaid expenses | 127,732 | |
| Deferred income taxes | 376,272 | |
| Total current assets | | 9,653,170 |

**PROPERTIES AND EQUIPMENT**

| | | |
|---|---|---|
| Land | 390,845 | |
| Building | 1,900,515 | |
| Machinery and equipment | 1,065,493 | |
| Furniture and fixtures | 634,840 | |
| | 4,079,693 | |
| Less accumulated depreciation | (1,662,161) | |
| | | 2,417,532 |

| | |
|---|---|
| NET REALIZEABLE VALUE OF ASSETS NOT IN USE | 188,000 |
| INTANGIBLES AND OTHER ASSETS | 71,142 |
| | $12,329,844 |

## LIABILITIES AND STOCKHOLDER'S EQUITY

**CURRENT LIABILITIES**

| | |
|---|---|
| Current maturities of long-term debt | $120,000 |
| Accounts payable | 2,104,894 |
| Accrued expenses | 1,944,357 |
| Due to parent company: | |
| Note payable | 4,922,296 |
| Dividend payable | 1,995,000 |
| Income taxes payable | 80,152 |
| Total current liabilities | 11,166,699 |

| | |
|---|---|
| LONG-TERM DEBT | 730,000 |

**STOCKHOLDER'S EQUITY**

| | |
|---|---|
| Common stock, $1 par value, 1,000,000 shares authorized, 95,000 shares issued | 95,500 |
| Additional paid-in capital | 604,206 |
| Treasury shares, 75,500 shares, at cost | (293,455) |
| Retained earnings | 26,894 |
| | 433,145 |

**CONTINGENCIES**

| | |
|---|---|
| | $12,329,844 |

See Notes to Balance Sheet.

**B**

90

1       A.      No.

2       Q.      Sales, general -- what's SG&A expenses,

3   sales, general and administration?

4       A.      Selling, general and administrative

5   expenses.  No.

6       Q.      Did Arthur Andersen in connection with

7   the arbitration make any determination regarding

8   Guzzler's fair market value?

9       A.      No.

10      Q.      Did they make any determination regarding

11  Powerscreen's obligation, if any, under the Stock

12  Purchase Agreement to purchase back uncollected

13  receivables?

14      A.      No.

15      Q.      I asked you about representations made by

16  Powerscreen regarding sales volume, cost, profit

17  margins, et cetera.  Let me ask you a little

18  differently.  In connection with this arbitration

19  did Arthur Andersen make any determinations

20  regarding Guzzler's sales volumes or costs or profit

21  margins or net profit margins?

22      A.      No.

23      Q.      Did Arthur Andersen make any

24  determinations pursuant to accuracy of any

25  representations made by Powerscreen to Elgin

C

**EXHIBIT C**

1   because of something that occurred after

2   March 16, '93?

3           MR. VALIULIS:   Object to the

4   form of the question.   It's a little

5   unclear.

6       A.    Are you asking whether some of

7   these accounts were not paid because of

8   a situation that arose after March 16?

9       Q.    Where somebody called and said

10  I'm not going to pay this because of you

11  did this and whatever, this was incurred

12  after March 16?

13      A.    I'm not aware of any

14  situations like that.

15      Q.    There's one item on here which

16  is 3-15 for $92,600 for an insurance

17  thing.   Do you see that?

18      A.    Yes.

19      Q.    Was that something that just

20  popped up when you did this computer

21  run, or was that something that was

22  added to this list?

23      A.    This $92,640 was included in

1    our accounts receivable as of March

2    15th, '93.

3        Q.    The list of accounts

4    receivable?

5        A.    Yes.    The accounts receivable

6    that tied to that closing balance sheet

7    on March 15th, '93.

8        Q.    Okay.  I'm not sure what you

9    are saying.

10            MR. VALIULIS:   It means when

11   it was run on July 14th, it popped up --

12   to answer your question -- because it

13   was already there March 15th.

14       Q.    When was it put on?  When was

15   that one added to the list of accounts

16   receivables?

17       A.    It was added to our accounts

18   receivable balance in connection with

19   preparing the closing balance sheet as

20   of March 15th, '93.

21       Q.    Which was done after March 15,

22   '93?

23       A.    That's correct.

**Foshee & Turner**

REGISTERED PROFESSIONAL REPORTERS

348

1       Q.    There was not if you had -- on

2   March 16, if you had punched up a list

3   of outstanding accounts receivable, that

4   $92,000 number would not have shown up?

5       A.    It would not have appeared on

6   our aging as of that date.

7       Q.    Can you tell when it was added

8   to the list?

9       A.    No.

10      Q.    Or when it was put into the

11  computer as an account receivable?

12      A.    No.

13      Q.    Do you have any knowledge of

14  when it was put in?

15          MR. VALIULIS:  Outside of what

16  she testified to?  She said it was in

17  connection with the closing balance.

18          MR. MILLER:  I know, but as

19  far as a time.

20      A.    No.  I don't have knowledge.

21      Q.    Or a month?

22      A.    Memory.  I don't have memory

23  of that, no.

**Foshee & Turner**
REGISTERED PROFESSIONAL REPORTERS

349

1      Q.    Or a month?

2      A.    No.

3

4      (Whereupon, Plaintiff's Exhibit 265

5   was marked for identification.)

6

7      Q.    Exhibit 265 is a letter to you

8   dated September 14, 1994 from Jeff Hunt,

9   with reference 120 days, accounts

10  receivable.  Do you recall receiving the

11  copy of this letter?

12     A.    Yes.

13     Q.    Mr. Hunt references a meeting

14  of August 18 to discuss the -- this

15  issue.  Is that the meeting that you

16  were talking about earlier where Mr.

17  Cosgrove and Mr. Hunt met at your office

18  to discuss this issue and they were

19  provided access to information

20  concerning these accounts?

21     A.    Yes.

22     Q.    That's the meeting that I'm

23  referring to.

BRADLEY, ARANT, ROSE & WHITE

2001 PARK PLACE, SUITE 1400

BIRMINGHAM, ALABAMA 35203

HUNTSVILLE OFFICE
200 CLINTON AVENUE WEST
SUITE 900
HUNTSVILLE, ALABAMA 35801

TELEPHONE (205) 517-5100
FACSIMILE (205) 533-5069

MAILING ADDRESS
POST OFFICE BOX 830709
BIRMINGHAM, ALABAMA 35283-0709

TELEPHONE (205) 521-8000

PARK PLACE TOWER OFFICE
FACSIMILE (205) 252-0264

SOUTHTRUST TOWER OFFICE
420 NORTH 20TH STREET
SUITE 2000
BIRMINGHAM, ALABAMA 35203

FACSIMILE (205) 251-9915

July 17, 1995

Direct Dial (205) 521-8516

**VIA HAND DELIVERY**

Honorable J. Foy Guin, Jr.
United States District Court
Northern District of Alabama
1729 North 5th Avenue
Birmingham, Alabama 35203

> **Re:** **Elgin Sweeper Company v. Powerscreen International, PLC**
> **Civil Action No.: CV-94-G-0623-S**

Dear Judge Guin:

In response to the Court's request, on Friday both parties submitted letters answering certain questions. In Defendant's response, however, Powerscreen did more than answer the Court's questions. It also raised two new arguments. Since Plaintiffs have not had an opportunity to address these arguments before, they seek to do so now.

First, in its letter Defendant brought up for the first time deposition testimony from Susan Ragland, Guzzler's controller. According to Defendant, Ms. Ragland supposedly admitted during her deposition that the $92,640 receivable was not a receivable at the time of the closing but only became one later. This is not what Ms. Ragland said, however, as can be readily ascertained from a reading of the deposition excerpts attached to Defendant's letter.

What happened was this. At the closing, which physically took place on March 16, 1993 but was as of March 15, Plaintiffs asked Defendant if it wanted to retain the protection of certain insurance that Guzzler intended to cancel and obtain a $92,640 refund. Since Powerscreen was obligated to indemnify Plaintiffs for post-closing product

Honorable J. Foy Guin, Jr.
July 17, 1995
Page 2

liability claims, it wanted to retain the benefit of this insurance.  On the other hand,
because Guzzler was already protected against such claims by Federal Signal's risk
management program, as well as by Defendant's indemnity, it did not need this
additional insurance.  Accordingly, the coverage was assigned to Defendant as of the
closing.  The paper work, of course, had to take place after the closing.  It was the
parties agreement, however, that the effective date of the assignment would be as of the
closing.  (See the affidavits attached to Plaintiffs' initial Motion for Reconsideration).

       What this means is that, if someone at Guzzler ran an accounts receivable
listing on the actual day of closing, the $92,640 receivable would not show up, since it
had not yet been documented.  However, that does not mean that the receivable did not
exist as of that date.  Indeed it did, since this is what the parties agreed to at the closing.
It was then later documented as of the date of closing, March 15, 1993, and then was
included as a receivable on the Closing Balance Sheet.  This is all that Ms. Ragland said
at her deposition.  Thus, Ms. Ragland stated quite explicitly that "this $92,640 was
included in our accounts receivable as of March 15, 1993." (Ragland Dep. 346-47).  She
also stated, again explicitly, that it was added to the "accounts receivable balance in
connection with preparing the Closing Balance Sheet as of March 15, 1993." (Ragland
Dep. 374).

       Second, even though Defendant now admits that the $92,640 was listed as a
receivable on the Closing Balance Sheet, it for the first time claims that, even though it
was a receivable, it was not listed as an account receivable and therefore is not covered
by paragraph 4 of the Stock Purchase Agreement.  As the Court is aware, under the
Stock Purchase Agreement, Defendant is obligated to pay Plaintiffs for any accounts
receivable as of March 15, 1993, which were still unpaid 120 days after closing.
Defendant claims that, even though the $92,640 was clearly listed on the Closing Balance
Sheet as a receivable, it does not fall within the purview of this provision of the
agreement.  In so arguing, however, Defendant ignores that, whether or not this $92,640
is a receivable or an account receivable covered by paragraph 4, it would still be owed by
Powerscreen.

       If the $92,640 is an account receivable covered by paragraph 4, then
Powerscreen owes it to Plaintiffs under that paragraph since it was not collected within
120 days.  But even if it is not an account receivable covered by paragraph 4, but is
simply a receivable, it is still owed by Powerscreen.  Even if Powerscreen does not owe it
under paragraph 4 as an uncollected account receivable, it nonetheless owes the $92,640
to Guzzler since it was a receivable reflecting Powerscreen's obligation to pay Guzzler

Honorable J. Foy Guin, Jr.
July 17, 1995
Page 3

for the insurance coverage Powerscreen had received.  Certainly nothing in Arthur
Andersen's decision could in any way be construed as holding that this $92,640 is not a
receivable owed by Powerscreen. And nothing in Arthur Andersen's decision could be
construed as holding that the $92,640 was simply a general asset for prepaid insurance,
Defendant's original position.

        One final point, it appears that the parties do agree that Arthur Andersen
did not specifically deal with this issue.

                                        Very truly yours,

                                        Richard H. Monk III

RHM,III:sld

cc:    T. Louis Coppedge, Esq. (via hand delivery)

Honorable J. Foy Guin, Jr.
July 17, 1995
Page 4

bcc:    Anthony C. Valiulis, Esq. (via facsimile)

BRADLEY, ARANT, ROSE & WHITE
1400 PARK PLACE TOWER
BIRMINGHAM, ALABAMA 35203

DATE: _____July 17, 1995_____     TIME: _____

PLEASE DELIVER THE FOLLOWING PAGES TO:

NAME: ____Anthony C. Valiulis, Esq._____     FAX NO. ____312-621-1750_____

PLACE: ____Much, Shelist, Freed_____     PHONE NO. _____

THIS TRANSMITTAL BEING SENT BY:

NAME: ____Richard H. Monk III, Esq._____     DIRECT DIAL _205-521-8516_____

MESSAGE:


NUMBER OF PAGES __5__ INCLUDING COVER SHEET
TRANSMITTING FROM:
__ Ricoh 610 (205) 252-0264     __ Canon 730 (205) 251-8611     __ Ricoh 610 (205) 251-8665

IF YOU DO NOT RECEIVE ALL PAGES, PLEASE CALL BACK AS SOON AS POSSIBLE. MY NUMBER IS (205) 521-8384.


NAME: _____
                                    Operator

UNLESS OTHERWISE INDICATED OR OBVIOUS FROM THE NATURE OF THE TRANSMITTAL, THE INFORMATION CONTAINED IN THIS FACSIMILE MESSAGE IS ATTORNEY PRIVILEGED AND CONFIDENTIAL INFORMATION INTENDED FOR THE USE OF THE INDIVID-UAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE TO DELIVER IT TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR OR ARE NOT SURE WHETHER IT IS PRIVILEGED, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE, AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS VIA THE U.S. POSTAL SERVICE AT OUR EXPENSE. THANK YOU.

## MAYNARD, COOPER & GALE, P.C.

GEORGE F MAYNARD
C C TORBERT, JR
ASA ROUNTREE
N LEE COOPER
FOURNIER J. GALE III
DANIEL H MARKSTEIN III
KIRBY SEVIER
GEORGE G. LYNN
J. HOBSON PRESLEY, JR
STEPHEN E BROWN
CATHY S. WRIGHT
CURTIS O. LILES III
ROBERT R SEXTON
H THOMAS WELLS, JR.
KATHLEEN A. COLLIER
JAMES L. GOYER III
A. INGE SELDEN III
LEE E. BAINS, JR
TONY G. MILLER
FRANK O. MCPHILLIPS
MAIBETH J. PORTER
WALKER PERCY BADHAM III
DAVID M SMITH
JARRED O. TAYLOR II
J. MICHAEL SAVAGE
JAMES L. PRIESTER
GREGORY H. HAWLEY
LUTHER M. DORR, JR
JOHN N. BOLUS
J. KRIS LOWRY
MARK L. DREW
JAYNA PARTAIN LAMAR
RANDALL H. MORROW
C MARK STRENGTH
JOHN H. BURTON, JR
PATRICK C. COOPER
CYNTHIA G. LAMAR-HART
SCOTT A. ABNEY
GREGORY S. CURRAN
JEFFREY M. GRANTHAM
STEPHEN C JACKSON
JAMES M. POOL

DANA L. THRASHER
MITCHELL G. ALLEN
THOMAS H. BRINKLEY
KATHARINE A. WEBER
MICHAEL D MULVANEY
J ALAN TRUITT
CARL S. BURKHALTER
SARAH YATES LARSON
THOMAS C. CLARK III
CHRISTOPHER B HARMON
JEFFREY A. LEE
WARREN B LIGHTFOOT, JR
ROBERT W TAPSCOTT, JR
LAURA A. WOODRUFF
KATHRYN O. PUGH
S DOUGLAS WILLIAMS, JR
PETER S. FRUIN
T. LOUIS COPPEDGE
WILLIAM B. WAHLHEIM, JR
JOHN P. DUUN, JR
LORRIE L. LIZAK
ELIZABETH G. BEAUBE
JAMES T. CARR
GREGORY L. DOODY
EDWARD A. HOSP
CAROLE A. GOLINSKI
BRUCE A. PARSONS
KEVIN W. PATTON
CARRANZA M PRYOR
STEPHEN W STALLCUP
MICHAEL E. TURNER
JOHN-A. EARNHARDT
J ALAN BATY
STEPHEN FOSTER BLACK
BRANNON J BUCK
ALEXANDER J MARSHALL, III
MARCIE E. PADUDA
JENNIFER R SMITH
HARDWICK C. WALTHALL

ATTORNEYS AT LAW

1901 SIXTH AVENUE NORTH

2400 AMSOUTH/HARBERT PLAZA

BIRMINGHAM, ALABAMA 35203-2618

(205) 254-1000

FACSIMILE (205) 254-1999

—

MONTGOMERY OFFICE:
201 MONROE STREET
SUITE 1940
MONTGOMERY, ALABAMA 36104
(334) 262-2001

April 17, 1998

**VIA HAND DELIVERY**

The Honorable J. Foy Guin, Jr.
United States District Judge
Hugo L. Black U.S. Courthouse
1729 North Fifth Avenue
Birmingham, Alabama 35203

  *Re:* *Elgin Sweeper Co., et al. v. Powerscreen*, CV 94-G-0623 S

Dear Judge Guin:

  In your letter dated April 9, 1998, you requested counsel to state whether "it can be conceded that Guzzler's insurance policy was endorsed to add Federal/Elgin and Powerscreen as additional insureds." The undisputed facts show that J.R. Prewitt & Associates, at the request of Guzzler's controller, Susan Ragland, had the policy in question endorsed so as to add both Federal/Elgin and Powerscreen as additional insureds. *See* Supplemental Affidavit of John R. Prewitt, Jr. ¶¶ 5-7, Ex. 1.

  However, Powerscreen neither knew about, requested or consented to this endorsement.

         Very truly yours,

         T. Louis Coppedge

TLC:jt
cc:  Anthony C. Valiulis, Esq.
    Richard H. Monk, III, Esq.

411984 COPPEL

(321) 621-1691

tvaliulis@muchlaw.com

**BY FACSIMILE (205) 731-3446**

April 20, 1998

The Honorable J. Foy Guin, Jr.
United States District Judge
Hugo L. Black U.S. Courthouse
1729 North Fifth Avenue
Birmingham, Alabama 35203

Re:    *Elgin Sweeper v. Powerscreen*, CV 94-G 0623S

Dear Judge Guin:

This is in response to Powerscreen's counsel's letter of April 17, 1998. In that letter, Powerscreen makes two statements that are not supported by the record.

First, Powerscreen's counsel states that "Powerscreen neither knew about, requested, or consented to this endorsement [to add Federal/Elgin and Powerscreen as additional insureds]." This statement is made by counsel and is not supported by any affidavit, deposition testimony, or other admissible evidence. No where in the record is there any evidence that Powerscreen did not know about, request, or consent to the endorsement made by its insurance agent.

The Honorable J. Foy Guin, Jr.
United States District Judge
Page Two
April 20, 1998


Second, Powerscreen's counsel claims that Guzzler's controller, Susan Ragland, requested that the policy was endorsed "to add both Federal/Elgin and Powerscreen as additional insureds." In support, Powerscreen refers to the supplemental affidavit filed by the insurance broker, John R. Prewitt, Jr. In that affidavit, however, there is no support for Powerscreen's statement that Guzzler's controller asked that both Federal/Elgin and Powerscreen be added as additional insureds. To the contrary, the letter sent by Ms. Ragland specifically asked that the policy be assigned to Powerscreen. (See Exhibit No. 2 to the affidavit of John R. Prewitt, Jr.) Instead of assigning it, however, Powerscreen's broker added Powerscreen and Federal Signal as additional insureds. But this was not done at the request of Ms. Ragland.

Very truly yours,



Anthony C. Valiulis
ACV/pab
cc:      T. Lewis Coppedge
         (By Facsimile 205-254-1999)
         Richard Monk
         Kim Wehrenberg
         (By Facsimile 630-954-2041)

## MAYNARD, COOPER & GALE, P.C.

GEORGE F. MAYNARD
C.C. TORBERT, JR.
ASA ROUNTREE
N. LEE COOPER
FOURNIER J. GALE III
DANIEL H. MARKSTEIN III
KIRBY SEVIER
GEORGE G. LYNN
J HOBSON PRESLEY, JR.
STEPHEN E. BROWN
CATHY S. WRIGHT
CURTIS O. LILES III
ROBERT R. SEXTON
H. THOMAS WELLS, JR.
KATHLEEN A. COLLIER
JAMES L. GOYER III
A. INGE SELDEN III
LEE E. BAINS, JR.
TONY G MILLER
FRANK D. McPHILLIPS
MAIBETH J. PORTER
J. FAIRLEY McDONALD III
WALKER PERCY BADHAM III
DAVID M. SMITH
JARRED O. TAYLOR II
J. MICHAEL SAVAGE
JAMES L. PRIESTER
GREGORY H. HAWLEY
LUTHER M. DORR, JR.
JOHN N. BOLUS
J. KRIS LOWRY
MARK L. DREW
JAYNA PARTAIN LAMAR
RANDALL H. MORROW
C. MARK STRENGTH
JOHN H. BURTON, JR.
PATRICK C. COOPER
CYNTHIA G LAMAR-HART
SCOTT A. ABNEY
GREGORY S. CURRAN
JEFFREY M. GRANTHAM
STEPHEN C. JACKSON
JAMES M. POOL

ATTORNEYS AT LAW

1901 SIXTH AVENUE NORTH

2400 AMSOUTH/HARBERT PLAZA

BIRMINGHAM, ALABAMA 35203-2618

(205) 254-1000

FACSIMILE (205) 254-1999
———

MONTGOMERY OFFICE:
201 MONROE STREET
SUITE 1940
MONTGOMERY, ALABAMA 36104
(334) 262-2001

DANA L. THRASHER
MITCHELL G. ALLEN
THOMAS H BRINKLEY
KATHARINE A. WEBER
MICHAEL D. MULVANEY
J. ALAN TRUITT
CARL S. BURKHALTER
SARAH YATES LARSON
THOMAS C. CLARK III
CHRISTOPHER B. HARMON
JEFFREY A. LEE
WARREN B. LIGHTFOOT, JR.
ROBERT W. TAPSCOTT, JR.
LAURA A WOODRUFF
KATHRYN O. PUGH
S. DOUGLAS WILLIAMS, JR.
PETER S. FRUIN
T. LOUIS COPPEDGE
WILLIAM B. WAHLHEIM, JR.
JOHN P OULIN, JR.
LORRIE L. UZAK
ELIZABETH G. BEAUBE
JAMES T. CARR
GREGORY L DOODY
EDWARD A. HOSP
CAROLE A. GOLINSKI
BRUCE A. PARSONS
KEVIN W PATTON
CARRANZA M. PRYOR
STEPHEN W. STALLCUP
MICHAEL E. TURNER
JOHN A. EARNHARDT
J. ALAN BATY
STEPHEN FOSTER BLACK
BRANNON J. BUCK
ALEXANDER J. MARSHALL, III
MARCIE E. PADUDA
JENNIFER R SMITH
HARDWICK C. WALTHALL

April 21, 1998

Honorable J. Foy Guin, Jr.
Senior United States District Judge
Northern District of Alabama
619 Federal Courthouse
1729 North 5th Avenue
Birmingham, Alabama 35203

> **Re:** **Elgin Sweeper Company, et al. v. Powerscreen International, et al., Case No. CV-94-G-623-S**

Dear Judge Guin:

This letter on behalf of Powerscreen responds to Federal Signal's counsel's letter of April 20, 1998.

First, counsel for Federal Signal misses the point of our argument. There is *no* evidence in the record that Powerscreen knew about, requested or consented to the endorsement to add Powerscreen as an additional insured to the Guzzler insurance policy administered by *Guzzler's* broker, J. R. Prewitt and Associates, with respect to the general liability/products liability policy number OGLG16261300, at issue in this case. This represents a failure of proof by Federal Signal, who has the burden here.

Specifically, the March 29, 1993 letter from Susan Ragland as controller of Guzzler and the March 31, 1993 letter from Libby Martin of J.R. Prewitt and Associates are the two operative documents concerning the inclusion of Powerscreen and Federal Signal as a "additional insureds" to this policy (attached as Exhibits 2 and 3 to Supplemental Affidavit of John R. Prewitt, Jr.). *Neither* letter, however, was sent to Powerscreen based on the evidence of record. Accordingly, there is absolutely no evidence before the Court that

Honorable J. Foy Guin, Jr.
April 21, 1998
Page 2.

Powerscreen knew about, consented to or requested this policy change. In fact, Jay
Tannon's affidavit is directly to the contrary.

Second, contrary to the argument of Federal Signal's counsel in his letter of April 20,
1998, we have not argued that Susan Ragland requested that the policy be endorsed "to add
both Federal/Elgin and Powerscreen as additional insureds." (Valiulis letter of April 20,
1998 at p. 1). In fact, Powerscreen argued as follows in its response to plaintiff's brief in
support of its cross-motion for summary judgment filed on March 19, 1998:

> As previously stated, the insurance policy in question was
> never 'assigned to Powerscreen'. . . . However, a declaration
> endorsement made effective March 31, 1993 changed the policy
> to designate both Powerscreen and Federal Signal as additional
> insureds. . . . This *change* came about due to a unilateral
> request from Susan Ragland, Guzzler's former controller, to
> J.R. Prewitt & Associates. . . . Based upon this unilateral
> request by Guzzler, Ms. Libby Martin, an employee at J.R.
> Prewitt & Associates, wrote a letter to CIGNA requesting that
> both Powerscreen and Federal Signal be made additional
> insureds on the policy. . . . Id. at 2-3.

This argument was based on the supplemental affidavit of John R. Prewitt attached to
Powerscreen's supplemental brief as exhibit A. In this supplemental affidavit at ¶ 6, Mr.
Prewitt stated as follows:

> The change in the policy was initiated by Mrs. Susan Ragland.
> A copy of a letter dated March 29, 1993 from Susan Ragland to
> Jack Prewitt is attached hereto as exhibit 2. Subsequently, on
> March 31, 1993, Libby Martin, one of my employees, wrote a
> letter to CIGNA requesting that both Powerscreen and Federal
> Signal be made additional insureds to the policy. A copy of
> Ms. Martin's letter is attached hereto as exhibit E3.

Supplemental Affidavit of John R. Prewitt, Jr. at ¶ 6. Thus, counsel for Federal Signal's
"second argument" in his April 20, 1998 letter is a complete red herring and should be
disregarded by the Court.

MAYNARD, COOPER & GALE, P.C.

Honorable J. Foy Guin, Jr.
April 21, 1998
Page 3.


      Please let me know if we can provide the Court with any additional information or answer any questions you may have. Thank you very much for your consideration in this case.

                                 Respectfully,

                                 James L. Goyer III

JLGIII/rp
Writer's Direct Dial - (205) 254-1034
cc:     Mr. Anthony C. Valiulis - Via U.S. Mail & Fax (312) 621-1750
         Ms. Joanne Sarasin - Via U.S. Mail & Fax (312) 621-1750
         Mr. Richard Monk