FILED

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

01 MAR 29  PM 2: 30

U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED

MAR 29 2001

| | |
|---|---|
| ELGIN SWEEPER COMPANY;          )<br>GUZZLER MANUFACTURING, INC.; )<br>FEDERAL SIGNAL CORPORATION, )<br>                                              )<br>         PlaintiffS,                    )<br>                                              )<br>     v.                                       )<br>                                              )<br>POWERSCREEN INTERNATIONAL, )<br>PLC,                                         )<br>                                              )<br>         Defendant.                   | CIVIL ACTION NO. 94-G-0623-S-S |

MEMORANDUM OPINION

The above-styled case has been before the court many times.  Issues

have been resolved by summary judgment,  by jury trial, and by decision of the

Eleventh Circuit.  The only issues remaining in the case involve ownership of an

insurance prepayment of $92,640.00 and a $42,118.00 refund paid Guzzler for

overpayment of said insurance.

303

## STATEMENT OF FACTS

Parties to this action are aligned in the following manner: Federal Signal Corporation [hereinafter Federal Signal] is the parent company of plaintiff Elgin Sweeper Company [hereinafter Elgin]. For consistency's sake with earlier opinions, where needed, plaintiffs are hereinafter referred to collectively as Elgin/Federal Signal. Defendant Powerscreen International, PLC [hereinafter Powerscreen] previously owned Guzzler Manufacturing, Inc. [hereinafter Guzzler], a Birmingham, Alabama, company that produces and distributes sewer-cleaning vehicles. On March 15, 1993, plaintiff and defendant entered into a contract by which Elgin purchased Guzzler. Closing, subsequent to the signing of a Stock Purchase Agreement [hereinafter Agreement] on February 5, 1993, took place March 16, 1993. A First Amendment to the Stock Purchase Agreement [hereinafter First Amendment] was executed at closing.[1]

As was the business practice of Guzzler, under the ownership of Powerscreen, to pre-pay its annual insurance premium in September,[2] in

---

[1] The Agreement and First Amendment set forth the rights and responsibilities of the parties to the transaction.

[2] February 23, 1998, affidavit of Jeffrey Hunt, President of Guzzler from September 1990 to March 1993.

2

September 1992 Guzzler prepaid to J.R. Prewitt & Associates its annual insurance

premium covering it through August 1993.   Prepayment included coverage from

closing on March 16, 1993, to August 31, 1993, in the amount of $92, 640.00, the

disputed item presently before the court.[3]

Terms of the contract of sale (paragraph 11) and the Agreement

(subparagraph 11(c)[4] and (d)[5]) required  Powerscreen to ***indemnify***[6] Guzzler and

Federal Signal for loss on all products manufactured or shipped prior to the

_____

[3] The court has previously granted summary judgment on aspects of the $92,614.00 insurance prepayment. Its earlier decision granting summary judgment on the $92,640.00 prepayment issue, based on letters sent to the court by counsel of both sides, was overturned by the Circuit for lack of evidence in the record. By omission the thirteen letters sent the court failed to be included in the record on appeal.   The present decision of the court does not turn on those letters.

[4] First Amendment required the Buyer to notify Seller of complaint or claim within ten days of notification. Failure to timely notify the Seller could reduce loss of Seller resulting from delay. Seller was relieved of liability obligation to Buyer "for any settlement of any claim effected without Seller's prior written consent."

[5] "On or before the third anniversary date of this Agreement the parties hereto agree to renegotiate in good faith the product liability indemnification obligations established hereunder. At such time, the parties shall review the claims history of the Company. If at such time the parties hereto cannot in good faith agree on terms shifting responsibility for all product liability claims to Buyer, they agree to resume such good faith negotiations no later than by the fifth anniversary date of this Agreement."

[6] The sales contract required ***indemnity***, not insurance.

3

March 16, 1993, closing date, regardless of the date of loss.[7]

At issue in the case at bar is whether an assignment of the general

liability and products liability insurance policy, Cigna Policy # OGLG16261300

written by agent J.R. Prewitt & Associates, covering Guzzler took place

determining the outcome of the $92,640.00 refund in question. Included within the

issue is the effect of the endorsement adding two insureds: Powerscreen and

Federal Signal. The policy gave Guzzler insurance coverage.[8] Plaintiffs allege

that an oral agreement was made between the parties by which Powerscreen would

pay plaintiffs $92, 640.00 in exchange for an assignment. In support of this

argument plaintiffs allege the circumstance that they did not need the policy since

---

[7] The indemnity clause of the Agreement covers anything "arising out of or resulting from (i) any breach or failure of a representation, warranty, covenant or agreement of Seller contained in this Agreement or its Schedules or any deficiency for federal or state or other taxes or penalties resulting from or relating to the conduct of the Company's business prior to Closing (including any effects from the Two Million One Hundred Thousand ($2,100,000) Dollar dividend and payment of Company debt to Seller at Closing and (ii) for any defective product manufactured or shipped by the Company prior to Closing or arising from any contract or law or otherwise for any defective product, failure to warn, breach of implied or express warranties, negligence or misrepresentation as to any product manufactured or shipped before Closing including any personal injury, death or property damage attributable to products manufactured or shipped by the Company prior to the Closing."

[8] While the policy gave Guzzler coverage, Powerscreen had to indemnify loss for products manufactured or shipped before closing.

4

Guzzler would be covered by a policy of the parent company and did not need for

its benefit to keep the coverage here in question.  In further support of the

argument plaintiff have offered copies of the following documents:

1)    March 19, 1993, intra-company correspondence of Pam Krage
      of Federal Signal to Kim Wehrenberg;[9]

2)    Undated memo[10] from Guzzler to J.R. Prewitt & Associates
      [hereinafter Prewitt] requesting that Cigna assign the aforesaid
      captioned policy to Powerscreen effective March 16, 1993;

3)    Copy of above two-referenced documents attached to copy of
      March 23, 1993, handwritten FAX by Mary Ellen Penicook[11]
      of Federal Signal to Jay Tannon of Brown, Todd & Heybuck,
      corporate counsel of Powerscreen, to forward the material to
      Powerscreen;

---

[9] "In order to have the captioned policy transferred to Powerscreen, Guzzler
Manufacturing, Inc. must advise their broker to contact Cigna and request that it
be assigned to Powerscreen International PLC.  Otherwise I recommend we cancel
this policy effective 3/16/93.

"In order to reconsider the indemnification obligation after three years, in
compliance with the First Amendment to Stock Purchase Agreement, we require
evidence of Powerscreen's ongoing insurance coverage and claims updated
annually."

Copy attached.  Exhibit 1.

[10] Copy attached.  Exhibit 2.

[11] Copy attached.  Exhibit 3.

5

4) February 23, 1998, affidavit of Kim Wehrenberg[12] that Powerscreen requested an assignment be made; and

5) Unilateral request from Susan Ragland, Guzzler's former controller, after the sale, to Prewitt to assign policy.[13]

Although the above-mentioned requests were made the policy was not canceled or assigned.[14]

Powerscreen denies that an agreement was entered into by which it would pay an additional $92, 640.00 to plaintiffs for an assignment of the benefits of the general liability and products liability insurance policy covering Guzzler, its position being it had pre-paid the insurance and did not need to pay the premium again  This ignores the fact that the premium was prepaid by Guzzler, a separate corporation, and the insurance contract did not did not give coverage for Powerscreen.  Powerscreen's liability for Guzzler's products expired only because of the contract of sale of Guzzler.[15]

---

[12] Copy attached.  Exhibit 4.

[13] Copy attached.  Exhibit 5.

[14] See copy of Supplemental Affidavit of J.R. Prewitt attached.  Exhibit 6.

[15] See Exhibit 5 (Ragland letter).

6

Although evidence indicates that plaintiffs tried to get Cigna to assign the policy to Powerscreen, Cigna refused to do so.[16] An endorsement to the policy on March 31, 1993,[17] added Powerscreen and Federal Signal to the policy as additional insureds at a cost of $50.00 each.[18] [19] [20] The endorsements were necessary because Cigna refused to accept assignment of the policy.[21] Although plaintiffs argue that they did not need insurance protection because of insurance held by parent Federal Signal, no objection was made to Federal Signal's being

---

[16] Cigna's refusal to assign the policy is immaterial to contracted ownership rights.

[17] See copy of endorsement # 1, Exhibit 7, sent to Guzzler, the insured and the March 31, 1993, letter from Libby Martin at Prewitt to Cigna regarding addition of Powerscreen and Federal Signal as additional insureds. Exhibit 8.

[18] Powerscreen needed the endorsement adding it as an additional insured because of the contract of indemnity(Agreement). Additional insureds can have insurance protection under the policy, but no rights as far as making changes to the policy or receiving returned premiums. The endorsement, however, is not an assignment (which carries ownership), nor does the endorsement keep the assignment of ownership from taking place regardless of the likes of the insurance company.

[19] Plaintiffs have taken the absurd position that a $50.00 coverage endorsement is the same as owning a policy.

[20] The endorsement gave Powerscreen insurance coverage.

[21] There could be no other explanation for the existence of the endorsements.

7

added as an additional insured.   Powerscreen admits that the endorsement as an
additional insured gave it the same right to coverage as if the policy had been
formally assigned, but there is no evidence that Powerscreen was told of this
additional insured endorsement.  The affidavit of Jeffrey Hunt, previously
identified, states that Powerscreen at no time asked for or agreed to any insurance
coverage.

Elgin/Federal Signal could have canceled the policy at any time, but
chose not to do so.   The February 23, 1998, affidavit of Kim Wehrenberg stated
that Elgin/Federal Signal did not cancel the policy only because Powerscreen
wanted the insurance.  In a supplemental affidavit Wehrenberg swore that Guzzler
canceled the policy and never received a $42,118.00 credit for doing so.[22] At all
times Federal Signal retained the right to keep the policy through Guzzler. The
Guzzler policy, with Powerscreen and Federal Signal as added insureds, remained
in effect, belying inconsistent positions of Elgin/Federal Signal that it was not
needed. Elgin/Federal Signal rode along with coverage.  The **policy** itself was not
assigned by Cigna.  Nor was it canceled.  The March 2, 1998, affidavit of John R.

---

[22]  Copy attached.  Exhibit 9.  Subsequent records prove Mr. Wehrenberg's
affidavit in error.

Prewitt, insurance agent, indicates that Guzzler was provided coverage through August 1993.[23]

It was not until July 1, 1993, when Powerscreen received a listing from plaintiffs of past due accounts receivables that it was aware that plaintiffs were claiming that the $92,640.00 insurance prepayment was a past due account receivable contemplated by paragraph 4 of the Agreement.[24] Defendant objected to its inclusion and voiced its objection to plaintiffs[25]

---

[23]  Copy attached.  Exhibit 10.

[24]  In paragraph eight of the March 18, 1998, affidavit of accountant Martha Harkness, partner in the accounting firm of Ross Lane & Company, LLC, Ms. Harkness swears that the figure was never a contemplated account receivable included in the listing of "aged accounts receivables." Affidavit of Ms. Harkness as well as the March 15, 1993, closing balance sheet of Guzzler copies are attached.  Exhibit 11. Exhibit 12.

[25]  In this court's April 19, 1995, memorandum opinion the court stated, in part, the language set forth below:

> The court agrees with the following Powerscreen statement: "The fact that Elgin/Federal Signal classified this asset of Guzzler as a 'receivable' in its list of aged receivables instead of a 'prepayment' does not magically transform it into a past due account that was to be listed on the aged receivables list as per the Stock Purchase Agreement." The $92,000.00 prepayment was finally and conclusively determined by the arbitrator to be an asset of Guzzler rather than an aged receivable and was so noted on the closing balance sheet. ... Arthur Anderson determined the $92,000.00 insurance prepayment was an asset of Guzzler--not a receivable.

(continued...)

9

In the fall of 1993 an audit was performed by Cigna with respect to the Guzzler policies for the preceding year. An October 28, 1993, Report of Audit sent to Prewitt, and received on November 4, 1993, indicated a refund premium in the amount of $42,118.00 was owed Guzzler on the Cigna policy at issue here.[26] A January 7, 1994, accounting summary of Guzzler's policies showed an overpayment of $114,019.00.[27] By letter of January 10, 1994,[28] Marilyn J. Praytor, Account Executive at Prewitt, sent Guzzler a letter with enclosures, directed to Susan Ragland, accompanied by a check in the amount of $114,019.00.
Of importance is the specific paragraph which follows:

> Enclosed is our check for the balance on your account of $114,019 **as discussed by phone** (emphasis added).

_____

[25](...continued)
The potential liability coverage on the machines still exists--still an asset. Arbitration had nothing to do with the assignment issue.

[26] The copy attached to the opinion was furnished to the court by plaintiffs. It is marked as Plaintiff's Exhibit 1-K. Exhibit 13.

[27] The overpayment of $114,019.00, plaintiff's Exhibit 1-D, included the $42,118.00 on the September 1, 1993, General Liability Audit, Plaintiff's Exhibit 1-E. Copies of these documents, furnished by plaintiff, are attached. Exhibit 14, Exhibit 15.

[28] The attached copy is identified as Plaintiff's Exhibit 1-C. Exhibit 16.

10

In response to this court's order of October 16, 2000, plaintiffs admit, by document 298 in the court file, receipt of the $114,019.00 check from Prewitt.[29] In answer to specific questions posed by the court[30] plaintiffs answered as follows:

> Guzzler received the $114,019.00 check which defendant contends included overpayment for an insurance refund, however, plaintiffs cannot verify from their records whether the check in fact included an insurance refund.[31]

The most conclusive evidence that an assignment took place is a September 22, 1994, signed letter by Kim Wehrenberg written on his letterhead as Vice President, General Counsel and Secretary of Federal Signal, to Mr. Jeff Hunt of Powerscreen[32] which reads as follows:

---

[29] Plaintiffs stated they "believed it to be the defendant's burden to establish receipt of the check." The court does not agree. Plaintiffs are seeking payment of an amount defendants prepaid. Justice requires that over-reaching not be allowed by either side. Ironically, receipt of the check has been established by documents furnished the court by plaintiff at an earlier time, as shown by labels placed on the documents by plaintiffs at time of submission..

[30] Court document 297.

[31] Prewitt records specifically itemize what was covered by the check. Furthermore, the January 10, 1994, letter from Ms. Praytor directed to Susan Ragland at Guzzler, indicates that the matter had previously been discussed by telephone. Court records indicate the check was included in the insurance refund. Copies, furnished by plaintiff, are attached to this opinion.

[32] Copy attached. Exhibit 17.

11

In accordance with Section 4 of the agreement, attached is the assignment to Powerscreen of the $92,640 Guzzler account receivable, which with the 9% interest pursuant to Section 11 of the Agreement, equates to the $102,089.55 Powerscreen wire transferred to Elgin last week.

Attached to the letter was the September 21, 1994, assignment, signed by Mr.

Wehrenberg on behalf of Guzzle, set forth below:

ASSIGNMENT

Guzzler Manufacturing, Inc. ("Guzzler") hereby assigns and transfers to Powerscreen International PLC all of Guzzler's rights, title and interests in the Guzzler Closing Balance Sheet Account Receivable of $92,640 owed by Powerscreen to Guzzler for Cigna Policy No. G1 63 61 30 0.

IN WITNESS WHEREOF, this assignment is executed on this 21st day of September, 1994.

Sincerely,

Kim A. Wehrenberg

12

## CONCLUSIONS

Evidence before the court clearly establishes that an assignment of ownership,[33] though late,[34] took place from plaintiffs to defendant. Powerscreen paid $92,640.00 for all of Guzzler's rights, title and interest in the Cigna policy. Plaintiff is judicially estopped[35] by the written assignment and letter from Wehrenberg and its earlier litigation position from denying the existence of the assignment of ownership. Plaintiffs assigned ownership of the policy. Although late, the assignment gave defendant as owner of the policy full right to the $42,118.00 refund which plaintiffs received and owe defendant. Accordingly, the court holds that the motion of defendant Powerscreen for partial summary judgment in the amount of $42,118.00 for a policy refund received by plaintiffs with respect to Cigna Policy

---

[33] The wording of the assignment is not for coverage but for policy ownership which is more than coverage (e.g. premium refunds either on early cancellation or on audit).

[34] The assignment took place after the policy had expired. A late assignment, whenever assigned, is not a useless assignment, however, because in the case at bar coverage continued without limitation as to claims regarding products manufactured during the policy year

[35] Judicial estoppel prevents a party from contradicting previous declarations made during the same proceeding or legally established as true. *Black's Law Dictionary* (Bryan A. Garner, ed., 7th ed 1999).

13

# OGLG16261300 written by agent J.R. Prewitt & Associates should be GRANTED.

On the basis of the material covered in this opinion the court is withholding ruling on the renewed motion of Powerscreen for summary judgment pending receipt of simultaneous briefs from the parties, limited to ten pages in length, within 21 days of entry of this order on the narrowed question of whether the September 22, 1994, letter of Kim Wehrenberg with its attachment of the assignment from Guzzler to Powerscreen not only shows that the assignment took place, but that it was paid in full.

An order consistent with this opinion is being entered contemporaneously herewith.

DONE and ORDERED this 29th day of March 2001.

UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.

MAR-23-93 TUE 11:43      FEDERAL SIGNAL CORP             FAX NO. 708 954 2041              P. 02

**FEDERAL SIGNAL CORPORATION**                    **INTRA-COMPANY CORRESPONDENCE**

| | | **Date:** | March 19, 1993 |
|---|---|---|---|
| **To:** | Kim Wehrenberg | **From:** | Pam Krage |
| | | **Location:** | Corporate |
| **Location:** | Corporate | **Phone:** | (708) 954-2024 |

**Subject:**  General/Product Liability Insurance
Guzzler Manufacturing, Inc.
Cigna Policy #G16261300
Policy Period:  9/1/92 to 9/1/93

In order to have the captioned policy transferred to Powerscreen, Guzzler Manufacturing, Inc. must advise their broker to contact Cigna and request that it be assigned to Powerscreen International PLC.  Otherwise, I recommend we cancel this policy, effective 3/16/93.

In order to reconsider the indemnification obligation after three years, in compliance with the First Amendment to Stock Purchase Agreement, we require evidence of Powerscreen's ongoing insurance coverage and claims data updated annually.

Sample wording is attached.  Please advise as soon as possible.

Pam Krage

PK:cj

enclosure

.

o:          J. R. Prewitt & Associates

rom:        Guzzler Manufacturing, Inc.

ubject:     Cigna Policy No.: G1 62 61 30 0
            Policy Period:  9/1/92 to 9/1/93

Effective March 16, 1993, Powerscreen International PLC sold Guzzler
Manufacturing, Inc. to Federal Signal Corporation. The terms of the sale require
Powerscreen to retain the liabilities of all products manufactured or shipped
prior to March 16, 1993, irregardless of the date of loss.

We therefore request that Cigna assign the captioned policy to Powerscreen
International PLC, effective March 16, 1993.

MAR-23-93 TUE 11:43     FEDERAL SIGNAL CORP      FAX NO. 708 954 2041      P. 01

**FEDERAL SIGNAL CORPORATION**
**CORPORATE OFFICE**

**FAX (708) 954-2041**

Jay Tannon _____ FAX: (502) 581-1087 ___ # OF PAGES 3

PANY: Brown Todd & Heyburn _____

SAGE: Jay — I am passing along this memo from
n risk managers. Please forward to Powersareen
for their benefit, otherwise policy will be cancelled.

FROM: Mary Ellen Penisook



## AFFIDAVIT OF KIM WEHRENBERG

I, Kim Wehrenberg, having been first duly sworn, under oath state as follows:

1.      I am of legal age and, if called to testify, can give competent testimony from my own personal knowledge to the facts stated in this affidavit.

2.      I have been a vice-president and the general counsel of Plaintiff Federal Signal Corporation ("Federal Signal") and its subsidiary Plaintiff Elgin Sweeper Company ("Elgin") since 1986. In that capacity, I have personal knowledge of the insurance owned by Federal Signal and its subsidiaries, the extent of coverage provided by such insurance, and the effective dates.

3.      I was vice-president of Elgin in 1993 when Elgin purchased Guzzler Manufacturing, Inc. ("Guzzler") from Powerscreen International, PLC ("Powerscreen"). I was personally involved in the negotiations that lead up to the signing of the stock purchase agreement on February 5, 1993. I was also present at and participated in the closing of the sale on March 16, 1993.

4.      In connection with the purchase of Guzzler, I was informed by representatives of Powerscreen and Guzzler that, prior to the closing, Guzzler had prepaid $92,640 for liability insurance coverage for the period between March, 1993 and August, 1993. This insurance covered all claims during that period made in connection with equipment manufactured either before or after the closing on March 15, 1993. However, as to such claims, I was aware that Guzzler did not need this insurance coverage. As a subsidiary of Elgin, which was a subsidiary of Federal Signal, Guzzler was protected by insurance already owned by Federal Signal.

5.      At or about the closing, I had a conversation with one or more representatives of Powerscreen concerning this insurance. Although I do not specifically recall the exact person or

persons with whom I had this conversation, I do recall that it was either Barry Cosgrove, Powerscreen's chief financial officer, or Jay Tannon, one of Powerscreen's attorneys.

6.      In this conversation, I told Powerscreen that Guzzler did not need this insurance and intended to cancel it. (If Guzzler did cancel the insurance, it would have received a full refund of the $92,640 that had been pre-paid.) I also asked Powerscreen if it wanted to have the insurance coverage assigned to it for that same $92,640. Even though Powerscreen would no longer own Guzzler, I knew that it still had need for this insurance. Under the stock purchase agreement, Powerscreen was responsible for product liability claims asserted after the closing arising out of equipment manufactured by Guzzler before the closing, *i.e.*, during the time Powerscreen owned Guzzler.

7.      During my conversation with Powerscreen, Powerscreen told me that it did want the coverage afforded by the insurance in question and that Guzzler should therefore assign that coverage to Powerscreen, which was then done. In accordance with Powerscreen's wishes, the insurance agent for Powerscreen and Guzzler was instructed to reflect that the insurance coverage was being assigned to Powerscreen as of the closing and Powerscreen's counsel was so advised. (See correspondence attached as Exhibit No. 1.)

8.      If Powerscreen had not wanted the insurance coverage assigned to it from Guzzler, Guzzler would have cancelled that insurance and received a $92,640 refund. It was only because Powerscreen wanted the insurance protection for itself that Guzzler did not cancel the insurance but instead advised the insurance agent used by Powerscreen for Guzzler to effect this assignment.

2

Dated this 23ʳᵈ day of February, 1998.

_____
KIM WEHRENBERG

SUBSCRIBED TO AND SWORN to
before me this 23ʳᵈ day of February, 1998.

_____
Notary Public

"OFFICIAL SEAL"
LANA J. NOEL.
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 12/21/99



America's Leader in Power Vacuum Systems

EXHIBIT 2

March 29, 1993

Mr. Jack Prewitt
J. R. Prewitt & Associates
2100 17th Avenue, South
Birmingham, Alabama  35205

                    RE:  Cigna Policy No.:  G1 62 61 30 0
                         Policy Period:  9/1/92 to 9/1/93

Dear Jack:

Effective March 16, 1993, Powerscreen International PLC sold Guzzler Manufacturing.
Inc. to Federal Signal Corporation.  The terms of the sale require Powerscreen to
retain the liabilities of all products manufactured or shipped prior to March 16, 1993,
irregardless of the date of loss.

We therefore request that Cigna assign the captioned policy to Powerscreen International
PLC, effective March 16, 1993.

Sincerely,

*Susan Ragland*

Susan F. Ragland
Controller

RECEIVED

MAR 30 1993

J. R. PREWITT & ASSOC.

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| ELGIN SWEEPER COMPANY; | ) | |
| GUZZLER MANUFACTURING, INC.,; | ) | |
| FEDERAL SIGNAL CORPORATION, | ) | CIVIL ACTION NO. |
| | ) | |
| Plaintiffs, | ) | CV-94-G-0623-S |
| vs. | ) | |
| | ) | |
| POWERSCREEN INTERNATIONAL, PLC), | ) | |
| | ) | |
| Defendant. | ) | |

### SUPPLEMENTAL AFFIDAVIT OF JOHN R. PREWITT, JR.

COUNTY OF JEFFERSON          )

STATE OF ALABAMA          )

After being duly sworn, John R. Prewitt, Jr. hereby states as follows:

1.       My name is John R. Prewitt, Jr., I am a resident and citizen of Jefferson County, Alabama.  I am over 21 years old and otherwise competent to testify in this matter.  This affidavit is based on my own personal knowledge.

2.       I am President of J. R. Prewitt & Associates in Birmingham, Alabama. I was the individual who handled some of Guzzler Manufacturing, Inc.'s insurance needs during the period that Powerscreen owned Guzzler Manufacturing, Inc.

3.       I submitted my initial affidavit in this matter on March 2, 1998.  Since that time, we have located our entire file on the general liability/products liability policy (Policy No. OGLG16261300) our company wrote for Guzzler.  The file was being stored off-site, and the storage company had difficulty locating all of the files which caused the delay.

405186 COPPEL

4.    After reviewing the entire file on this policy, there is additional information that explains how the policy was handled from our perspective.

5.    As I previously stated in my initial affidavit, the policy was never "assigned" to Powerscreen.  However, a declaration endorsement made effective March 31, 1993 changed the policy to designate both Powerscreen and Federal Signal as additional insureds.  A copy of the declaration of that endorsement is attached hereto as Exhibit 1.

6.    The change in the policy was initiated by Mrs. Susan Ragland.  A copy of a letter dated March 29, 1993 from Susan Ragland to Jack Prewitt is attached hereto as Exhibit 2.  Subsequently, on March 31, 1993, Libby Martin, one of my employees, wrote a letter to CIGNA requesting that both Powerscreen and Federal Signal be made additional insureds to the policy.  A copy of Ms. Martin's letter is attached hereto as Exhibit 3.

7.    The terms of the policy did not change (*i.e.* the insurance coverage relative Guzzler was the same), but Powerscreen and Federal Signal were covered by the policy should they be named in a products liability lawsuit.

8.    Additionally, an audit was performed with respect to this policy in late 1993.  It was determined that Guzzler was charged too much in premiums for that particular policy.  Therefore, Guzzler was given a credit of $42,118 which it applied to subsequent premiums.  A copy of the invoice representing the $42,118 credit is attached hereto as Exhibit 4.

**FURTHER AFFIANT SAYETH NOT,**

John R. Prewitt, Jr

405186 COPPEL

2

COUNTY OF JEFFERSON         :

                                        :

STATE OF ALABAMA            :

         Before me, the undersigned authority in and for said county in said state, personally appeared John R. Prewitt, Jr., whose name is signed to the foregoing Affidavit, and who is known to me, and acknowledged before me on this day that being informed of the contents of said instrument, he executed the same voluntarily on the day the same bears date.

         Given under my hand and official seal this ⟨18th⟩ day of _March_____, 1998.

_Linda Lilley_____
                         Notary Public

My Commission Expires:

_02/14/2000_____                  [SEAL]

| INSURANCE COMPANY OF NORTH AMERICA | SYM | POLICY ID |
|---|---|---|
| | OGL | G1 62 61 30 0 |

**DECLARATIONS UPDATE ENDORSEMENT**

PRODUCER BILLED

**NAMED INSURED**

**EXHIBIT 1**

GUZZLER MANUFACTURING, INC.
P O BOX 66
BIRMINGHAM, AL  35201

**SERVICE OFFICE   BIRMINGHAM**

**ENDORSEMENT EFFECTIVE DATE   03/31/93     POLICY PERIOD     09/01/92 TO 09/01/93**

**ELEMENTS OF YOUR POLICY DECLARATIONS ARE CHANGED AS SHOWN BELOW.  ALL OTHER ELEMENTS OF YOUR POLICY DECLARATIONS ARE NOT AFFECTED BY THIS ENDORSEMENT. THESE CHANGES APPLY TO LOSS, INJURY, OR DAMAGE WHICH OCCUR(S) ON OR AFTER THE EFFECTIVE DATE SHOWN ABOVE.**

## P R E M I U M   C H A N G E S

YOUR TOTAL PREMIUM IS INCREASED BY        $100.

## O T H E R   C H A N G E S

CG-2026 ADDITIONAL INSURED - DESIGNATED PERSON OR ORGANIZATION ALSO APPLIES TO:

SCHEDULE

NAME OF PERSON OR ORGANIZATION:   1 - POWERSCREEN INTERNATIONAL PLC
                                  2 - FEDERAL SIGNAL CORPORATION

AUTHORIZED AGENT

ENDORSEMENT # 1                    (LAST PAGE)                              PAGE     1

HIS COPY TO:

| | PROCESSED: | PRODUCER: | DESTINATION |
|---|---|---|---|
| INSURED | 04/06/93 | 101546 | 101546 |
| CC-9P99 | 93096 | #CPK-9416 | MKT: BIS |

EXHIBIT 3

# J.R.Prewitt        Associates

March 31, 1993


Cigna Property & Casualty Companies
P. O. Box 30390
5404 Cypress Center Drive
Tampa, FL  33630-3390

Attention:  Red Goddard

Re:  Guzzler Manufacturing, Inc.
     OGLG16261300

Dear Red:

     Per our conversation today, please add the following as
additional insured to the above policy.

          Powerscreen International PLC and
          Federal Signal Corporation

     As we discussed, we are not picking up any additional
exposures.  Please forward endorsement to our office at your
earliest convenience.

     Thank you for your assistance!

Regards,

*Libby*

Libby Martin
Commercial Lines & Marketing Manager

COPY

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DISTRICT**

| | | |
|---|---|---|
| Elgin Sweeper Company, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. CV 94G0623S |
| | ) | |
| Powerscreen International, PLC, | ) | |
| | ) | |
| Defendant. | ) | |

**SUPPLEMENTAL AFFIDAVIT**
**OF KIM WEHRENBERG**

I, KIM WEHRENBERG, on oath state as follows:

1.     I am of legal age and have personal knowledge of the facts stated in this affidavit.

2.     Since Plaintiff Elgin Sweeper Company purchased Guzzler Manufacturing, Inc. ("Guzzler"), I have been general counsel and an officer of Plaintiffs, including Guzzler.

3.     To the best of my knowledge and based on Guzzler's records, after the sale of Guzzler, Guzzler canceled the insurance policies referenced in the attached Notices of Cancellation. Accordingly, to my knowledge, Guzzler has never received any credit, in the amount of $42,118 or otherwise, against subsequent Guzzler premiums.

4.     On Wednesday, March 25, 1998, I called the offices of J. R. Prewitt & Associates in Birmingham, Alabama. This is the office that handled Guzzler's insurance needs during the time that Guzzler was owned by Powerscreen.

5.     In that conversation, I was told by a representative of J. R. Prewitt &

Associates that, according to their records, the $42,118 credit had been issued under

Powerscreen's account.

Kim A. Wehrenberg

SUBSCRIBED AND SWORN to before
me this 25th day of March, 1998.

Notary Public

"OFFICIAL SEAL"
LANA J. NOEL
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 12/21/99

Anthony C. Valiulis
Joanne A. Sarasin
MUCH SHELIST FREED DENENBERG
 AMENT BELL & RUBENSTEIN, P.C.
200 North LaSalle Street, Suite 2100
Chicago, Illinois 60601-1095
(312) 346-3100

Linda A. Friedman
Richard H. Monk, III
BRADLEY ARANT ROSE & WHITE
1400 Park Place Tower
2001 Park Place
Birmingham, Alabama 35203
(205) 521-8516

1

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| ELGIN SWEEPER COMPANY; | ) | |
| GUZZLER MANUFACTURING, INC.,; | ) | |
| FEDERAL SIGNAL CORPORATION, | ) | CIVIL ACTION NO. |
| | ) | |
| Plaintiffs, | ) | CV-94-G-0623-S |
| vs. | ) | |
| | ) | |
| POWERSCREEN INTERNATIONAL, PLC), | | |
| | ) | |
| Defendant. | ) | |

## AFFIDAVIT OF JOHN R. PREWITT, JR.

| | |
|---|---|
| COUNTY OF JEFFERSON | ) |
| STATE OF ALABAMA | ) |

After being duly sworn, John R. Prewitt, Jr. hereby states as follows:

1.    My name is John R. Prewitt, Jr., I am a resident and citizen of Jefferson County, Alabama.  I am over 21 years old and otherwise competent to testify in this matter.  This affidavit is based on my own personal knowledge.

2.    I am President of J. R. Prewitt & Associates in Birmingham, Alabama. I was the individual who handled some of Guzzler Manufacturing, Inc.'s insurance needs durin the period that Powerscreen owned Guzzler Manufacturing, Inc.

3.    Specifically, my company wrote a general liabilty/products liability policy (Policy No.OGLG16261300).

4.    Our records indicate that under the aforementioned policy, Guzzler Manufacturing, Inc. was provided coverage by and through August 31, 1993.

400982 COPPEL

5.     Based on an initial review of our records, the Insurance Policy at issue was never assigned nor was the name of the insured changed during the period of coverage.

**FURTHER AFFIANT SAYETH NOT.**

_____
John R. Prewitt, Jr

COUNTY OF JEFFERSON          :
                             :
STATE OF ALABAMA             :

     Before me, the undersigned authority in and for said county in said state, personally appeared John R. Prewitt, Jr., whose name is signed to the foregoing Affidavit, and who is known to me, and acknowledged before me on this day that being informed of the contents of said instrument, he executed the same voluntarily on the day the same bears date.

     Given under my hand and official seal this 3rd day of March, 1998.

_____
Notary Public

My Commission Expires:

03/14/2000

(SEAL)

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| ELGIN SWEEPER COMPANY; | ) | |
| GUZZLER MANUFACTURING, INC.,; | ) | |
| FEDERAL SIGNAL CORPORATION, | ) | CIVIL ACTION NO. |
| | ) | |
| Plaintiffs, | ) | CV-94-G-0623-S |
| vs. | ) | |
| | ) | |
| POWERSCREEN INTERNATIONAL, PLC), | | |
| | ) | |
| Defendant. | ) | |

### AFFIDAVIT OF MARTHA S. HARTNESS

| | |
|---|---|
| COUNTY OF FULTON | ) |
| STATE OF GEORGIA | ) |

After being duly sworn, Martha S. Hartness hereby states as follows:

1.     My name is Martha S. Hartness, I am a resident and citizen of Gwinnett County, Georgia.  I am over 21 years old and otherwise competent to testify in this matter.  This affidavit is based on my own personal knowledge.

2.     I am a partner in the accounting firm of Ross Lane & Company, LLC ("Ross Lane").  I was the accountant primarily responsible for assisting Powerscreen International, PLC ("Powerscreen") with the preparation of the closing balance sheet and other submissions made to Arthur Andersen & Company ("Arthur Andersen") in connection with the arbitration of the net book value of Guzzler as of March 15, 1993.

3.     I am familiar with the contents of the submissions made by both Elgin/Federal Signal and by Powerscreen to Arthur Andersen and with the decision reached by Arthur Andersen in that arbitration.

405605 COPPEL

4.      I also have reviewed the Affidavit of Richard L. Ritz wherein he attributes certain knowledge to Ross Lane.  Many of his assertions and conclusions drawn from those assertions are inaccurate.

5.      Mr. Ritz states that "I know that Ross Lane was aware of the nature of this receivable because among the documents it submitted to Arthur Andersen was a copy of Guzzler's backup showing this receivable and classifying it as a receivable due from Powerscreen."  See Aff. of Richard Ritz ¶ 7, Exhibit 2.

6.      The handwriting relied upon by Mr. Ritz and contained on Exhibit 2 to Mr. Ritz's affidavit regarding an alleged assignment of the insurance policy to Powerscreen is the handwriting of Susan Ragland, the former Controller of Guzzler.  There is additional handwriting at the bottom of this exhibit that states "for reporting purposes this A/R reclassed as prepaid."  I wrote this on the worksheet to show that Powerscreen considered this item a prepaid expense.

7.  Additionally, Powerscreen in its closing balance sheet submissions to Arthur Andersen classified this item as a prepaid expense.  See Exhibit 1.

8.      Furthermore, Elgin's classification of this item as an "other receivable" was not disputed by Powerscreen in the arbitration process because it had no effect on the net book value of Guzzler.  However, it was never contemplated that this item was an "account receivable" or "trade receivable" that would be included in the listing of "aged accounts receivables" as provided for by paragraph 4 of the Stock Purchase Agreement.  In fact, this item was not one of the specific accounts contained in the detail listing of "accounts receivable" as reported in the closing balance sheet.

405605 COPPEL

2

9.      The Stock Purchase Agreement and the closing balance sheet specifically provided for the payment of an inter-company debt between Guzzler and Powerscreen.  Had this actually been an account owed by Powerscreen, I would have simply offset the inter-company debt by the amount owed by Powerscreen.  This would have been the most practical and cleanest way to handle this item if there had been an amount owing from Powerscreen.

**FURTHER AFFIANT SAYETH NOT,**

_Martha Hartness_
MARTHA S. HARTNESS

COUNTY OF Fulton          :
                         :
STATE OF Georgia          :


        Before me, the undersigned authority in and for said county in said state, personally appeared Martha S. Hartness, whose name is signed to the foregoing Affidavit, and who is known to me, and acknowledged before me on this day that being informed of the contents of said instrument, she executed the same voluntarily on the day the same bears date.

        Given under my hand and official seal this 18th day of
March_____, 1998.


_Beverly M. Moon_
                              Notary Public


My Commission Expires:
        My Commission Expires
             Feb. 1, 2002
          Beverly M. Moon                          [SEAL]


405605 COPPEL

3

PRELIMINARY DRAFT
for Review and Discussion
—Subject to Change                GUZZLER MANUFACTURING, INC.

BALANCE SHEETS
March 15, 1993 and March 31, 1992
(See Independent Accountants' Report)

|  | 1993 (Compiled) | 1992 (Audited) |
|---|---|---|
| **ASSETS** |  |  |
| **CURRENT ASSETS** |  |  |
| Cash and cash equivalent | $ 1,037,587 | $ 2,103,496 |
| Trade receivables, less allowance for doubtful accounts of $27,317 ($45,455 in 1992) | 3,416,555 | 4,331,538 |
| Other receivables | 3,410 | 53,117 |
| Inventories | 6,198,110 | 5,489,896 |
| Prepaid expenses | 220,372 | 137,552 |
| Deferred income tax charges | - | 44,000 |
| Total current assets | 10,876,034 | 12,159,599 |
| **PROPERTY AND EQUIPMENT** |  |  |
| Land | 507,591 | 507,591 |
| Buildings | 2,526,363 | 2,523,126 |
| Machinery and equipment | 1,117,127 | 1,102,402 |
| Furniture and fixtures | 634,840 | 627,306 |
|  | 4,785,921 | 4,760,425 |
| Less accumulated depreciation | 2,002,793 | 1,710,190 |
|  | 2,783,128 | 3,050,235 |
| **INTANGIBLES AND OTHER ASSETS** | 73,123 | 69,358 |
|  | $13,732,285 | $15,279,192 |

| | 1993 (Compiled) | 1992 (Audited) |
|---|---|---|
| **LIABILITIES AND STOCKHOLDER'S EQUITY** | | |
| | | |
| **CURRENT LIABILITIES** | | |
| Current maturity of long-term debt | $    120,000 | $    110,000 |
| Accounts payable | 1,947,836 | 2,202,404 |
| Accrued expenses | 497,284 | 767,860 |
| Due to parent company | 6,917,296 | 1,419,481 |
| Income taxes payable | 295,005 | 130,500 |
| Deferred income tax credits | 11,523 | - |
| | | |
| Total current liabilities | 9,788,944 | 4,630,245 |
| | | |
| **NON-CURRENT LIABILITIES** | | |
| Long-term debt, less current maturity | 730,000 | 850,000 |
| Due to parent company | - | 5,700,018 |
| | | |
| | 730,000 | 6,550,018 |
| | | |
| | | |
| **STOCKHOLDER'S EQUITY** | | |
| Common stock, $1 par value; 1,000,000 shares authorized; 95,500 shares issued | 95,500 | 95,500 |
| Additional paid-in capital | 604,206 | 604,206 |
| Retained earnings | 2,807,090 | 3,309,279 |
| Foreign exchange translation adjustment | - | 383,399 |
| | | |
| | 3,506,796 | 4,392,384 |
| | | |
| Less cost of treasury stock, 75,500 shares | 293,455 | 293,455 |
| | | |
| | 3,213,341 | 4,098,929 |
| | | |
| | $13,732,285 | $15,279,192 |

See Notes to Financial Statement.

# GUZZLER MANUFACTURING, INC.
## BALANCE SHEET
MARCH 15, 1993

### ASSETS

**CURRENT ASSETS**

| | |
|---|---:|
| Cash equivalents | $1,026,424 |
| Accounts receivable, less allowance for doubtful accounts of $42,234 | 3,204,247 |
| Other receivables | 115,050 |
| Inventories | 4,802,445 |
| Prepaid expenses | 127,732 |
| Deferred income taxes | 376,272 |
| **Total current assets** | **9,653,170** |

**PROPERTIES AND EQUIPMENT**

| | |
|---|---:|
| Land | 390,845 |
| Building | 1,988,515 |
| Machinery and equipment | 1,065,493 |
| Furniture and fixtures | 634,840 |
| | 4,079,693 |
| Less accumulated depreciation | (1,662,161) |
| | 2,417,532 |

**NET REALIZEABLE VALUE OF ASSETS NOT IN USE** — 188,000

**INTANGIBLES AND OTHER ASSETS** — 71,142

**$12,329,844**

### LIABILITIES AND STOCKHOLDER'S EQUITY

**CURRENT LIABILITIES**

| | |
|---|---:|
| Current maturities of long-term debt | $120,000 |
| Accounts payable | 2,104,894 |
| Accrued expenses | 1,944,357 |
| Due to parent company: | |
| Note payable | 4,922,296 |
| Dividend payable | 1,995,000 |
| Income taxes payable | 80,152 |
| **Total current liabilities** | **11,166,699** |

**LONG-TERM DEBT** — 730,000

**CONTINGENCIES**

**STOCKHOLDER'S EQUITY**

| | |
|---|---:|
| Common stock, $1 par value, 1,000,000 shares authorized, 95,000 shares issued | 95,500 |
| Additional paid-in capital | 604,206 |
| Treasury shares, 75,500 shares, at cost | (293,455) |
| | 26,894 |
| Retained earnings | 433,145 |

**$12,329,844**

EXHIBIT A

See Notes to Balance Sheet.



REPORT OF AUDIT

CIGNA

GIGI | GI  62  GI  30  Q

COMPANY: INA

DATE: 10/28/93

AUDIT PERIOD: 09/01/92 to 09/01/93

POLICY PERIOD: 09/01/92 to 09/01/93

GUZZLER MANUFACTURING, INC.
P O BOX 66
BIRMINGHAM AL 35201

J R PREWITT ASSOC INC.
2100 17TH AVENUE SOUTH
P O BOX 330088
BIRMINGHAM AL 35255

101546

CLASSIFICATION

COMMERCIAL GENERAL LIABILITY

COMPOSITE RATED
TOTAL SALES

IF YOU HAVE ANY QUESTIONS
CONCERNING THIS REPORT OF AUDIT,
PLEASE CONTACT OUR CUSTOMER
SERVICE REP. AT 1-800-321-9081

HZ

* P/C GENERATED BILL ****

EXPLANATION OF ABBREVIATIONS
M.P.    - MINIMUM PREMIUM
L.C.    - LOSS CONSTANT
E.C.    - EXPENSE CONSTANT
PR. DISC.- PREMIUM DISCOUNT
S.R.    - SHORT RATE
P.R.    - PRO RATA
MED.    - MEDICAL PAYMENTS
A.MED.  - ADDITIONAL MEDICAL
BASE    - BASE
  C     - UNITS
  H     - HUNDREDS
  M     - THOUSANDS
  X     - TEN THOUSANDS
U.S.A.

SPECIAL NOTICE:
THE ANNUAL PREMIUM DISPLAYED
REFLECTS ONLY BILLED PREMIUMS,
NOT NECESSARILY PREMIUMS PAID.

PENGAD-Bayonne, N. J.

PLAINTIFF'S
EXHIBIT
1-K

| CLASS | AUDITED EXPOSURE | RATE | SERVICE OFFICE | LINE: PQ | RATE | MFR. PROD. |
|---|---|---|---|---|---|---|
| | AUDITOR:  7 BENNETT | | BIRMINGHAM | AUDITED PREMIUM | | AUDITED PREMIUM |
| 01 | 22778983.000 | 7.000 | | 159453 | | |

RECEIVED
NOV 4 1993
PRODUCER J. R. PREWITT & ASSOC.

| | COMMISSION RATE | NET BALANCE |
|---|---|---|
| AUDITED EARNED PREMIUM | | 159453 |
| NON-ADJUSTED PREMIUM | | 653 |
| TOTAL EARNED PREMIUM | | 160106 |
| ADVANCE PREMIUM BILLED | | 202224 |
| ADDITIONAL OR RETURN PREMIUM | | -42118 |

NET COMMISSION
NET PREMIUM

-42118

**J.R. Prewitt & Associates**
Birmingham, Alabama 35255-5088
                                                                          10267

| Account | Date | Sched. | Description | Debit | Credit |
| --- | --- | --- | --- | --- | --- |
| 1-1-1-110- | 01/10/94 | | GUZZ-M1/Audit Cancelation | 114019.00 | |

015940



PLAINTIFF'S
EXHIBIT

GUZZLER MANUFACTURING, INC.

ACCOUNTING SUMMARY

JANUARY    7, 1994

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 09/01/91 | AUDIT FOR GENERAL LIAB. 91/92 | $29,704.00- |
| 09/01/92 | AMEND RATES & PREM. ON GEN. LIAB. | $13,135.00 |
| 09/01/92 | AMEND RATES & PREM. ON GEN. LIAB. | $    192.00 |
| 09/01/92 | AMEND REGISTRATION PLATES TO 20 | $    777.00- |
| 03/31/93 | ADD ADD'L INSURED/GEN. LIAB. | $    100.00 |
| 04/01/93 | CANCELLED BOILER & MACHINERY | $    347.00- |
| 04/01/93 | CANCELLED BOND. #6205460 | $    594.00- |
| 03/16/93 | AUDIT FOR UMBRELLA 92/93 | $54,130.00- |
| 05/18/93 | ALABAMA POWER INDEMNITY BOND | $    280.00 |
| 09/30/93 | CANCELLED ALABAMA POWER BOND | $    176.00- |
| 07/26/93 | COMDATA BOND | $    120.00 |
| 9/1/93 | GENERAL LIABILITY AUDIT | $42,118.00- |
| | BALANCE: | $114,019.00- |



PLAINTIFF'S EXHIBIT

J.R. Prewitt & Associates

COPY

January 10, 1994

Guzzler Manufacturing, Inc.
P. O. Box 66
Birmingham, Al.   35201

Attn:  Susan Ragland

RE:  Audits

Dear Susan:

Enclosed is our check for the balance on your account of
$114,019, as discussed by phone.

Please look over the documents enclosed and should you have any
questions, be sure and let us know.

As discussed, we are still awaiting the audit for your package
policy as well as the audit for the ocean cargo and I am
following up on the return premium on your Florida workers'
compensation and will call and let you know as soon as I find
out about it.

Sincerely yours,


Marilyn J. Praytor
Account Executive

MJP:Encls.



PLAINTIFF'S
EXHIBIT
1C

OCT-10-1994  11:39   FROM FEDERAL SIGNAL       TO               P.03



**FEDERAL SIGNAL CORPORATION**

KIM A. WEHRENBERG

Vice President, General Counsel
and Secretary

September 22, 1994

**VIA FAX:  011-44-533-693543**

Mr. Jeff Hunt
Powerscreen International PLC

Dear Jeff:

In accordance with Section 4 of the Agreement, attached is the
assignment to Powerscreen of the $92,640 Guzzler account
receivable, which with the 9% interest pursuant to Section 11 of
the Agreement, equates to the $102,089.55 Powerscreen wire
transferred to Elgin last week.

Sincerely,

Kim A. Wehrenberg

KAW:ln
Attachment

E 9083

## ASSIGNMENT

Guzzler Manufacturing, Inc. ("Guzzler") hereby assigns and transfers to Powerscreen International PLC all of Guzzler's rights, title and interests in the Guzzler Closing Balance Sheet Account Receivable of $92,640 owed by Powerscreen to Guzzler for Cigna Policy No. G1 62 61 30 0.

IN WITNESS WHEREOF, this assignment is executed on this 21st day of September, 1994.

Guzzler Manufacturing, Inc.

By: _Kim A. Webberly_

E 9084