IN THE UNITED STATES DISTRICT COURT FOR THE FILED
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

02 MAR 27 PM 3: 17

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| ELGIN SWEEPER COMPANY;<br>GUZZLER MANUFACTURING, INC.;<br>FEDERAL SIGNAL CORPORATION,<br><br>Plaintiffs,<br><br>v.<br><br>POWERSCREEN INTERNATIONAL,<br>PLC,,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)  CIVIL ACTION NO. 94-G-G-0623-S<br>)<br>)<br>)<br>)<br>) |

ENTERED

MAR 2 7 2002

## MEMORANDUM OPINION

## STATEMENT OF FACTS

The court once again revisits the above-cited case.  Issues have

heretofore been resolved by summary judgment, by jury trial, and by decision of

the Eleventh Circuit.  The only issues remaining in the case involve a claim for an

insurance "assignment" of $92,640.00 and a counterclaim for a $42,118.00 refund

paid Guzzler for overpayment of said insurance.  Defendant Powerscreen has filed

a motion for partial summary judgment and has renewed its motion for summary

*307*

judgment. The facts all relate to a stock purchase agreement whereby Federal Signal Corporation [hereinafter Federal Signal] purchased from Powerscreen International, PLC [hereinafter Powerscreen] all of the outstanding stock of Guzzler.

## STATEMENT OF FACTS

Parties to this action are aligned in the following manner: Federal Signal is the parent company of plaintiff Elgin Sweeper Company [hereinafter Elgin]. For consistency's sake with earlier opinions, where needed, plaintiffs are hereinafter referred to collectively as Elgin/Federal Signal. Defendant Powerscreen previously owned Guzzler Manufacturing, Inc. [hereinafter Guzzler], a Birmingham, Alabama, company that produces and distributes sewer-cleaning vehicles.[1] On February 5, 1993, plaintiff Elgin and defendant Powerscreen entered into a Stock Purchase Agreement [hereinafter Agreement] by which Elgin purchased Guzzler. Closing, subsequent to the signing, took place March 16,

---

[1] Although owned by Powerscreen Guzzler was a separate corporation.

2

1993.  A First Amendment to the Stock Purchase Agreement [hereinafter First Amendment] was executed at closing.[2]

It was the business practice of Guzzler, under the ownership of Powerscreen, to pre-pay its annual products liability insurance premium in September.[3]  In September 1992 Guzzler prepaid to J.R. Prewitt & Associates its annual insurance premium for a term ending August 1993.  The premium paid was $92, 640.00.[4]

---

[2]  The Agreement and First Amendment set forth the rights and responsibilities of the parties to the transaction.

[3]  February 23, 1998, affidavit of Jeffrey Hunt, President of Guzzler from September 1990 to March 1993.

[4]  The court has previously granted summary judgment on aspects of the $92,640.00 insurance prepayment.  Its earlier decision granting summary judgment on the $92,640.00 prepayment issue, based on letters sent to the court by counsel of both sides, was overturned by the Circuit for lack of evidence in the record.  By omission the thirteen letters sent the court failed to be included in the record on appeal.   The present decision of the court does not turn on those letters.

Terms of paragraph 11 of the Agreement and subparagraphs 11(c)[5] and (d)[6] of the First Amendment to Stock Purchase Agreement [hereinafter First Amendment] required Powerscreen to **_indemnify_** [7] [8] Guzzler and Federal Signal for loss on all products manufactured or shipped prior to the March 16, 1993,

---

[5] The First Amendment required the Buyer to notify Seller of any complaint or claim or other notice of loss, claim, damage, or liability giving rise to a claim for indemnification under the Agreement within ten days of notification of the loss, claim, damage, or liability event. Failure of the Buyer to timely notify the Seller of any event which could bring indemnification into play could reduce loss of Seller resulting from delay. Seller was relieved of its liability obligation to Buyer to indemnify the Buyer "for any settlement of any claim effected without Seller's prior written consent."

[6] "On or before the third anniversary date of this Agreement the parties hereto agree to renegotiate in good faith the product liability indemnification obligations established hereunder. At such time, the parties shall review the claims history of the Company. If at such time the parties hereto cannot in good faith agree on terms shifting responsibility for all product liability claims to Buyer, they agree to resume such good faith negotiations no later than by the fifth anniversary date of this Agreement."

[7] The sales contract required **_indemnity_**, not insurance.

[8] "An indemnity clause is a contractual provision in which one party agrees to answer for any specified or unspecified liability or harm that the other party might incur." Black's Law Dictionary 773 (7th ed. 1999).

4

closing date, regardless of the date of loss.[9]  Coverage continues for machines

manufactured during the premium year until the statute of limitations runs.

At issue in the case at bar is whether an agreement took place for an

assignment of Guzzler's general liability and products liability insurance policy,[10]

Cigna Policy # OGLG16261300 written by agent J.R. Prewitt & Associates.  A

controlling issue is whether plaintiffs provided such an assignment as promised.

Plaintiffs argue that an endorsement adding two insureds (Powerscreen and

Federal Signal) fulfills their obligation to assign.  The policy at first covered only

---

[9]  The indemnity clause of the Agreement covers anything "arising out of or resulting from (i) any breach or failure of a representation, warranty, covenant or agreement of Seller contained in this Agreement or its Schedules or any deficiency for federal or state or other taxes or penalties resulting from or relating to the conduct of the Company's business prior to Closing (including any effects from the Two Million One Hundred Thousand ($2,100,000) Dollar dividend and payment of Company debt to Seller at Closing and (ii) for any defective product manufactured or shipped by the Company prior to Closing or arising from any contract or law or otherwise for any defective product, failure to warn, breach of implied or express warranties, negligence or misrepresentation as to any product manufactured or shipped before Closing including any personal injury, death or property damage attributable to products manufactured or shipped by the Company prior to the Closing."

[10]  A liability insurance policy issued to business owners protects them against liability for various matters including error, mistake or omission that occur in the course of their business or operation. 45 C.J.S.  Insurance § 948.

Guzzler.[11]  Cigna had the right to refuse an assignment and did refuse to allow plaintiffs to assign the policy.

Plaintiffs allege that an **oral** agreement[12] was made between the parties by which Powerscreen would pay plaintiffs $92, 640.00 (an amount equal to the full year's premium stated in the policy) in exchange for an assignment.[13] This allegation is supported by an uncontradicted February 23, 1998, affidavit of Kim Wehrenberg by which he affirmed that he and a representative of Powerscreen (either Barry Cosgrove, Powerscreen's chief financial officer, or Jay Tannon, one of Powerscreen's attorneys) had a conversation wherein an oral contract for an assignment took place.[14] [15] In support of the argument that an

---

[11]  While the policy gave Guzzler coverage, Powerscreen had to indemnify loss for products manufactured or shipped before closing.

[12]   Counsel withdrew any claim of a written assignment dated September 21, 1994, pursuant to the contract of sale and argued in open court that a novation had taken place. They contended the endorsement was an assignment which fulfilled their obligation in the oral novation agreement to assign the policy. Even so, the court will cover plaintiffs' previous argument that a written assignment under the contract of sale took place later in the opinion at 17-18.

[13]  There was no contract between Guzzler and Powerscreen for the assignment.   The effect of the agreement was that plaintiffs offered to have Guzzler assign the policy.

[14]  Barry Cosgrove has never replied to Wehrenberg's affidavit though he has had ample opportunity to do so.  Jeff Hunt's affidavit is irrelevant since he
(continued...)

agreement for an assignment took place plaintiffs contend circumstantially that

Guzzler would be covered by a policy of the parent company and did not need the

coverage here in question.  In further support of the argument plaintiffs have

offered copies of the following documents:

1)      March 19, 1993, intra-company correspondence of Pam Krage
        of Federal Signal to Kim Wehrenberg;[16]

---

[14](...continued)
was not involved.  Although Jay Tannon has submitted an affidavit he neither
denies nor affirms the conversation.  He merely says he has no recollection.

[15] The court questions whether Cosgrove or Tannon had the authority to
enter such an agreement.  Neither party has said the first word in addressing this
issue.  Although the court suspects that Cosgrove, not Tannon,  had the authority
to enter into a contract on behalf of Powerscreen, no evidence of that authority
was entered into the record and the court was not asked to take judicial notice that
he was vested with such authority. While the issue of authority exists the decision
being entered by the court moots the issue.

[16] "In order to have the captioned policy transferred to Powerscreen,
Guzzler Manufacturing, Inc. must advise their broker to contact Cigna and request
that it be assigned to Powerscreen International PLC.  Otherwise I recommend we
cancel this policy effective 3/16/93.

"In order to reconsider the indemnification obligation after three years, in
compliance with the First Amendment to Stock Purchase Agreement, we require
evidence of Powerscreen's ongoing insurance coverage and claims updated
annually."

Copy attached.  Exhibit 1.

2)   Undated memo[17] from Guzzler to J.R. Prewitt & Associates [hereinafter Prewitt] requesting that Cigna assign the aforesaid captioned policy to Powerscreen effective March 16, 1993;

3)   Copy of above two-referenced documents attached to copy of March 23, 1993, handwritten FAX by Mary Ellen Penicook[18] of Federal Signal to Jay Tannon of Brown, Todd & Heybuck, corporate counsel of Powerscreen, to forward the material to Powerscreen;

4)   February 23, 1998, affidavit of Kim Wehrenberg[19] that Powerscreen requested an assignment be made; and

5)   Unilateral request from Susan Ragland, Guzzler's former controller, after the sale, to Prewitt to assign policy.[20]

Although the above-mentioned requests were made the policy ***was neither canceled nor assigned.***[21]

Neither the policy nor any purported assignment were delivered to Powerscreen.  Instead, without even notifying Powerscreen, plaintiffs by endorsement of March 31, 1993, added both Powerscreen and Federal Signal as additional insureds at an additional premium of $50.00 each.  Guzzler paid the

---

[17]  Copy attached.  Exhibit 2.

[18]  Copy attached.  Exhibit 3.

[19]  Copy attached.  Exhibit 4.

[20]  Copy attached.  Exhibit 5.

[21]  See copy of Supplemental Affidavit of J.R. Prewitt attached.  Exhibit 6.

premiums for the endorsements affixing Powerscreen and Federal Signal as added insureds. All three parties were, therefore, covered by the policy thereafter as long as the insurance remained in effect.[22]  No explanation for plaintiffs' never having canceled the insurance has ever been given the court.  Probably greed is the explanation.  A cancellation, even pro rata,[23] would return only about 45.8 % of the premium.  Plaintiffs apparently decided to go for the whole $92,400.00 (an amount equal to the entire prepaid premium) in a claim against Powerscreen. They intended to keep the coverage for both plaintiffs and Guzzler and attempt to recover the entire annual premium from Powerscreen.  This inequitable approach runs afoul of several rocky shoals, including the doctrine of unjust enrichment.

At one point Powerscreen sent Federal Signal a check for approximately $100,000.00, claiming it was for full payment of the entire amount owed under Section 4.  Federal Signal contended that more was owed.  At trial Federal Signal obtained a judgment against Powerscreen on this issue for approximately $50,000.00 more.

---

[22] It is in effect today as to claims having to do with machines manufactured during the policy year.

[23] The court takes judicial notice that the actual refund would have been figured on Cigna's "short rate" table and the actual premium refund would have been less than 45.8 % (which would be the pro rata rate).

9

After receiving the $100,000.00 payment from Powerscreen Federal Signal credited that amount to Powerscreen's obligation under Section 4 and then "assigned" the $92,640.00 (which plaintiffs claimed was a receivable[24] owed by Powerscreen) back to Powerscreen. Federal Signal alleges this "assignment" complied with the Section 4 requirement. Powerscreen disagreed. So does the court.

Powerscreen denies that an agreement was entered into by which it would pay $92, 640.00 to plaintiffs for an assignment of the Cigna policy covering Guzzler. Barry Cosgrove, however, never replied to Wehrenberg's affidavit, leaving Wehrenberg's affidavit unchallenged. Powerscreen claims it had pre-paid the insurance and did not need to repay the premium. This position ignores the fact that the premium was prepaid by Guzzler, a separate corporation, and the Guzzler/Cigna insurance contract did not provide coverage for Powerscreen. Furthermore, Powerscreen had contracted to indemnify Guzzler and Federal Signal. As an "added insured" Powerscreen did obtain coverage valuable to it to cover its indemnity obligation, but never had knowledge of this endorsement prior to the filing of this action. Discovery during litigation provided Powerscreen its

---

[24] The arbitrator disposed of the claim this was a receivable by classifying the insurance as an **asset, not a receivable.**

first knowledge that such an endorsement existed.   Federal Signal, too, was covered by the endorsement.  Guzzler paid the $ 50.00 premium for both additional insureds.

Although evidence indicates that plaintiffs tried to get Cigna to assign the policy to Powerscreen, Cigna refused to do so.  Cigna's position of no assignment, as set forth in the policy, evolved from the common law principle that an insurance policy was not assignable because of general rules prohibiting the assignment of choses in action.  Generally, today liability and indemnity policies cannot be assigned unless the insurer consents. *Aetna Cas. & Sur. Co. v. Valley Nat. Bank of Ariz.*, 485 P. 2d 837 (Ariz. 1971).  *See*,  43 Am Jur 2d, Insurance § 789;  45 C.J.S.  Insurance §  474. ("[A]n assignment cannot be made without the consent of the insurance company where it is expressly forbidden by the terms of the policy."); 43 Am Jur 2d, Insurance, § 789, § 790  (Policies of liability or indemnity insurance, regarded as personal contracts, usually contain express provisions prohibiting assignment by the insured except with the consent of the insurer.).  No party here contends that Cigna did not have the right to refuse to allow an assignment of the policy.

11

The March 31, 1993,[25] endorsement to the policy added Powerscreen and Federal Signal to the policy as additional insureds at a cost of $50.00 each.[26] [27] [28] The endorsement was added after Cigna refused to allow assignment of the policy. Powerscreen was not notified of the endorsement and first learned of it during discovery. Plaintiffs argue that they did not need this insurance protection. Guzzler was covered as a subsidiary by plaintiffs' existing insurance. Despite this argument, no objection was made to Federal Signal's being added as an additional insured and the policy was not canceled. Guzzler continued to be covered by the Cigna policy. Powerscreen admits that the endorsement as an additional insured gave it the same right to coverage as if the policy had been formally assigned, but

---

[25] See copy of endorsement # 1, Exhibit 7, sent to Guzzler, the insured, and the March 31, 1993, letter from Libby Martin at Prewitt to Cigna regarding addition of Powerscreen and Federal Signal as additional insureds. Exhibit 8.

[26] Additional insureds can have insurance protection under the policy, but no rights as far as making changes to the policy or receiving returned premiums upon audit. The endorsement, however, is not an assignment (which carries ownership), nor can the endorsement make the assignment of ownership take place regardless of the desire of the insurance company. Control of the policy was never surrendered to Powerscreen--a necessary characteristic of an assignment.

[27] Plaintiffs have taken the absurd position that a $50.00 coverage endorsement is the same as owning a policy.

[28] The endorsement gave Powerscreen and Federal Signal insurance coverage in addition to that provided to the owner of the policy, Guzzler.

there is no evidence that Powerscreen was told of this additional insured

endorsement and no evidence that Powerscreen consented to it at any time.  Nor is

there evidence that Powerscreen secured additional insurance to protect it for the

time period through August 31, 1993, in the event of an indemnity claim.  The

affidavit of Jeffrey Hunt, previously identified, states that Powerscreen at no time

asked for or agreed to any insurance coverage.

Elgin/Federal Signal could have had Guzzler cancel the policy at any

time, but chose not to do so.  The February 23, 1998, affidavit of Kim

Wehrenberg stated that Elgin/Federal Signal failed to cancel the policy only

because Powerscreen wanted the insurance.  In a supplemental affidavit

Wehrenberg swore that Guzzler canceled the policy and never received a

$42,118.00 credit.[29] At all times Federal Signal retained the policy through

Guzzler and coverage through the endorsement. The Guzzler policy, with

Powerscreen and Federal Signal as added insureds, remained in effect, belying the

inconsistent position of Elgin/Federal Signal that it was not needed by plaintiffs or

by Guzzler.  The **policy** itself was not assigned. Cigna refused to permit an

assignment.  Nor was it canceled.  The March 2, 1998, affidavit of John R. Prewitt,

---

[29]   Copy attached.  Exhibit 9.  Subsequent records prove Mr. Wehrenberg's
affidavit untrue in both respects.

insurance agent, states that Guzzler was provided coverage through August 31, 1993.[30]

It was not until July 1, 1993, when Powerscreen received a listing from plaintiffs of past due accounts receivable that it was aware that plaintiffs were claiming that the $92,640.00 insurance prepayment was a past due account receivable contemplated by paragraph 4 of the Agreement.[31] Defendant Powerscreen  objected to its inclusion and voiced its objection to plaintiffs.[32] [33]

---

[30]  Copy attached.  Exhibit 10.

[31]  Paragraph eight of  the March 18, 1998, affidavit of accountant Martha Harkness, partner in the accounting firm of Ross Lane & Company, LLC, states that the figure was never a contemplated account receivable included in the listing of "'aged accounts receivables' as provided by paragraph 4 of the Stock Purchase Agreement.  In fact this item was not one of the specific accounts contained in the detailed listing of 'accounts receivable' as reported in the closing balance sheet." Affidavit of Ms. Harkness as well as the March 15, 1993, closing balance sheet of Guzzler copies are attached.  Exhibit 11. Exhibit 12.  See n. 23, at 9 of the opinion. The arbitrator classified the insurance as an asset, not a receivable.

[32]  In this court's April 19, 1995, memorandum opinion the court stated, in part, the language set forth below:

> The court agrees with the following Powerscreen statement: "The fact that Elgin/Federal Signal classified this asset of Guzzler as a 'receivable' in its list of aged receivables instead of a 'prepayment' does not magically transform it into a past due account that was to be listed on the aged receivables list as per the Stock Purchase Agreement."  **The $92,000.00 prepayment was finally and conclusively determined by the arbitrator to be an asset of**

(continued...)

14

In the fall of 1993 an audit was performed by Cigna with respect to the Guzzler policies for the preceding year.  An October 28, 1993, Report of Audit sent to Prewitt, and received on November 4, 1993, indicated a refund premium in the amount of $42,118.00 was owed Guzzler on the Cigna policy at issue here.[34] Powerscreen's renewed motion for partial summary judgment is with respect to its claim for credit for the $42,118.00 refund received by Guzzler in the event this court holds Powerscreen liable to plaintiffs. A January 7, 1994, accounting summary of Guzzler's policies showed an overpayment of $114,019.00.[35]  By

---

[32](...continued)
**Guzzler rather than an aged receivable and was so noted on the closing balance sheet.  ...  Arthur Anderson determined the $92,000.00 insurance prepayment was an asset of Guzzler--not a receivable (emphasis added).**

[33]  The coverage extended into the future (limited only by the various statutes of limitation) as to machines manufactured by Guzzler during the policy year ending August 31, 1993.  Since the policy coverage extends until this day and beyond, the policy is still, as it always was, as asset of Guzzler, as held by the arbitrator.

[34]  The copy attached to the opinion was furnished to the court by plaintiffs. It is marked as Plaintiff's Exhibit 1-K.  Exhibit 13.

[35]  The overpayment of $114,019.00 (Plaintiff's Exhibit 1-D) included the $42,118.00 on the September 1, 1993, General Liability Audit.  Plaintiff's Exhibit 1-E.  Copies of these documents, furnished by plaintiff, are attached.  Exhibit 14, Exhibit 15.

letter of January 10, 1994,[36] Marilyn J. Praytor, Account Executive at Prewitt, sent

Guzzler a letter with enclosures, directed to Susan Ragland, accompanied by a

check in the amount of $114,019.00.   Of importance is the specific paragraph

which follows:

> Enclosed is our check for the balance on your account of $114,019 **as
> discussed by phone** (emphasis added).

In response to this court's order of October 16, 2000, plaintiffs admit, by

document 298 in the court file, receipt of the $114,019.00 check from Prewitt.[37]

In answer to specific questions posed by the court[38] plaintiffs answered as follows:

> Guzzler received the $114,019.00 check which defendant contends
> included overpayment for an insurance refund, however, plaintiffs
> cannot verify from their records whether the check in fact included an
> insurance refund.[39]

---

[36] The attached copy is identified as Plaintiff's Exhibit 1-C.  Exhibit 16.

[37] Plaintiffs stated they "believed it to be the defendant's burden to
establish receipt of the check."  The court does not agree.  Plaintiffs are seeking
payment of an amount Guzzler prepaid.  Justice requires that over-reaching not be
allowed by either side.  Ironically, receipt of the check has been established by
documents furnished the court by plaintiff at an earlier time, as shown by labels
placed on the documents by plaintiffs at time of submission, so the burden of
proof was indeed carried by Powerscreen.

[38] Court document 297.

[39] Prewitt records specifically itemize what was covered by the check.
Furthermore, the January 10, 1994, letter from Ms. Praytor directed to Susan

(continued...)

16

The closest thing to evidence that an assignment took place is a September 22, 1994,[40] signed letter by Kim Wehrenberg written on his letterhead as Vice President, General Counsel and Secretary of Federal Signal, to Mr. Jeff Hunt of Powerscreen[41] that reads as follows:

> In accordance with Section 4 of the agreement, attached is the assignment to Powerscreen of the $92,640.00 Guzzler account receivable, with the 9% interest pursuant to Section 11 of the Agreement, equates to the $102,089.55 Powerscreen wire transferred to Elgin last week.

Attached to the letter was the September 21, 1994, assignment, signed by Mr. Wehrenberg on behalf of Guzzler, set forth below:

---

[39](...continued)
Ragland at Guzzler, indicates that the matter had previously been discussed by telephone. Court records indicate the $42,118.00 was included in the insurance refund. Copies, furnished by plaintiff, are attached to this opinion.

[40] This purported assignment took place nine months after Guzzler's receipt of the insurance refund.

[41] Copy attached. Exhibit 17.

<u>Assignment</u>

Guzzler Manufacturing, Inc. ("Guzzler") hereby assigns and transfers to Powerscreen International PLC all of Guzzler's rights, title and interests in the Guzzler Closing Balance Sheet Account Receivable of $92,640.00 owed by Powerscreen to Guzzler for Signa [sic] Policy No. G1 63 61 0 0.

IN WITNESS WHEREOF,  this assignment is executed on this 21st day of September, 1994.

Sincerely,

Kim A. Wehrenberg[42]

The court must decide whether this letter and its purported attachment did indeed constitute an assignment.  Powerscreen argues that the above-referenced letter from Wehrenberg to Hunt and the attached "assignment" did not effectuate an assignment.  Powerscreen further argues the "assignment" failed as a legal assignment: **The insurance company refused to allow an assignment.**  No argument can create an assignment in face of this fact. Other factors argued by Powerscreen to negate an assignment follow:

1)   Plaintiffs abandoned the argument regarding a written assignment in favor of the argument that an oral contract existed between the parties

---

[42]  This letter/"assignment" is the basis of the court's March 29, 2001, decision holding that an assignment took place. The March 29, 2001, order and memorandum opinion are being withdrawn with the entry of this opinion and its accompanying order.

18

by which Powerscreen agreed to pay Elgin/Federal Signal $92,640.00 in exchange for an assignment of the policy.[43]

2)    The purported assignment occurred, if at all, over a year after the term of policy at issue had expired.

3)    The Wehrenberg letter was written nine months after Guzzler received the $42,118.00 refund on the policy from J.R. Prewitt & Associates.

Too, the court notes that in open court plaintiffs dropped the argument that a written assignment took place.  Plaintiffs adopted the position that a novation had taken place.


**DISCUSSION**

In order for an assignment to take place the assignor and the assignee must manifest an **intent** to transfer ownership to the thing assigned. "There must be a present transfer of the assignor's right, which is so far complete as to deprive the assignor of his control over the subject or assignment, and the assignor must not retain any power of revocation." 6A C.J.S.  Assignments § 43.  The assignment must confer a complete and present right on the assignee.   6A C.J.S. Assignments § 47 ("[T]he assignor must confer the **complete right or interest** in

---

[43]  Powerscreen denies that any oral agreement was entered into.

19

the subject matter of the assignment on the assignee and surrender all control over it (emphasis added) .")  *See, Russell v. Birmingham Oxygen Service, Inc.,* 408 So. 2d 90, 93 (Ala.1981) (There must be an affirmative showing of an intent to assign by which the owner indicates a transfer of his claim or right to another) (reference to *Strickland & Co. v. Lesesne & Ladd*);  *E. Strickland & Co. v. Lesesne & Ladd*, 49 So. 233 (Ala. 1909) ("An assignment of a chose in action need not be as formal as was required by the common law, and it may be done either legally or equitably, in writing, by parol, or otherwise; but there must be enough done to show an intention to transfer or assign *eo instante*, as distinguished from a mere offer or purpose to do so, and the owner must do or say something indicating a transfer of his claim or right to another.").  Because of the requirement that there must be an immediate intent to effect a transfer of ownership to the assignee it has been held that either actual or constructive delivery of the policy to the assignee must be made. *Couch on Insurance 3d* § 36:28, § 36:30 (1997).  Delivery may be made of either the policy itself or a separate written assignment. *Couch* § 36:31.

In order to have a valid assignment the assignment must have been communicated to the assignee who must have given assent to the assignment in some manner either by acts or conduct amounting to acceptance.   6A C.J.S.

Assignments § 63;  Restatement (Second) of Contracts § 327 (Manifestation of assent by the assignee is essential to make it effective.).

As in any contract, for there to be an enforceable valid assignment there must be a valuable consideration[44] between the assignee and the assignor. *See,* 43 Am Jur 2d, Insurance, § 807 (An assignment of a policy is a contract which must be supported by consideration.);  6A C.J.S.  Assignments § 60; 45 C.J.S.  Insurance § 469 ("An assignment of a policy of insurance must be supported by a consideration.").  If one or more of the promised things under the contract of assignment is never received there is a partial failure of consideration. Conway at 162.  While a total failure of consideration legally excuses the duty of return performance a partial failure of consideration does not necessarily have this effect.  *Id.*  In the case of a bilateral contract where there is an exchange of a promise for a promise (occurs at the instant the contract is formed) or an exchange of performance for performance (occurs some time later) the significance of the

---

[44]     CONSIDERATION DEFINED.  Either the slightest legal
detriment suffered by one party at the request of the
other or the slightest legal benefit bargained for and
obtained by either party, will constitute a consideration
sufficient to support a contract.

Paul Conway, Outline of the Law of Contracts, Academy Publications 147 (3d ed. 1968).

double exchange is that if either part of the exchange is lacking there is a failure of consideration.  Conway at 483-84.

## CONCLUSION

### A.  Did an assignment take place?

The evidence before the court clearly shows that no assignment, oral or written, ever took place:  1)  Cigna refused to permit assignment of the policy; 2)  Affidavit of J.R. Prewitt, the agent who wrote the policy, affirms no assignment ever took place;  3)  Plaintiffs never canceled the policy, negating the argument that the insurance was not needed; 4) Powerscreen and Federal Signal were added to Guzzler's policy by endorsement, indicating ownership still lay with Guzzler;  5)  All three parties (Guzzler, Powerscreen, and Federal Signal) were covered by the policy as long as the policy was in effect;  6)  The Wehrenberg letter with the purported assignment was written and sent after Guzzler's receipt of the $42,118.00 refund on the policy;[45] and, 7)  Had there been

_____

[45] Ironically, were the court to hold that an assignment had actually taken place by oral agreement, Powerscreen would be entitled to the rebate. Had an assignment taken place Powerscreen would owe $92,640.00 but would own the policy and be entitled to the entire refund.

an assignment Powerscreen would have owned the policy and would have gotten all of the refund.[46]

### B. Did an agreement for an assignment take place ?

At this point in the analysis the court must conclude that, at best, only an agreement to make an assignment took place. The "contract" violated the proscription of assignments in the insurance contract, so there was no assignment. Black's Law Dictionary 326 (7th ed. 1999) (A contract that is of no legal effect is void.).

While Federal Signal argues that the agreement did, in fact, take place, evidence shows that in any event the consideration failed. Federal Signal/Guzzler never surrendered control--the necessary element to effect an assignment. Guzzler kept the policy. Guzzler paid the policy premiums, including those for the additional insureds. Guzzler never delivered the policy to Powerscreen. Federal Signal/Guzzler never canceled the policy. Cigna denied approval of any assignment. There was a failure of consideration which excused Powerscreen from performing: **The assignment was impossible**.

---

[46] Plaintiffs have continued to resolutely deny that Powerscreen is entitled to this refund as a credit, insisting they are entitled to $92,400.00 from Powerscreen and that the refund also belongs to them.

**C. Was the failure of consideration sufficient to totally void the contract?**

Yes. An assignment was the essence of the agreement and no assignment took place.

## HOLDING

Based on the above, the court **HOLDS** the following:

1) No assignment, oral or written, took place.

2) An agreement to make an assignment took place.

3) The agreement to assign was a violation of the insurance policy-- hence void from its inception. There was no waiver by the insurance company. Rather there was a total refusal by Cigna to permit an assignment.

4) There was a total material failure of consideration.

5) Powerscreen is excused from performance because of the failure of consideration.

6) Although equity and good conscience require that Powerscreen and Federal Signal should each pay Guzzler $50.00 for the endorsements providing them coverage, since Guzzler made no such claim neither is required to pay the $50.00.

7) Plaintiffs' claim for attorneys' fees is denied.

8) Powerscreen's renewed motion for summary judgment is GRANTED.

9) The counterclaim is MOOT, but Powerscreen is entitled to the $42,118.00 if it is determined that it is liable on the contract to assign.

10) All outstanding motions are declared MOOT by the entry of this order.

## **ALTERNATE HOLDING**

In the event it is determined that defendant Powerscreen is liable on the contract to assign, the motion of defendant Powerscreen for partial summary judgment in the amount of $42,118.00 for a policy refund received by plaintiffs with respect to Cigna Policy OGLG16261300 written by agent J.R. Prewitt & Associates is GRANTED.

An order consistent with this opinion is being entered contemporaneously herewith.

DONE and ORDERED this 27th day of March 2002.

UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.

25

80000 SERIES
30% P C W

KIMBERLY-BOM
RECYCLED

MAR-23-93 TUE 11:43    FEDERAL SIGNAL CORP    FAX NO. 708 954 2041    P. 02

---

**FEDERAL SIGNAL CORPORATION**　　　　　　　*INTRA-COMPANY CORRESPONDENCE*

|  |  |
|---|---|
| **Date:** | March 19, 1993 |

To:　　Kim Wehrenberg　　　　**From:**　Pam Krage

　　　　　　　　　　　　　　　**Location:**　Corporate

Location:　Corporate　　　　　**Phone:**　(708) 954-2024

Subject:　General/Product Liability Insurance
　　　　　Guzzler Manufacturing, Inc.
　　　　　Cigna Policy #G16261300
　　　　　Policy Period:　9/1/92 to 9/1/93

In order to have the captioned policy transferred to Powerscreen,
Guzzler Manufacturing, Inc. must advise their broker to contact
Cigna and request that it be assigned to Powerscreen
International PLC.  Otherwise, I recommend we cancel this policy,
effective 3/16/93.

In order to reconsider the indemnification obligation after three
years, in compliance with the First Amendment to Stock Purchase
Agreement, we require evidence of Powerscreen's ongoing insurance
coverage and claims data updated annually.

Sample wording is attached.  Please advise as soon as possible.

Pam Krage

PK:cj

enclosure

80000 SERIES
30% P.C.W

WILLIAM-PAXON
RECYCLED ®

o:        J. R. Prewitt & Associates

om:      Guzzler Manufacturing, Inc.

ubject:    Cigna Policy No.: G1 62 61 30 0
            Policy Period: 9/1/92 to 9/1/93

ffective March 16, 1993, Powerscreen International PLC sold Guzzler
anufacturing, Inc. to Federal Signal Corporation. The terms of the sale require
owerscreen to retain the liabilities of all products manufactured or shipped
ior to March 16, 1993, irregardless of the date of loss.

/e therefore request that Cigna assign the captioned policy to Powerscreen
ternational PLC, effective March 16, 1993.

8000 SERIES
30% P C W

MAR-23-93 TUE 11:43    FEDEF' SIGNAL CORP    FAX NO. 708 954 2041    P. 01

**FEDERAL SIGNAL CORPORATION**
**CORPORATE OFFICE**

**FAX (708) 954-2041**

Jay Tannon                    FAX: (502) 581-1087    # OF PAGES 3

PANY: Brown Todd & Heyburn

SAGE: Jay — I am passing along this memo from
risk manager. Please forward to Powerscreen
+ their benefit, otherwise policy will be cancelled.

FROM: MaryEllen Penicook

8000 SERIES
30% P.C.W

WAUSAU-ART
RECYCLED®

### AFFIDAVIT OF KIM WEHRENBERG

I, Kim Wehrenberg, having been first duly sworn, under oath state as follows:

1.  I am of legal age and, if called to testify, can give competent testimony from my own personal knowledge to the facts stated in this affidavit.

2.  I have been a vice-president and the general counsel of Plaintiff Federal Signal Corporation ("Federal Signal") and its subsidiary Plaintiff Elgin Sweeper Company ("Elgin") since 1986. In that capacity, I have personal knowledge of the insurance owned by Federal Signal and its subsidiaries, the extent of coverage provided by such insurance, and the effective dates.

3.  I was vice-president of Elgin in 1993 when Elgin purchased Guzzler Manufacturing, Inc. ("Guzzler") from Powerscreen International, PLC ("Powerscreen"). I was personally involved in the negotiations that lead up to the signing of the stock purchase agreement on February 5, 1993. I was also present at and participated in the closing of the sale on March 16, 1993.

4.  In connection with the purchase of Guzzler, I was informed by representatives of Powerscreen and Guzzler that, prior to the closing, Guzzler had prepaid $92,640 for liability insurance coverage for the period between March, 1993 and August, 1993. This insurance covered all claims during that period made in connection with equipment manufactured either before or after the closing on March 15, 1993. However, as to such claims, I was aware that Guzzler did not need this insurance coverage. As a subsidiary of Elgin, which was a subsidiary of Federal Signal, Guzzler was protected by insurance already owned by Federal Signal.

5.  At or about the closing, I had a conversation with one or more representatives of Powerscreen concerning this insurance. Although I do not specifically recall the exact person or

persons with whom I had this conversation, I do recall that it was either Barry Cosgrove, Powerscreen's chief financial officer, or Jay Tannon, one of Powerscreen's attorneys.

6.     In this conversation, I told Powerscreen that Guzzler did not need this insurance and intended to cancel it. (If Guzzler did cancel the insurance, it would have received a full refund of the $92,640 that had been pre-paid.) I also asked Powerscreen if it wanted to have the insurance coverage assigned to it for that same $92,640. Even though Powerscreen would no longer own Guzzler, I knew that it still had need for this insurance. Under the stock purchase agreement, Powerscreen was responsible for product liability claims asserted after the closing arising out of equipment manufactured by Guzzler before the closing, *i.e.*, during the time Powerscreen owned Guzzler.

7.     During my conversation with Powerscreen, Powerscreen told me that it did want the coverage afforded by the insurance in question and that Guzzler should therefore assign that coverage to Powerscreen, which was then done. In accordance with Powerscreen's wishes, the insurance agent for Powerscreen and Guzzler was instructed to reflect that the insurance coverage was being assigned to Powerscreen as of the closing and Powerscreen's counsel was so advised. (See correspondence attached as Exhibit No. 1.)

8.     If Powerscreen had not wanted the insurance coverage assigned to it from Guzzler, Guzzler would have cancelled that insurance and received a $92,640 refund. It was only because Powerscreen wanted the insurance protection for itself that Guzzler did not cancel the insurance but instead advised the insurance agent used by Powerscreen for Guzzler to effect this assignment.

Dated this _23rd_ day of February, 1998.

_____
KIM WEHRENBERG

SUBSCRIBED TO AND SWORN to
before me this 23rd day of February, 1998.

_____
Notary Public

```
"OFFICIAL SEAL"
LANA J. NOEL,
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 12/21/99
```

#96042v01:Acv 02/23/98 11:14 AM                3

80000 SERIES
30% P.C.W
RECYCLED



America's Leader in Power Vacuum Systems

EXHIBIT 2

March 29, 1993


Mr. Jack Prewitt
J. R. Prewitt & Associates
2100 17th Avenue, South
Birmingham, Alabama  35205

                        RE:   Cigna Policy No.:  G1 62 61 30 0
                              Policy Period:  9/1/92 to 9/1/93

Dear Jack:

Effective March 16, 1993, Powerscreen International PLC sold Guzzler Manufacturing.
Inc. to Federal Signal Corporation.  The terms of the sale require Powerscreen to
retain the liabilities of all products manufactured or shipped prior to March 16, 1993,
irregardless of the date of loss.

We therefore request that Cigna assign the captioned policy to Powerscreen International
PLC, effective March 16, 1993.

Sincerely,

Susan F. Ragland
Controller


RECEIVED

MAR 30 1993

J. R. PREWITT & ASSOC.


GUZZLER Manufacturing, Inc. • P.O. Box 66 • Birmingham, Alabama 35201-0066 • (205) 591-2477 • 1-800-822-8785

*80000 SERIES*
*30% P.C.W*

WAUSAU PAPER
RECYCLED

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| ELGIN SWEEPER COMPANY; | ) | |
| GUZZLER MANUFACTURING, INC.,; | ) | |
| FEDERAL SIGNAL CORPORATION, | ) | CIVIL ACTION NO. |
| | ) | |
| Plaintiffs, | ) | CV-94-G-0623-S |
| vs. | ) | |
| | ) | |
| POWERSCREEN INTERNATIONAL, PLC), | ) | |
| | ) | |
| Defendant. | ) | |

## SUPPLEMENTAL AFFIDAVIT OF JOHN R. PREWITT, JR.

COUNTY OF JEFFERSON        )

STATE OF ALABAMA        )

After being duly sworn, John R. Prewitt, Jr. hereby states as follows:

1.      My name is John R. Prewitt, Jr., I am a resident and citizen of Jefferson County, Alabama.  I am over 21 years old and otherwise competent to testify in this matter.  This affidavit is based on my own personal knowledge.

2.      I am President of J. R. Prewitt & Associates in Birmingham, Alabama. I was the individual who handled some of Guzzler Manufacturing, Inc.'s insurance needs during the period that Powerscreen owned Guzzler Manufacturing, Inc.

3.      I submitted my initial affidavit in this matter on March 2, 1998.  Since that time, we have located our entire file on the general liability/products liability policy (Policy No. OGLG16261300) our company wrote for Guzzler.  The file was being stored off-site, and the storage company had difficulty locating all of the files which caused the delay.

405186 COPPEL

4.     After reviewing the entire file on this policy, there is additional information that explains how the policy was handled from our perspective.

5.     As I previously stated in my initial affidavit, the policy was never "assigned" to Powerscreen.  However, a declaration endorsement made effective March 31, 1993 changed the policy to designate both Powerscreen and Federal Signal as additional insureds.  A copy of the declaration of that endorsement is attached hereto as Exhibit 1.

6.     The change in the policy was initiated by Mrs. Susan Ragland.  A copy of a letter dated March 29, 1993 from Susan Ragland to Jack Prewitt is attached hereto as Exhibit 2.  Subsequently, on March 31, 1993, Libby Martin, one of my employees, wrote a letter to CIGNA requesting that both Powerscreen and Federal Signal be made additional insureds to the policy.  A copy of Ms. Martin's letter is attached hereto as Exhibit 3.

7.     The terms of the policy did not change (*i.e.* the insurance coverage relative Guzzler was the same), but Powerscreen and Federal Signal were covered by the policy should they be named in a products liability lawsuit.

8.     Additionally, an audit was performed with respect to this policy in late 1993.  It was determined that Guzzler was charged too much in premiums for that particular policy.  Therefore, Guzzler was given a credit of $42,118 which it applied to subsequent premiums.  A copy of the invoice representing the $42,118 credit is attached hereto as Exhibit 4.

**FURTHER AFFIANT SAYETH NOT,**

John R. Prewitt, Jr

405186 COPPEL

2

COUNTY OF JEFFERSON          :
                                            :

STATE OF ALABAMA             :

        Before me, the undersigned authority in and for said county in said state, personally appeared John R. Prewitt, Jr., whose name is signed to the foregoing Affidavit, and who is known to me, and acknowledged before me on this day that being informed of the contents of said instrument, he executed the same voluntarily on the day the same bears date.

        Given under my hand and official seal this 18th day of March, 1998.

                          _____
                                Notary Public

My Commission Expires:

02\14\2000                            [SEAL]

405186 COPPEL

3



*8000 SERIES*
*30% P.C.W.*

INSURANCE COMPANY OF NORTH AMERICA

| SYM | POLICY ID |
|-----|-----------|
| OGL | G1 62 61 30 0 |

**DECLARATIONS UPDATE ENDORSEMENT**

PRODUCER BILLED

**NAMED INSURED**

EXHIBIT 1

GUZZLER MANUFACTURING, INC.
P O BOX 66
BIRMINGHAM, AL  35201

**SERVICE OFFICE**  BIRMINGHAM

**ENDORSEMENT EFFECTIVE DATE**  03/31/93   **POLICY PERIOD**  09/01/92 TO 09/01/93

ELEMENTS OF YOUR POLICY DECLARATIONS ARE CHANGED AS SHOWN BELOW.  ALL OTHER
ELEMENTS OF YOUR POLICY DECLARATIONS ARE NOT AFFECTED BY THIS ENDORSEMENT.
THESE CHANGES APPLY TO LOSS, INJURY, OR DAMAGE WHICH OCCUR(S) ON OR AFTER
THE EFFECTIVE DATE SHOWN ABOVE.

**P R E M I U M   C H A N G E S**

YOUR TOTAL PREMIUM IS INCREASED BY        $100.

**O T H E R   C H A N G E S**

CG-2026 ADDITIONAL INSURED - DESIGNATED PERSON OR ORGANIZATION ALSO
APPLIES TO:
                                SCHEDULE
NAME OF PERSON OR ORGANIZATION:  1 - POWERSCREEN INTERNATIONAL PLC
                                 2 - FEDERAL SIGNAL CORPORATION

AUTHORIZED AGENT

| ENDORSEMENT # 1 | (LAST PAGE) | PAGE | 1 |
|-----------------|-------------|------|---|

THIS COPY TO:

INSURED

CC-9P99

| PROCESSED: | PRODUCER: | DESTINATION |
|------------|-----------|-------------|
| 04/06/93 | 101546 | 101546 |
| 93096 | #CPK-9416 | MKT: BIS |

80000 SERIES
30% P C W

RECYCLED

EXHIBIT 3

# J.R.Prewitt                    Associates

March 31, 1993


Cigna Property & Casualty Companies
P. O. Box 30390
5404 Cypress Center Drive
Tampa, FL  33630-3390

Attention:  Red Goddard

Re:  Guzzler Manufacturing, Inc.
     OGLG16261300

Dear Red:

       Per our conversation today, please add the following as
additional insured to the above policy.

              Powerscreen International PLC and
              Federal Signal Corporation

       As we discussed, we are not picking up any additional
exposures.  Please forward endorsement to our office at your
earliest convenience.

       Thank you for your assistance!

Regards,

Libby Martin
Commercial Lines & Marketing Manager